# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

                                Case No. 2:13-cv-14464
                                Hon. Lawrence P. Zatkoff

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.                              **CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---

## PLAINTIFF THOMAS E. UNDERWOOD'S MOTION FOR CLASS CERTIFICATION AND BRIEF IN SUPPORT
### *oral argument requested*

       Plaintiff Thomas E. Underwood ("Underwood"), by and through his attorneys

Hertz Schram PC ("HSPC"), brings this Motion for Class Certification ("Motion")

on behalf of himself and all others similarly situated pursuant to Fed. R. Civ. P.

23(c)(1), which requires a determination as to whether the action should be certified as a class action "at an early practicable time." The reasons in support of this Motion are set forth in the attached brief. A proposed Order Granting Plaintiff Thomas E. Underwood's Motion for Class Certification is being filed in connection with this Motion and attached brief.

On January 21, 2014, the undersigned counsel for Underwood advised Defendants' attorneys that Underwood would be filing a motion for class certification "within a few weeks" and **requested concurrence** in the motion. Defendants' attorneys promptly responded that they would object to the motion.

Respectfully submitted February 10, 2014
Hertz Schram PC

/s/ Eva T. Cantarella
Eva T. Cantarella (P519171)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-335-3346
ecantarella@hertzschram.com
*Attorneys for Plaintiff Thomas E. Underwood*

H0090157.2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

                                  Case No. 2:13-cv-14464
                                  Hon. Lawrence P. Zatkoff

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.                               **CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---

## BRIEF IN SUPPORT OF PLAINTIFF THOMAS E. UNDERWOOD'S MOTION FOR CLASS CERTIFICATION

## <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    INTRODUCTION AND NATURE OF CLAIM . . . . . . . . . . . . . . . . . . . . 1

II.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.   Underwood's Participation in the Plan . . . . . . . . . . . . . . . . . . . . . . . 2

      B.   The Disability Retirement Benefit Under §5.1 of the Plan
           *Before* 8-1-2013 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      C.   The Disability Retirement Benefit Under §5.1 of the Plan
           *After* the Reduction Amendment, Effective 8-1-2013 . . . . . . . . . . . 3

III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES . . . . . . . . . . . . . . . 5

IV.   ARGUMENT IN SUPPORT OF CLASS CERTIFICATION . . . . . . . . . . 6

      A.   All Rule 23(a) Prerequisites Are Satisfied . . . . . . . . . . . . . . . . . . . . 7

           1.   Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           2.   Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           3.   Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           4.   Adequacy of the representative parties . . . . . . . . . . . . . . . . 11

      B.   Certification Is Proper Under Rule 23(b)(3) . . . . . . . . . . . . . . . . . 15

V.    CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

[proposed Order filed with this motion]

# INDEX OF AUTHORITIES

## Cases

Appolini v. United States,
218 F.R.D. 556 (W.D. Mich. 2003)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Brady v. Thurston Motor Lines,
726 F.2d 136 (4th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

General Tel. Co. v. EEOC,
446 U.S. 318, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1980)  . . . . . . . . . . . . . . . . . . 7

Gilkey v. Cent. Clearing Co.,
202 F.R.D. 515 (E.D. MI 2001)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading
Washer Prods. Liab. Litig.), 722 F.3d 838 (6th Cir. 2013)  . . . . . . . . . . . . . 9, 10, 15

Golden v. City of Columbus,
404 F.3d 950 (6th Cir. 2005)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Humphrey v. United Way,
2007 U.S. Dist. LEXIS 59557, No 05-0758 (S.D. Tex. Aug. 14, 2007)  . . . . . . . 13

In re American Medical Sys.,
75 F.3d 1069 (6th Cir. 1996)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9-11

In re Scrap Metal Antitrust Litig.,
527 F.3d 517 (6th Cir. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Mick v. Level Propane Gases, Inc.,
203 F.R.D. 324 (S.D. Ohio 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Miller v. Univ. of Cincinnati,
241 F.R.D. 285 (S.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan,
711 F.3d 675 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Senter v. GMC,
532 F.2d 511 (6th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Snow v. Atofina Chems., Inc.,
2003 U.S. Dist. LEXIS 27295, No. 01-72648 (E.D. MI 2003) . . . . . . . . . . . . . . 7

