UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| THOMAS E. UNDERWOOD, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>CARPENTERS PENSION TRUST FUND—DETROIT AND VICINITY, and TRUSTEES OF CARPENTERS PENSION TRUST FUND—DETROIT AND VICINITY,<br><br>    Defendants. | Case No. 13-cv-14464<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION TO CERTIFY CLASS [12]**

In February 2013, Plaintiff Thomas Underwood began receiving disability benefits from the Carpenters Pension Trust Fund—Detroit and Vicinity, a multiemployer pension plan ("the Plan") that is subject to the Employee Retirement Income Security Act ("ERISA"). In August 2013, the Plan's Trustees amended the Plan to address its underfunded status. The amendment significantly reduced Underwood's monthly disability payments. Underwood filed this action to challenge the amendment, arguing that ERISA and the terms of the Plan prohibit amendments that reduce disability benefits in pay status. He also filed a Motion to Certify Class seeking to pursue these claims on behalf of "[a]ll persons who commenced their [disability retirement benefits ("DRB")] on or after 9/1/2008 and who were receiving the DRB on 8/1/2013." (Dkt. 12, Mot. at 1) Defendants oppose the motion. (Dkt. 16, Resp.) The Court heard oral argument on the motion on September 9, 2014.

The Court finds that the proposed class is sufficiently numerous that joinder is impracticable, there is a question of law common to the class, Underwood's claims are typical and he will fairly and adequately protect the interests of the class, the question of law common to all class members predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Underwood's Motion to Certify Class (Dkt. 12) is therefore GRANTED.

## I. FACTUAL BACKGROUND

There are few, if any, factual disputes in this case. In fact, there are cross-motions for summary judgment currently pending, on which the Court will issue a separate opinion and order. (*See* Dkt. 7, Defendants' Mot.; Dkt. 11, Plaintiff's Mot.) The following background facts are from the parties' summary judgment briefing.

The Carpenters Pension Trust Fund—Detroit & Vicinity Pension Plan is a multi-employer plan subject to ERISA. (Dkt. 10 at 1; Dkt. 15 at 4.) Section 10.4 of the Plan gives the Board of Trustees for the Plan authority to amend it: "The Trustees may, by majority vote, amend this Plan. Unless required by law, no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of any person who is already receiving benefits on the date the amendment is effective." (Dkt. 12-2, Plan § 10.4.)

In or around June 2013, the Trustees voted to amend the Plan. (Dkt. 10 at 3; Dkt. 15 at 5.) The amendment set caps on the amount of disability benefits[1] participants could receive and instituted a new requirement that participants obtain a Social Security disability award by August 1, 2014, in order to continue receiving disability benefits from the Plan. (*See* Dkt. 7-4, All

---

[1] Underwood refers to the disability benefits he is receiving as "disability retirement benefits" or "DRB." Whether the disability benefits are properly characterized as "retirement benefits" is a contested issue in the dispositive motions. The Court therefore refers to them as "disability benefits."

Reasonable Measures Plan at 3–4; Dkt. 12-8, Thirteenth Amendment to the Plan §§ 5.1(a)(iv) & 5.2(d).) Social Security laws require that an individual be disabled from performing any gainful activity (20 C.F.R. § 404.1505), while the Plan previously required that a participant be disabled only from performing his or her trade (Plan § 5.1). These changes took effect on August 1, 2013, and applied to all participants who began receiving disability benefits on or after September 1, 2008. (*See* All Reasonable Measures Plan at 3–4; Thirteenth Amendment to the Plan §§ 5.1(a)(iv) & 5.2(d).)

Underwood was a participant in the Plan for more than twenty-five years. (Dkt. 10 at 1; *see* Dkt. 15 at 5; Thirteenth Amendment to the Plan § 5.2(d)*.*) He began receiving disability benefits under the Plan in February 2013. (Dkt. 10 at 2; Dkt. 15 at 4.) The amendment that took effect in August 2013 reduced the amount of Underwood's disability benefits. (Dkt. 10 at 4; Dkt. 15 at 5; Thirteenth Amendment to the Plan § 5.2(a)(iv).) Underwood filed this proposed class action to challenge the legality of that amendment, on behalf of himself and all others similarly affected.