Sosna v. Iowa,
419 U.S. 393; 95 S. Ct. 553 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Young v. Nationwide Mut. Ins. Co.,
693 F.3d 532 (6th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9-11, 15, 16

## **Statutes**

ERISA §2, 29 U.S.C. §1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ERISA §3(37)(A), 29 U.S.C. §1002(37)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ERISA §305(e)(8), 29 U.S.C. §1085(e)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ERISA §305(i)(6), 29 U.S.C. §1085(i)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

42 U.S.C. §416(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. §423(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## **Court Rules**

Fed. R. Civ. P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I.    INTRODUCTION AND NATURE OF THE CLAIM

On October 24, 2013, Plaintiff Thomas E. Underwood ("Underwood") filed a class action Complaint against the Carpenters Pension Trust Fund - Detroit and Vicinity Pension Plan, as restated May 1, 2002 ("Plan") (PX1)[1], and the Trustees of the Plan (collectively, "Defendants").  The Plan is a "multiemployer plan" governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq.[2]  This dispute presents the single narrow legal issue of whether the Trustees lawfully amended the Plan to reduce the Disability Retirement Benefit ("DRB") provided under §5.1 of the Plan to persons in pay status on the effective date of the amendment, where §10.4 of the Plan expressly precludes such amendments.

As the Trustees' actions similarly affected Underwood and many other DRB recipients, Underwood requests that the Court certify the following Class:

> All persons who commenced their DRB on or after 9/1/2008 and who were receiving the DRB on 8/1/2013.[3]

---

[1]  Underwood's Exhibits are denoted PX1, PX2 and so forth.

[2]  The Plan is a "multiemployer plan" because more than one employer is required to contribute to it and it is maintained pursuant to a Collective Bargaining Agreement. See ERISA §3(37)(A), 29 U.S.C. §1002(37)(A) (defining multiemployer plan) and Plan at §1.13 (noting the Collective Bargaining Agreement and contributions by multiple employers) (PX1).

[3]  As discussed below, as to DRB recipients in pay status, the DRB reductions were made effective 8/1/2013 and applied to only those who commenced their DRB on or after 9/1/2008.  See PX7.

## II.    FACTS

### A.    Underwood's Participation in the Plan

Underwood, a millwright by trade, became an Active Participant[4] in the Plan in 1985.  In 1990, he injured his back on the job lifting heavy equipment.  See Independent Medical Examiner Report ("IME Report") (PX2).  Underwood has been in constant back and leg pain ever since his 1990 injury; has a herniated disc that has been degenerating; and has undergone a number of different treatments to address these problems, none of which have been successful.  Id.  By late December 2012, Underwood was in so much pain, he could no longer work.  Id.  Underwood last worked on December 26, 2012, at which time he had over 25 years of Credited Service under the Plan.  Id. The parties agree that, in February 2013, Underwood began receiving the DRB under §5.1 of the Plan.  Defendants' Motion to Dismiss at ¶1.

### B.    The Disability Retirement Benefit Under §5.1 of the Plan *Before* the 8-1-2013 Reduction Amendment

Prior to August 1, 2013, receipt of the DRB under §5.1 of the Plan required a finding, *by the Trustees only*, that the DRB applicant was an Active Participant who had become totally and permanently disabled by reason of a "physical or mental condition that is likely to be permanent and continuous during the remainder of his

---

[4]  Unless otherwise stated or defined herein, all capitalized terms shall have the meaning ascribed to them in the Plan.

or her life," and which rendered the DRB applicant totally unable to continue working *in the construction industry or trade for which the applicant was trained*. Plan at §5.1 (PX1); Seventh Plan Amendment at §5.1 (PX3); and Summary Plan Description ("SPD") (PX4) at p.37. As discussed in Part C, that standard and the value of the DRB fell victim to the Trustees' decision to amend the Plan to (i) reduce the DRB of DRB recipients in pay status, and (ii) alter the eligibility criteria for their continued receipt of the DRB, a decision impermissible under §10.4 of the Plan, which expressly prohibits Plan amendments that reduce benefits in pay status.