## II. CLASS CERTIFICATION STANDARD

To obtain class certification, Underwood must first show that the proposed class meets the following four requirements:

> (1) the class is so numerous that joinder of all members is impracticable;
> 
> (2) there are questions of law or fact common to the class;
> 
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> 
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 683 (6th Cir. 2013). Secondly, the proposed class must fit at least one of the three

3

categories listed in Rule 23(b). *Id.* Underwood argues that the requirements of 23(b)(3) are met. To certify the class under Rule 26(b)(3),

> the court [must] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The party seeking class certification has the burden to prove the certification requirements. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

### III. ANALYSIS

The Court first addresses each of the four requirements under Rule 23(a). Defendants challenge only numerosity and adequacy.

#### A. Numerosity

The Court may certify a class only if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Underwood says that while "the actual size of the putative Class remains solely within the knowledge of the Defendants," his counsel "has already been contacted by 42 individuals who had their DRB reduced pursuant to the Reduction Amendment." (Mot. at 8.) Two of those individuals, Underwood says, live in Florida, while "the rest are geographically dispersed throughout the upper and lower peninsulas of Michigan." (*Id.* at 9.) In his Reply, Underwood offers an affidavit in which his counsel avers that at the time she filed the class certification motion, she had been contacted by forty-two individuals, including Underwood, "who had their Disability Retirement Benefit ("DRB") reduced pursuant to the

4

Thirteen[th] Amendment to the Plan ("the Reduction Amendment")." (Dkt. 18-2, Reply Ex. 1 at ¶ 3.) She says two more individuals "who had their DRB reduced pursuant to the Reduction Amendment" have contacted her since. (*Id.* at ¶ 7.) She offers to provide a list to the Court but requests that she be permitted to produce it *in camera*. (*Id.* at ¶ 10.) At the hearing, Underwood's counsel advised that since the Reply was filed, fourteen more individuals who meet the class definition have contacted her, bringing the total to fifty-eight. She said her "best guess" for the total number of class members was two to three hundred.

Defendants argue in their response brief that "[b]eing contacted and having standing are 2 distinct issues," and "Plaintiff has not indicated how these participants all expressed a dispute worthy of litigation." (Dkt. 16, Resp. at 7.) They argue that Underwood must provide the Court with evidence that demonstrates the existence of the number of the proposed class he purports to represent. (*See id.*) When questioned at the hearing, Defendants' counsel said that based on preliminary, informal conversations with the administrator, he thought the number of individuals affected by the new disability benefits caps was "in the hundreds." Despite this estimate, Defendants' counsel argued that Underwood had not met his burden to establish numerosity.[2]

To support their argument, Defendants cite *Golden v. City of Columbus*, 404 F.3d 950, 966 (6th Cir. 2005). In that case, the proposed class consisted of "tenants in Columbus whose water service was or will be terminated because of the landlord's or prior tenant's indebtedness."

---

[2] The Court has concerns about Defendants' arguments regarding numerosity. Another court has called it "pure sophistry" for defendants to argue that class certification "must be denied since the plaintiff is unable to state the exact number of persons affected" where "[t]he exact number of affected persons is known to the defendants who have the means to identify them at will." *Folsom v. Blum*, 87 F.R.D. 443, 445 (S.D.N.Y. 1980); *see also Bremiller v. Cleveland Psychiatric Inst.*, 898 F. Supp. 572, 576 (N.D. Ohio 1995) ("[G]iven that the class members are past and present employees of Defendant CPI, Defendants cannot claim complete ignorance as to the identities of the class members nor can they use this ignorance to try to defeat class certification.").