### C.   The Disability Retirement Benefit Under §5.1 of the Plan *After* the 8-1-2013 Reduction Amendment

On May 7, 2013, the Trustees voted to adopt an amendment to the Plan that modestly reduced *some* benefits, but **dramatically reduced the DRB and threatened elimination of the DRB altogether** for DRB recipients in pay status. See Letter and 5/7/2013 Memo from the Plan's lawyers to the Trustees (PX5) (outlining the benefit changes and cuts and noting the date of the Trustees' vote). The terms of the amendment were announced to DRB recipients in a document Underwood received in late May or early June of 2013 entitled "Summary of Benefit Changes Effective August 1, 2013" ("Benefit Summary") (PX6). The Benefit Summary (i) sets a cap on the DRB *amount* based on the DRB recipient's "Service Credits" (i.e., years of Credited Service); (ii) adds a new requirement for continued receipt of the DRB–that

the DRB recipient obtain a Social Security disability award within one year of the effective date of the Amendment (i.e., by August 1, 2014)--otherwise, the DRB is eliminated altogether (i.e., reduced to zero); and (iii) states that the DRB changes are effective August 1, 2013 and apply only to DRB recipients in pay status on or after September 1, 2008.  Benefit Summary at p.4 (PX6).[5]  On July 12, 2013, the trustees formally amended the Plan via a Thirteenth Amendment ("the Reduction Amendment") to incorporate the foregoing modifications to the DRB <u>and</u>  change the Plan's disability standard to match the more rigorous Social Security disability standard.  <u>See</u> Reduction Amendment at pp10-11 (PX7).

The parties agree that, (i) prior to August 1, 2013, Underwood's monthly DRB equaled **$3,586.98**, resulting in an annual benefit of $43,043.76, and (ii) the Reduction Amendment **reduced Underwood's monthly DRB to $1,350** (the maximum DRB amount under the Reduction Amendment for a DRB recipient with over 25 years of Credited Service) (<u>see</u> PX7 at p.11), lowering Underwood's annual benefit to $16,200 (a $26,843.76 difference)–**a 62% reduction!**  Underwood will also lose his DRB altogether if he is unable to obtain a Social Security disability award by August 1,

---

[5]  Unlike the construction industry or trade standard established under §5.1 of the Plan, the standard applicable to a finding of Social Security disability requires that the individual be unable to perform <u>any</u> gainful activity.  Compare 42 U.S.C. §416(i) and §423(d) with §5.1 of the Plan (PX1); Seventh Plan Amendment at §5.1 (PX3); and SPD at p.37 (PX4).

2014, as required under the Reduction Amendment for continued receipt of the DRB.

Id.  These reductions to the DRB violate §10.4 of the Plan which expressly prohibits

Plan amendments that reduce the benefits of persons in pay status on the effective date

of the amendment:

> **Section 10.4 Amendment Procedure**. The Trustees may, by majority vote, amend this Plan.  Unless required by law, no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of any person who is already receiving benefits on the date the amendment is effective. . . .

Plan at §10.4 (PX1).  Such reductions also violate ERISA ERISA §305, which

contains the same prohibition with respect to "disability retirement benefits" in pay

status.[6]

## III.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In the administrative proceedings on his Claim, Underwood sought (i)

reinstatement of his pre-8/1/13 DRB amount and without the requirement that he

obtain a Social Security disability award within one year (or any other period of time),

and (ii) payment of the difference between his pre-8/1/13 DRB amount and his post

---

[6]   See ERISA §305(e)(8), 29 U.S.C. §1085(e)(8), which explains that disability benefits in pay status are not among those benefits that may be "adjusted" to help improve a plan's funded status; and ERISA §305(i)(6), 29 U.S.C. §1085(i)(6), which clarifies that persons "in pay status" include persons receiving "disability retirement benefits."  These statutes are discussed more fully in Underwood's brief opposing Defendants' motion to dismiss.

8/1/13 DRB amount for the period before the reinstatement.  Claim at p2 (PX8) and

Appeal at p3 (PX10).  Defendants twice denied Underwood's Claim, and, in the  final

denial also advised Underwood that he had a right to bring legal action against the

Plan.  See Initial Denial (PX9) and Final Denial (PX11).  Underwood clearly

exhausted the Plan's administrative remedies and any further resort to those remedies

would be futile.