5

*Id.* The plaintiffs argued that joinder was impracticable because there were 150,000 renters in Columbus. *Id.* The Sixth Circuit held it was not an abuse of discretion for the district court to deny certification because "reference to the total number of tenants in Columbus is not probative of the number of tenants reasonably likely to face the harm for which Golden seeks redress." *Id.* Defendants' analogy to this case is not persuasive because Underwood's indicia of numerosity is not as speculative as that in *Golden*. If Underwood had merely said, in support of numerosity, that there are 18,773 Plan participants—or even if he had established how many of those Plan participants receive disability benefits—this case would be helpful. But by saying that there are at least fifty-eight people whose disability benefits were reduced by the amendment (and who have contacted a lawyer regarding possible representation), Plaintiff has indicated that there are fifty-eight people "reasonably likely to face the harm for which [he] seeks redress." *Id.*

Of course, it may be that not all of the fifty-eight have standing to pursue a claim. But standing need not be established for class members who are not the named plaintiff: "These passive members need not make any individual showing of standing because the standing issue focuses on whether the named plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court." *Newberg on Class Actions* § 2:3 (5th ed.); *see Babcock v. Computer Associates Int'l, Inc.*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003) ("Standing and numerosity are two separate unrelated inquiries"). And, although Defendants did not directly raise the issue, it is worth noting that administrative exhaustion may not be required for absent class members in an ERISA action. *See Adams v. Anheuser-Busch Companies, Inc.*, No. 10-cv-826, 2012 WL 1058961, at *4–5 (S.D. Ohio Mar. 28, 2012) (noting that "the Sixth Circuit has decided in other contexts that only named plaintiffs must exhaust their administrative remedies," and "[m]ost courts which have addressed the issue have concluded that exhaustion of

6

administrative remedies is not a prerequisite to class membership in an ERISA action so long as the named plaintiffs have exhausted their administrative remedies," collecting cases).

Defendants make a second argument against numerosity: they argue that because every person in the proposed class is a participant in the Defendant Fund, the class is ascertainable and therefore joinder is not impracticable. (*See* Resp. at 7.) Underwood, in contrast, argued in the Reply that since the identities of class members who have not contacted his counsel are ascertainable only by Defendants, it is not possible for Underwood to join them. (Dkt. 18, Reply at 3.) Neither argument is persuasive. As to Defendant's argument, while it is true that joinder of unknown individuals is "certainly impracticable," making class certification appropriate, *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000), the converse is not necessarily true. Class certification is not rendered inappropriate solely because all members of a proposed class are identifiable. Other factors may make joinder impracticable. As to Underwood's argument, the fact that the information needed to identify class members is solely available to Defendants does not mean that a class must be certified; the discovery rules provide other means by which Underwood could access that information.

Despite failing to obtain helpful discovery prior to filing his class certification motion, Underwood has presented sufficient evidence on which the Court can find that the proposed class is so numerous that joinder of all members is impracticable. *See Crawford v. TRW Auto. U.S. LLC*, 06-14276, 2007 WL 851627 (E.D. Mich. Mar. 21, 2007) ("Although not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement."); *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986) (noting that "'generally less than twenty-one is inadequate, more

than forty adequate, with numbers between varying according to other factors'"); Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 7A *Federal Practice and Procedure* § 1762 (3d ed. 2005) (discussing case law).

More precise evidence is not required. *See Young*, 693 F.3d at 541 ("In ruling on a class action a judge may consider reasonable inferences drawn from facts before him at that stage of the proceedings." (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 (6th Cir.1976))); *see also Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001), *aff'd on other grounds*, 383 F.3d 495 (6th Cir. 2004) ("[t]he numerosity requirement is met when plaintiffs demonstrate that the number of potential class members is large, even if plaintiffs do not know the exact figure." (quoting *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 601 (E.D. Mich. 1985))). The Court finds that, based upon the affidavit and representations of counsel, the numerosity requirement is met.

### B. Commonality

The second requirement for class certification is "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, the "claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Young*, 693 F.3d at 542 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011)).

Underwood argues that resolution of just one legal question will determine Defendants' liability as to all Class members: "Whether, under § 10.4 of the Plan or ERISA § 305, the DRB may be reduced or eliminated with respect to DRB recipients in pay status on 8/1/2013 [the effective date of the Reduction Amendment]." (Mot. at 10 (insertion in original).) Defendants do

not address the commonality requirement (*see* Resp. at 6–9) and acknowledged at the hearing that they are not challenging it. The Court agrees with Underwood that liability as to all members turns on a narrow legal issue, and therefore finds that the commonality requirement is met.