## IV.    ARGUMENT IN SUPPORT OF CLASS CERTIFICATION

Pursuant to Fed. R. Civ. P. 23(a), one or more members of a class may sue as

the representative(s) on behalf of all members of the class if "(1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law

or fact common to the class, (3) the claims or defenses of the representative parties are

typical of the claims or defenses of the class, and (4) the representative parties will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  In

addition, at least one of the criteria under Fed. R. Civ. P. 23(b) must be met.  A court

that certifies a class must also appoint class counsel that will fairly and adequately

represent the interests of the class.  Fed. R. Civ. P. 23(g).  As discussed below, all Rule

23 requisites have been satisfied.  Therefore, it is appropriate for the Court to certify

the proposed Class.

### A.    All Rule 23(a) Prerequisites Are Satisfied

### 1.    Numerosity

Fed. R. Civ. P. 23(a)(1) imposes "no strict numerical test" and "no absolute limitations" for determining impracticability of joinder.  Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 541 (6th Cir. 2012); Golden v. City of Columbus, 404 F.3d 950, 965 (6th Cir. 2005).  Rather, it requires "examination of the specific facts of each case" to determine whether joinder is impracticable.  Id. (citing General Tel. Co. v. EEOC, 446 U.S. 318, 330, 64 L. Ed. 2d 319, 100 S. Ct. 1698 (1980)).  The district court may make "reasonable inferences" with respect to the impracticability question, Young, 693 F.3d at 541; In re American Medical Sys., 75 F.3d 1069, 1079 (6th Cir. 1996); Senter v. GMC, 532 F.2d 511, 523 (6th Cir. 1976), and is not required to determine the precise number of class members.  Miller v. Univ. of Cincinnati, 241 F.R.D. 285, 288 (S.D. Ohio 2006); and Gilkey v. Cent. Clearing Co., 202 F.R.D. 515, 521 (E.D. MI 2001) (both citing In re American Medical Sys. 75 F.3d at 1079).

Some courts hold that a class of 25 to 30 members raises a presumption that joinder would be impracticable.  Snow v. Atofina Chems., Inc., 2003 U.S. Dist. LEXIS 27295, No. 01-72648 *11-12 (E.D. MI 2003); and Gilkey, 202 F.R.D. at 521 (both citing cases).  Other courts conclude that a class of 40 or more members automatically suffices to establish numerosity, Miller, 241 F.R.D. at 288 (citing Appolini v. United States, 218 F.R.D. 556, 561 (W.D. Mich. 2003)), but classes as small as 18 members

have been certified.  Miller, 241 F.R.D. at 288; and Gilkey, 202 F.R.D. at 521) (both citing Brady v. Thurston Motor Lines, 726 F.2d 136, 145 (4th Cir. 1984)).

In determining numerosity, district courts have considered the geographical dispersion of the class, lack of sophistication of the class members, and reluctance of individual class members to sue individually, Miller, 241 F.R.D. at 288.  The have also assessed factors such as judicial economy and the financial resources of the class members.  Mick v. Level Propane Gases, Inc., 203 F.R.D. 324, 330 (S.D. Ohio 2001).

Here, the actual size of the putative Class remains solely within the knowledge of the Defendants.  Fortunately, even at this early stage of the litigation, the undersigned counsel for the putative Class, Eva Cantarella ("Cantarella"), has already been contacted by 42 individuals who had their DRB reduced pursuant to the Reduction Amendment.  Cantarella will provide a list of the names of these individuals to the Court if so requested.  They learned of the litigation from Underwood, or from other similarly situated individuals who found Cantarella on the Internet while searching for an ERISA attorney, or from their own Internet search for an ERISA attorney.  To have identified so many similarly situated individuals at this early stage of the litigation without a list of the affected individuals from Defendants suggests there are additional, but as yet unidentified, persons who also had their DRB reduced by the Reduction Amendment.  These facts alone indicate that the Class is sufficiently numerous so as to make joinder impracticable.  Indeed, it is impossible,

not just impracticable, to join individuals whose identities remain unknown.

Additionally, two persons on the Class member list compiled to date live in Florida and the rest are geographically dispersed throughout the upper and lower peninsulas of Michigan. This suggests there are other similarly situated persons who live out of State or in diverse areas of the State. This geographical dispersion of unidentified Class members makes joinder all the more impracticable.