### C. Typicality

To certify a class action, the Court must also find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d 1069, 1082 (6th Cir.1996). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082). Underwood argues conclusorily that his claim "is aligned with that of the other Class members, and, in pursuing his own interests, Underwood necessarily advocates for their own interests, as well." (Mot. at 11.) Defendants do not challenge this requirement. (*See* Resp. at 6–9.)

The Court finds that Underwood's claims are typical. The claims arise from the amendment of the Plan, which does not differ from class member to class member. Although there will obviously be variation in the benefit amounts class members received and the amounts they would have received absent the amendment, variation in damages is not an absolute bar to class certification. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (agreeing with district court's finding that class representative's claims were typical because they arose from the same allegedly deceptive billing practice that gave rise to the claims of the other class

members, despite differences in damages), *cert. denied*, 555 U.S. 1032 (2008). The only other variation in members' claims might be whether or how they are affected by the amendment's requirement that disability benefit recipients qualify for Social Security disability. But this variation does not alter the central question for liability, which is whether the Defendants could amend the Plan to reduce or eliminate disability benefits for recipients who were already receiving it. The Court finds that the unopposed typicality requirement is met.

### D. Adequacy of Representation

The fourth requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Young*, 693 F.3d at 543 (quoting *In re Am. Med. Sys.*, 75 F.3d at 1083). Underwood states, again conclusorily, that his "interests are identical to those of the other Class members," and "there exists no conflict between Underwood and the other Class members." (Mot. at 12.) He further indicates that he is actively engaged in the litigation and that his attorneys are experienced in prosecuting ERISA class actions. (*Id.* at 12–13.)

Defendants first argue that Underwood is not an adequate representative because "[s]ome disability recipients may return to work and have their benefit suspended," and "[s]ome participants on disability who will soon convert to [] 'normal retirement' pension benefits certainly do not have the same interest as the participant who may be on disability for several years." (Resp. at 8–9.) In response, Underwood argues that "[i]t is common sense that *DRB recipients* would want the DRB *amount* to which they are legally entitled, and not want the

imposition of new requirements for continued receipt of their DRB." (Reply at 3, emphasis in original.) Underwood seems to misunderstand Defendants' argument, which the Court understands to be connected to Defendants next point: they contend that "[a] rollback of disability benefits to pre-amendment levels hurts the Plan's funding status and puts participants' non-disability pension benefits at peril." (*Id.* at 9.) From the perspective of a disability benefit recipient who is no longer receiving disability benefits or will soon stop receiving disability benefits, protecting the funding status of the Plan would likely be more important than restoring their disability benefit amount. Indeed, even disability benefit recipients who do not anticipate termination of their disability benefits anytime soon might nonetheless feel that protecting their non-disability pension benefits is more important than receiving their pre-amendment disability benefit amounts.

Underwood argues that restoring the original disability benefit amount would not hurt the Plan's funding status and put non-disability pension benefits at peril unless a significant percentage of the 18,773 Plan participants are disability benefit recipients, which Underwood contends is a "leap." (Reply at 4.) Underwood acknowledges that restoring the disability benefit amounts "will have some effect on the Plan's funding balance," but notes that "Defendants have presented no evidence that this effect would be so large as to actually 'hurt' the Plan's funding status or put non-disability pension benefits at peril." (*Id.* at 5.) Of course, for a class conflict to exist, there need not be actual peril to the funding status or pension benefits; there need only be a class member who believes that there is, and therefore opposes the relief Underwood seeks. But Underwood further argues that because the Plan provides that when disability benefits are converted to early or normal retirement benefits they must be no less than the disability benefit

11

amount, he "indirectly also protects the early or normal retirement benefit" of those converting. (*Id.*)

At the hearing, Underwood's counsel represented that none of the fifty-eight proposed class members who have contacted her have raised the issue of the Plan's funding. She also argued that if the Plan became insolvent, the Pension Benefit Guaranty Corporation would take over. And she pointed out that it was unlikely that members of the proposed class would stop receiving disability benefits due to recovery from their disability because only participants who are "permanently disabled" can receive disability benefits. The Plan provides that "[a] totally and permanently disabled Active Participant is one who is found by the Trustees, on the basis of medical evidence satisfactory to them, to have a physical or mental condition that is likely to be permanent and continuous during the remainder of his or her life." (*See* Dkt. 10-4, Seventh Amendment to the Plan § 5.1.)