### 2. Commonality

To demonstrate commonality under Fed. R. Civ. P. 23(a)(2), the plaintiffs' claim(s) must depend upon a common contention, the truth or falsity of which will resolve the lawsuit for the putative Class. Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.), 722 F.3d 838, 852 (6th Cir. 2013); Young, 693 F.3d at 542. There need be only one common issue; individual issues will not preclude a finding of commonality. Glazer, 722 F.3d at 853; In re American Medical Sys. 75 F.3d at 1080. Thus, in Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan, 711 F.3d 675, 684 (6th Cir. 2013), the Sixth Circuit held that the scope and validity of the severance agreements there–whether they violated ERISA–"involved common questions of law that len[t] themselves well for class certification."

The common question here is a legal one:

> Whether, under §10.4 of the Plan or ERISA §305, the DRB may be reduced or eliminated with respect to DRB recipients in pay status on 8/1/2013 [the effective date of the Reduction Amendment].

Resolution of this question will determine Defendants' liability as to all Class members because the Class is defined as follows:

> All persons who commenced their DRB on or after 9/1/2008 and who were receiving the DRB on 8/1/2013.[7]

Commonality is clearly satisfied.

### 3.    Typicality

Typicality under Fed. R. Civ. P. 23(a)(3) is satisfied if the class members' claims are encompassed by the named plaintiff's claims such that their interests are aligned and the class representative, in pursuing his own interests, necessarily also advocates the interests of the class members.  Glazer, 722 F.3d at 852-853; Young, 693 F.3d at 542.  In practice, commonality and typicality tend to merge because both serve as "guideposts" for determining whether the named plaintiff's claim and class claims "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Glazer at 853; In re American Medical Sys., 75 F.3d at 1082.  Thus, a named plaintiff's claim "is typical if it arises from the same

---

[7]  Recall: With respect to DRB recipients in pay status, the Reduction Amendment made the DRB changes applicable to only to those individuals who commenced their DRB on or after 9/1/2008.  See PX7.

event or practice or course of conduct that gives rise to the claims of [the] other class members" and is "based on the same legal theory." Id.

Underwood's Claim and that of the other Class members emanates from Defendants' adoption of the Reduction Amendment in violation of §10.4 of the Plan and ERISA. Thus, Underwood's Claim is aligned with that of the other Class members, and, in pursuing his own interests, Underwood necessarily advocates for their interests, as well.

**4.    Adequacy of the representative parties**

The Sixth Circuit has articulated two criteria for determining the adequacy of the representative parties under Fed. R. Civ. P. 23(a)(4): (i) the named class representative must have interests common to those of the unnamed class members, and (ii) it must appear that the named class representative will "vigorously prosecute the interests of the class through qualified counsel." In re American Medical Sys., 75 F.3d at 1083; Young, 693 F.3d at 543. Regarding the first criteria, where it is unlikely that the named representative would have interests that conflict with those of the unnamed class members, and the interests of the class have been competently urged at every level of the proceedings, the test of Rule 23(a)(4) is met. Sosna v. Iowa, 419 U.S. 393, 403; 95 S. Ct. 553 (1975). With respect to the second criteria, the inquiry is whether class counsel are "qualified, experienced and generally able to conduct the litigation." Young, 693 F.3d at 543.

Underwood's interests are identical to those of the other Class members, as all seek a ruling that the Reduction Amendment is unlawful and an order (i) reinstating the DRB amount in effect immediately before 8/1/2013 (the effective date of the Reduction Amendment), and (ii) requiring Defendants to pay the shortfall between that date and the reinstatement date, along with prejudgment interest, post-judgment interest, and reasonable costs and attorneys' fees as permitted under ERISA. Thus, there exists no conflict between Underwood and the other Class members. Moreover, Underwood has been actively engaged in this litigation. He has read all Court filings, regularly conferred with Cantarella about the legal issues, and has helped to locate many of the persons on the list of Class members compiled to date. See Affidavit of Thomas E. Underwood (PX12).