The seminal case on class conflicts is *Hansberry v. Lee*, 311 U.S. 32 (1940). There, the Supreme Court held that the action should not have been allowed to proceed as a class action where the plaintiff sought to enforce a racially restrictive covenant on behalf of a class of landowners: "Because of the dual and potentially conflicting interests of those who are putative parties to the agreement in compelling or resisting its performance, it is impossible to say, solely because they are parties to it, that any two of them are of the same class." 311 U.S. at 44. Where the proposed class encompassed "those who are free alternatively either to assert rights or to challenge them," the class representatives' "substantial interests are not necessarily or even probably the same as those whom they are deemed to represent," and without more, they could not "be deemed adequately to represent any others of the class in litigating their interests in either alternative." *Id.* at 45.

Defendants cite *Hansberry* and a Sixth Circuit case in which the Court commented in a footnote that the "class may have been certified too broadly, because it includes individuals who would be hurt by [the named plaintiff's] construction of the law. *Smith v. Babcock*, 19 F.3d 257, 265 (6th Cir. 1994) (addressing welfare recipients' challenge to Michigan's policy of withholding work incentive bonus to recipients who voluntarily quit their jobs). (Resp. at 8.)

The Court finds this hypothetical class conflict is not an obstacle to certifying the class. To the extent there are members of the proposed class who prefer that the caps on disability benefits and the Social Security eligibility requirement remain in place to protect the funding of the Plan, the Defendants will adequately represent their interests. *See, e.g.*, *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 487 (5th Cir. 1982) ("Though some members may disagree with the named plaintiffs, their position has been asserted energetically and forcefully by the defendant."), *cert. denied*, 463 U.S. 1207 (1983); *Communities for Equity v. Mich. High Sch. Athletic Ass'n*, 192 F.R.D. 568, 574 (W.D. Mich. 1999) (certifying class in action for gender discrimination against interscholastic athletic organization where "the interests of those class members who do not consider themselves adversely affected will be adequately represented by Defendants"). And because Underwood seeks to certify the class under Rule 23(b)(3), all members of the proposed class would be given notice and an opportunity to opt out. *See* Fed. R. Civ. P. 23(c)(2)(B).

Defendants also argue that there are "five different classes of caps on disability benefits, dependent on the number of the participant's credit years," and "[a]t best, [Underwood] could possibly represent the members of the participants in his category of credit years, but not the other four tiers." (Resp. at 9.) Underwood responds that this does not create any class conflicts because he seeks to restore the original disability benefit amount for all categories. (Reply at 5–

6.) The Court agrees with Underwood that no class conflict is created by the different classes of caps. These differences only affect the amount of damages, which, as discussed, do not prevent certification in this case.

Finally, Defendants argue that the requirement to qualify for Social Security disability benefits may affect proposed class members differently: "It cannot be determined at this time which participants will have benefits discontinued when this rule takes effect. Any participant whose benefits are not affected by this change would have little interest in seeing this matter prosecuted at the expense of the Pension Fund." (Resp. at 9.) Underwood dismisses this argument because he "has vigorously sought to restore the original DRB amount for all Class members, and the relevant inquiry concerns his level of adequacy, not the enthusiasm of unspecified Class members." (Reply at 6.) Again, the Court sees no class conflict here. The focus of Underwood's claims is on the legality of the amendment. The fact that the amendment had two kinds of effects—the caps and the eligibility requirement—is relevant to damages, not liability. Differences in damages are not an obstacle to certification in this case.