Underwood has also retained highly experienced ERISA attorneys to vigorously prosecute the Claim on behalf of himself and the putative Class members, as initially demonstrated by the fact that they assembled and filed a well-pled putative class action Complaint just one week after issuance of the Final Administrative Denial. See Initial Denial (PX9); and Final Denial (PX11). Underwood's attorneys previously prosecuted thirteen class actions for benefits owed under a pension plan, all but one of which was governed by ERISA. See Affidavit of Eva T. Cantarella ("Cantarella Affidavit") (PX13); Affidavit of Bradley J. Schram ("Schram Affidavit") (PX14); and Affidavit of Robert P. Geller ("Geller Affidavit") (PX15). In several of these cases,

the district courts commented extensively on the expertise of Underwood's attorneys in litigating class claims for ERISA benefits:

> The court [*27] also finds that Humphrey's counsel is a zealous and competent representative. Plaintiff's counsel in charge, Eva Cantarella ("Cantarella"), and her law firm, Hertz, Schram & Saretsky, P.C. ("HS&S") [now Hertz Schram PC], are very experienced ERISA class action litigators. See Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great Northern Paper, Inc., 212 F.R.D. 350, 353-54 (W.D. Mich. 2002) (noting that HS&S is "nationally recognized for its plaintiff representation in ERISA and employee benefit cases" and finding its lawyers "to be a very experienced and capable advocates for the class"), rev'd. on other grounds, 382 F.3d 587 (6th Cir. 2004), cert denied, 544 U.S. 976, 125 S. Ct. 1844, 161 L. Ed. 2d 726 (2005).  Cantarella, a partner at HS&S, has participated in ten pension plan class actions and has also successfully prosecuted non-class claims for ERISA benefits, including pension benefits. (See Cantarella Aff. PP 10-14, Doc. 44 Ex. D.)  The other attorneys working on Humphrey's behalf are equally experienced and capable. (See Bradley Schram Aff., Doc. 44 Ex. B; Robert Geller Aff., Doc. 44, Ex. C.)  Together they have relentlessly advocated on behalf of Humphrey and the putative class members.  This effort is typified by the [*28] extensive and detailed briefing provided not only in this motion for class certification but also on Plaintiff's cross motion for summary judgment. (See generally Docs. 41-55, 59, 64, 68, & 84.)  Moreover, Cantarella presented her case at the hearing on class certification in a cogent and prepared manner. For these reasons, the court finds that Plaintiff's counsel and her firm are more than adequate to represent the class action.

Humphrey v. United Way, 2007 U.S. Dist. LEXIS 59557, No 05-0758 *27-28 (S.D. Tex. Aug. 14, 2007).  Indeed, Underwood's attorneys have been responsible for recovering over $100 million dollars in ERISA benefits for participants and their beneficiaries.  See Cantarella Affidavit (PX13), Schram Affidavit (PX14); and Geller Affidavit (PX15).

Bradley J. Schram, the founding shareholder of Hertz Schram PC ("HSPC"), has practiced law for 37 years, and has substantial class action experience, including litigating class claims for ERISA benefits. Schram Affidavit (PX14). Robert P. Geller ("Geller"), also a shareholder at HSPC and supervisor of the firm's ERISA team, has practiced law for 31 years and has considerable experience litigating class claims for ERISA benefits. Geller Affidavit (PX15).

Cantarella, a partner, came to HSPC from a national law firm. Cantarella Affidavit (PX13). Cantarella is responsible for investigating and evaluating all benefit claims proffered to HSPC that arise under a pension plan and for recommending which ones should be prosecuted. Id. Cantarella is a recognized expert on pension plans, and has been a guest speaker/presenter on pension issues in a variety of fora, including the Internal Revenue Service and Department of Treasury where she has given testimony on pension issues. Id. Cantarella has been solicited for comment on pension issues by our nation's legislators, employee and retiree organizations, and reporters, and she has been quoted on pension issues in numerous business and legal publications. Id. Cantarella has also had regular communications with Underwood about the litigation and discussed with him the potential advantages and disadvantages of proceeding as a class action rather than individually. Id. Based on the foregoing, there should be no doubt that Underwood's attorneys will fairly and adequately represent the proposed Class.