Defendants do not argue that Underwood is not an adequate representative in other respects. His affidavit indicates that he is actively engaged in vigorously prosecuting the litigation. (*See* Dkt. 12-13.) And it appears that Underwood's counsel is experienced in class actions under ERISA, based on their affidavits. (*See* Dkt. 12-14; 12-15; 12-16.) The Court finds they are "qualified, experienced and generally able to conduct the litigation." *See Young*, 693 F.3d at 543.

Therefore, the Court finds that Underwood is an adequate representative and the adequacy requirement is met.

**E. Rule 23(b)(3)**

Rule 23(b) provides that a class action may be maintained only if one of three tests is met. Underwood argues that class certification is appropriate under Rule 23(b)(3), which provides for certification where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (*See* Mot. at 15.) Underwood cites *Schumacher v. AK Steel Corp. Retirement Accumulation Pension Plan*, 711 F.3d 675, 683–84 (6th Cir. 2013), in which, according to Underwood, "the Sixth Circuit affirmed certification under Rule 23(b)(3) notwithstanding that each class member's damages would need to be calculated individually because a common liability question predominated: the validity, under ERISA, of the severance agreements signed by each class member." (Mot. at 15.)

In response, Defendants reiterate their arguments regarding adequacy: that some members of the proposed class may return to work or may be near normal retirement age, that there are five different categories of caps on disability benefits, and that it cannot yet be determined which participants will be affected by the requirement to qualify for Social Security disability benefits. (Resp. at 9–10.) Defendants argue that because of the different caps, "the issue of damages is specific not only to each category, but each individual in each category, depending on when he/she went into pay status." (Resp. at 10.) And, Defendants argue, "[t]he new standard will require individualized determinations by the Social Security Administration." (*Id.*) Underwood replies that the only issue for liability is whether the amendment unlawfully reduced the disability benefits of participants in pay status on the effective date, and the only

15

individual determinations are the amount of damages for each class member, which can be easily calculated. (Reply at 6–7.)

In *Schumacher*, liability depended on individualized determinations of whether each of the ninety-two class members knowingly and voluntarily released their claims as part of the severance agreement they signed. *See* 711 F.3d at 683. But before reaching the questions of individual intent, the court had to determine whether the anti-alienation provisions of ERISA barred the release of the claims in the case, and whether the express terms of the release agreements—which were identical for each plaintiff—included the claims in the case. *See id.* at 683–84. Based on this threshold issue, the Sixth Circuit held there was no abuse of discretion in the district court's decision to certify the class under Rule 23(b)(3): "[t]he court was correct to begin by determining the scope and validity of the agreements as a common issue of law for the class certification motion." *Id.* at 684. Underwood argues that "[t]his case presents an analogous situation, as Defendants' liability as to each class member will turn on the validity of the Reduction Amendment under § 10.4 of the Plan and ERISA." (Mot. at 15.) The Court agrees.

Defendants do not address *Schumacher*. Instead, they cite several district court cases in which Rule 23(b)(3) certification was denied because the claims required individual determinations. (*See* Resp. at 10.) The key distinction, as Underwood points out (Reply at 7 n.1), is that the individualized determinations in those cases were required to determine threshold questions for liability. *See Yadlosky v. Grant Thornton L.L.P.*, 197 F.R.D. 292, 296–298 (E.D. Mich. 2000) (common questions did not predominate where individual proof of reliance was required for securities fraud claims, and state law claims required applying laws of various states); *Krieger v. Gast*, 197 F.R.D. 310, 319–320 (W.D. Mich. 2000) (fraud and conspiracy claims not appropriate for class certification because each class member must prove reliance);

16

*Cohn v. Mass. Mut. Life Ins.*, 189 F.R.D. 209, 215 (D. Conn. 1999) (individual questions predominated for misrepresentation and fraud claims); *Peoples v. Am. Fid. Life Ins.*, 176 F.R.D. 637, 642 (N.D. Fla. 1998) (in case involving consumer fraud based on oral misrepresentations, facts related to individual purchasers were too diverse and complex for management as a class action). In this case, the threshold question of liability is whether the amendment was unlawful. If the Court finds that it was lawful, the case ends there. If the Court finds that the amendment was not lawful, it must invalidate the amendment. Only then would the Court have to make individualized determinations of the benefits due each member of the proposed class. Defendants' argument is not persuasive.