**B.    Certification Is Proper Under Rule 23(b)(3)**

Pursuant to Fed. R. Civ. P. 23(b)(3), Class certification is proper when (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (ii) litigating the claim(s) as a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance is met if the issues subject to generalized proof and applicable to the class as a whole predominate over issues subject to only individualized proof. Young, 693 F.3d at 544 (citing additional 6th Circuit cases). Predominance is also met when liability questions common to the class predominate over damages questions unique to individual class members. Glazer, 722 F.3d at 861. Stated otherwise, individual damages calculations ordinarily will not preclude certification under Rule 23(b)(3). Id. Moreover, there need not be a precise mathematical calculation of damages before the class is certified. In re Scrap Metal Antitrust Litig., 527 F.3d 517, 535 (6th Cir. 2008). Thus, in Schumacher, the Sixth Circuit affirmed certification under Rule 23(b)(3) notwithstanding that each class member's damages would need to be calculated individually because a common liability question predominated: the validity, under ERISA, of the severance agreements signed by each class member. 711 F.3d at 683-684. This case presents an analogous situation, as Defendants' liability as to each class member will turn on the validity of the Reduction Amendment under §10.4 of the Plan and ERISA.

Use of the class action device is clearly superior to other methods of adjudicating the validity of the Reduction Agreement because (i) it would be futile for the other Class members to utilize the Plan's administrative procedures in light of Defendants' denial (twice) of Underwood's administrative Claim; (ii) joinder of all members is impracticable (as discussed in Part IV.A.1, above); (iii) Class members damaged by Defendants' conduct would not be compensated for their damages in the absence of a class action because it is too expensive for an individual member to prosecute the Claim on solely his or her own behalf; (iv) even if individual members of the Class could afford to prosecute the Claim on their own behalf, the Court would be inundated with myriad lawsuits involving identical issues; (v) individual litigation magnifies the delay and expense to all parties and the court system of resolving the controversies engendered by Defendants' actions; (vi) by contrast, a class action presents fewer management difficulties than if numerous individual lawsuits were filed with the court, and provides the additional benefits of unitary adjudication, economies of scale and comprehensive supervision by a single court; and (vii) the management of this class action will not be difficult, as little contact with individual Class members will be necessary because the legality of the Reduction Amendment is the issue in this litigation.  In fact, the Sixth Circuit has held that "cases alleging a single course of wrongful conduct are particularly well suited for class certification" under Rule 23(b)(3). Young, 693 F.3d at 545 (also stating that "[W]here a threshold

issue is common to all class members, class litigation is generally preferred.")

## V.    CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, all Rule 23 requisites have been satisfied, and certification of the Class is appropriate under Fed. R. Civ. P. 23(b)(3).  Therefore, Underwood requests that the Court (i) certify the proposed Class under Fed. R. Civ. P. 23(b)(3); (ii) appoint him as the representative for the Class, and (iii) appoint Hertz Schram PC as counsel for the Class.

Additionally, in order to comply with the notice requirements for classes certified under Fed. R. Civ. P. 23(b)(3) [see Fed. R. Civ. P. 23(c)(2)(B)], Underwood requests that the Court order Defendants to provide HSPC, within 30 days after entry of the Order certifying the Class, a full and complete list of the Class members based on the Class defined in the Order, which list shall include (i) the Class member's name and address; and (ii) any telephone number and email address Defendants possess for the Class member.  A proposed Order Granting Plaintiff Thomas E. Underwood's Motion for Class Certification is being filed in connection with this Motion and brief.

Respectfully submitted February 10, 2014

/s/ Eva T. Cantarella
Eva T. Cantarella (P519171)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-335-3346
ecantarella@hertzschram.com
*Attorneys for Plaintiff Thomas E. Underwood*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2014, I served on the below counsel for Defendants (i) Plaintiff Thomas E. Underwood's Motion for Class Certification, (ii) Brief in Support, (iii) Exhibit List, (iv) fifteen Exhibits, denoted PX1, PX2 and so forth, and (v) proposed Order Granting Plaintiff Thomas E. Underwood's Motion for Class Certification, via the Court's CM/ECF system. I also emailed the proposed Order to the below counsel for Defendants.

Edward J. Pasternak (P58766)
John I. Tesija (P36709)
Novara Tesija PLLC
2000 Town Center, Ste. 2370
Southfield, MI 48075
o. 248-354-0380; f. 248-354-0393
ejp@novaratesija.com
tesija@novaratesija.com
*Attorneys for Defendants*

/s/ Eva T. Cantarella
Eva T. Cantarella (P519171)
ecantarella@hertzschram.com

H0090157.2                                                18