Nonetheless, there is a wrinkle in Rule 23(b)(3) certification here. Among the factors to be considered under Rule 23(b)(3) are "the extent and nature of any litigation concerning the controversy already begun by or against class members" and "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A), (B). After briefing on this motion was complete, another action was filed by a member of Underwood's proposed class against the same Defendants and concerning the same issue. *See Schleben v. Carpenters Pension Trust Fund—Detroit & Vicinity et al.*, No. 14-11564, Compl. (E.D. Mich. Apr. 18, 2014). The plaintiff, Roger Schleben, has indicated that he was in contact with Underwood's counsel before filing his own suit, but decided to pursue his claim separately because "joining Underwood's case appeared to only offer delay." *See Schleben*, No. 14-11564, Resp. to Notice of Filing Mot. to Consol., at 6–7 (E.D. Mich. June 18, 2014). Schleben's counsel was present at the hearing and indicated that he was not sure whether Schleben would choose to be part of the class. Schleben's primary concern, his counsel said, was obtaining a judgment quickly.

The Sixth Circuit has held that "where a threshold issue is common to all class members, class litigation is greatly preferred." *Young*, 693 F.3d at 545. This case fits well within that holding. The Court agrees with Underwood that this case turns on a narrow legal issue that determines liability as to all members of the proposed class: whether the amendment of the Plan unlawfully reduced the disability benefits of class members. The Court is mindful of Schleben's concern about delay. But in light of the fully briefed and heard dispositive motions currently pending in both Schleben's and Underwood's cases, the Court is confident that certifying the proposed class will not significantly delay resolution of Schleben's claim, whether he chooses to opt out of the class or remain in it. Moreover, relief for the other members of the proposed class will be sped up considerably by certification. And because the dispositive issue in this case is a narrow legal question common to all, individual class members' interests in controlling the litigation are minimal.

Therefore, the Court finds that a question of law common to class members predominates over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## IV. CONCLUSION AND ORDER

The Court finds that the proposed class is so numerous that joinder is impracticable, there is a question of law common to the class, Underwood's claims are typical and he will fairly and adequately protect the interests of the class, the question of law common to all class members predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. Underwood's Motion to Certify Class (Dkt. 12) is therefore GRANTED.

The Court ORDERS as follows:

1. The following class is **CERTIFIED**:

   All persons who commenced receiving disability benefits from Carpenters Pension Trust Fund—Detroit & Vicinity Pension Plan on or after September 1, 2008, and who were receiving those disability benefits on August 1, 2013.

2. The class is certified to pursue their claims under ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)) to recover benefits due under the terms of the Plan, enforce their rights under the terms of the Plan, and clarify their rights to future benefits under the terms of the Plan.

3. Thomas E. Underwood is **APPOINTED** as the class representative.

4. Hertz Schram, P.C., is **APPOINTED** as class counsel.

5. In order to provide notice to the class as required by Federal Rule of Civil Procedure 23(c)(2)(B), Defendants' counsel is **ORDERED** to provide to class counsel by September 30, 2014, a list of all individuals who meet the class definition, with all current contact information in Defendants' possession.

6. Class counsel is **ORDERED** to file a Notice Plan with the Court by October 15, 2014. The Plan shall set forth proposed language for the notice and shall address the relevant checkpoints in the Federal Judicial Center's Class Action Notice and Claims Process Checklist, available at http://www.fjc.gov/public/pdf.nsf/lookup/NotCheck.pdf/$file/NotCheck.pdf.

**SO ORDERED**.

                                             s/Laurie J. Michelson
                                             LAURIE J. MICHELSON
                                             UNITED STATES DISTRICT JUDGE

Dated: September 15, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 15, 2014.

                                                  <u>s/Jane Johnson</u>
                                                  Case Manager to
                                                  Honorable Laurie J. Michelson