# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

Case No. 2:13-cv-14464
Hon. Laurie J. Michelson

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.

**CLASS ACTION**

---

Eva T. Cantarella (P51917)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-3353346
ecantarella@hertzschram.com
*Attorneys for the Class*

Edward J. Pasternak (P58766)
John I. Tesija (P36709)
Novara Tesija PLLC
2000 Town Center, Ste. 2370
Southfield, MI 48075
o. 248-354-0380; f. 248-354-0393
ejp@novaratesija.com
tesija@novaratesija.com
*Attorneys for Defendants*

---

## PLAINTIFF THOMAS E. UNDERWOOD'S MOTION
## FOR COSTS AND ATTORNEYS' FEES UNDER ERISA §502(g)(1),
## AND FOR PREJUDGMENT INTEREST
### [brief in support attached]
*oral argument requested*

     Pursuant to Fed. R. Civ. P. 54(d)(2)(B), Plaintiff Thomas E. Underwood, on

behalf of himself and all others similarly situated, files this Motion for Costs and

Attorneys' Fees Under ERISA §502(g)(1), and for Prejudgment Interest.  The reasons

in support of this Motion are set forth in the attached brief.

On September 25, 2014, the undersigned attorney for Underwood contacted Defendants' attorney, Edward Pasternak ("Pasternak"), to inform him that Underwood would soon be filing the instant motion and to request Defendants' concurrence in the relief requested. Pasternak responded that Defendants would <u>not</u> concur in the relief requested.

Respectfully Submitted October 2, 2014

/s/ Eva T. Cantarella
Eva T. Cantarella (P519171)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-335-3346
ecantarella@hertzschram.com
*Attorneys for Plaintiff Thomas E. Underwood*

H0164376.1                                           2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.                                                    Case No. 2:13-cv-14464
                                                      Hon. Laurie J. Michelson

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.                                **CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for the Class* | *Attorneys for Defendants* |

---

## BRIEF IN SUPPORT OF
## PLAINTIFF THOMAS E. UNDERWOOD'S MOTION
## FOR COSTS AND ATTORNEYS' FEES UNDER ERISA §502(g)(1),
## AND FOR PREJUDGMENT INTEREST

*oral argument requested*

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES

I.     HISTORY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    UNDERWOOD IS ENTITLED TO COSTS AND ATTORNEYS'
       FEES UNDER ERISA §502(g), AND PREJUDGMENT INTEREST . . . . 5

       A.     Factors to Consider in Determining the Propriety of
              Awarding Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

              1.     Defendants were 100% culpable for creating the benefit
                     shortfall . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              2.     The Plan can easily satisfy an award of attorneys' fees . . . . . . 6

              3.     An award of attorneys' fees here will deter others acting
                     under similar circumstances from adopting plan
                     amendments prohibited under the plan's plain language . . . . . 6

              4.     Underwood sought to benefit all similarly situated Plan
                     participants and resolve a significant legal question
                     regarding ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

              5.     Underwood's position was clearly the more meritorious . . . . 7

       B.     Lodestar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              1.     Reasonable hourly rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

              2.     Reasonable hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       C.     Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       D.     Prejudgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.   CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# INDEX OF AUTHORITIES

**Cases**

Algie v. RCA Global Communications,
60 F.3d 956 (2nd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Anderson v. P&G,
220 F.3d 449 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

B&G Mining, Inc v. Director, Office of Workers' Compensation Programs, U.S.
Dept. of Labor, 552 F.3d 657 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Blum v. Stenson,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) . . . . . . . . . . . . . . . . . . . 7

Caffey v. Unum Life Ins. Co.,
302 F.3d 576 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 26

Coulter v. Tennessee,
805 F.2d 146 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 16

Dishman v. UNUM Life Ins. Co. of Am.,
269 F.3d 974 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Ford v. Uniroyal Pen. Plan,
154 F.3d 613 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 26

Geier v. Sundquist,
372 F.3d 784 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Hahnemann Univ. Hosp. v. All Shore, Inc.,
514 F.3d 300 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Hargrove v. Eaglepicher Corp.,
No. 10-10946, 2012 U.S. Dist. LEXIS 77726 (E.D. Mich. May 10, 2012) . . 10, 12

Hensley v. Eckerhart,
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) . . . . . . . . . . . . . . . . . 8, 14

HikLex Controls, Inc. v. Blue Cross & Blue Shield of Mich.,
No. 11-12557, 2013 U.S. Dist. LEXIS 99636 (E.D. Mich. 2013) . . . . . . . . . . . 26

Jordan v. City of Cleveland,
464 F.3d 584, 604 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LifeCare Mgmt Servs. LLC v. Ins. Mgmt. Adm'rs,
703 F.3d 835 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Missouri v. Jenkins,
491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) . . . . . . . . . . . . . . . . . . 8

Moon v. Unum Provident Corp.,
461 F.3d 639 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Moore v. CapitalCare, Inc.,
461 F.3d 1 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Pennsylvania v. Del. Valley Citizens' Council for Clean Air,
478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) . . . . . . . . . . . . . . . . . . 8

Perdue v. Kenny,
559 U.S. 542, 130 S. Ct. 1662, 1776 L. Ed. 2d 494 (2010) . . . . . . . . . . . . . . . . 8

Peterson v. Continental Cas. Co.,
282 F.3d 112 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Potter v. Blue Cross Blue Shield of Michigan,
No. 10-14981, 2014 U.S. Dist. LEXIS 44720 (E.D. Mich. Jan. 30, 2014) . . . . . 10

Potter v. Blue Cross Blue Shield of Michigan,
No. 10-14981, 2014 U.S. Dist. LEXIS 43774 (E.D. Mich. Mar. 31, 2014) . . 10, 12

Reed v. Rhodes,
179 F.3d 453 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Reese v. CNH Global N.V.,
No. 04-70592, 2011 U.S. Dist. LEXIS 70607 (E.D. Mich. June 30, 2011) . . 11, 12

Rybarczyk v. TRW, Inc.,
235 F.3dd 975 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan,
711 F.3d 675 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-22

Secretary of Labor v. King,
775 F.2d 666 (6th Cir. 1985)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit
Plan, 581 F.3d 355 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health &
Welfare Trust Fund, 203 F.3d 926 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . 20

Skretvedt v. E.I. Dupont de Nemours,
372 F.3d 193 (3rd Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. City of Warren,
138 F.3d 1083 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United Steel Paper & Forestry, Rubber, Mfg., Energy v. Kelsey-Hayes Co.,
No. 11-15497, 2013 U.S. Dist. LEXIS 82253 (E.D. Mich. June 12, 2013) . . . . . 10

## Statutes

28 U.S.C.§1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 U.S.C. §1085 [ERISA §305] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

29 U.S.C. §1132(g)(1) [ERISA §502(g)(1)] . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## Other

*2014 Economics of Law Practice in Michigan:*
*Attorney Income and Billing Rate Summary Report* . . . . . . . . . . . . . . . . . . . . . 9, 12

*Economic News Release* (Sept. 17, 2014), Bureau of Labor Statistics
http://www.bls.gov/news.release/ cpi.nr0.htm . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Fund Investors Lag As S&P 500 Nears All-Time High*
by Tom Anderson of Forbes.com
http://www.forbes.com/sites/advisor/2014/04/24/why-the-average-investors-invest
ment-return-is-so-low/ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Rates remain stuck at 15.06 percent for fourth week*
by Kelly Dilworth
http://www.creditcards.com/credit-card-news/interest-rate-report-091714-unchang
ed-2121.php . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Why Average Investors Earn Below Average Market Returns*
by Dana Anspach
http://moneyover55.about.com/od/howtoinvest/a/averageinvestor.htm . . . . . . . 24

## I.    HISTORY OF THE CASE

This case has a history pre-dating the filing of the Complaint, much of which is noted in the Time Records (PX1)[1] recorded by the undersigned attorney for the Class (Cantarella) and the other attorneys who worked on this case. Activities commenced in June of 2013 when Cantarella began receiving telephone calls from disabled Participants in the Plan, advising that they had received a Notice informing them that (i) their Disability Retirement Benefits ("DRB") under §5.1 of the Plan would be drastically reduced pursuant to a Plan amendment (the "Reduction Amendment"), effective 8/1/2013, and (ii) under that amendment, if they did not obtain a Social Security disability award by 8/1/2014, their DRB would be eliminated altogether. See Time Records (PX1) (documenting these calls).[2] The callers sought

---

[1]  This Exhibit is divided into five subparts labeled as follows: **Subpart 1:** Time Spent on Investigation of Claim and on Administrative Proceedings (not compensable under ERISA §502(g)(1) because not part of the "action"); **Subpart 2:** Time Spent Preparing the Rule 54 Motion for Common Fund Attorneys' Fees and Related Expenses (not requested in this motion); **Subpart 3:** All Other Time Spent on the Litigation (except Subpart 4 Time), Including Briefing the Request for Prejudgment Interest (compensable); **Subpart 4:** Time Spent Preparing the Motion and Brief for Costs and Attorneys' Fees Under ERISA §502(g)(1) (compensable); **Subpart 5:** All Time Spent on the Claim Before, During, and After the Complaint Was Filed (includes time that may not be compensable under ERISA §502(g)(1)).  The compensable and non-compensable time will be discussed in more detail later in this brief.

[2]  To the extent not specifically noted in the Time Records or documented via another Exhibit to this brief, Cantarella, by her e-signature below, attests to all facts asserted in this Part I.

Cantarella's assistance in recovering their wrongfully withheld benefits.  Id.

In response to these telephone calls and requests for assistance, Cantarella commenced an investigation of a possible claim, which included (i) locating and obtaining copies of the governing Plan instruments, Notices issued to Participants in recent years, and the Plan's most recent annual financial reports; and (ii) researching the ERISA statute, §305, under which Defendants purported to have lawfully made the DRB reductions.  Time Records (PX1).  Cantarella also interviewed each caller to (i) ascertain the amount of their benefit reduction, obtain their contact information, and glean any other information that might be helpful in pursuing a claim to have the original DRB amount reinstated and back benefits paid; and (ii) determine who might be a suitable representative for all Class members if the claim were eventually filed as a class action.  Id.

During these interviews, Cantarella took copious notes, created a spreadsheet with all of the pertinent putative Class member information, and created an email list to facilitate her communications with the putative Class members.  Id.  One of the callers, Tom Underwood, was particularly helpful in identifying and obtaining Plan documents and pertinent Notices to Participants.  Therefore, Cantarella inquired of Underwood as to whether he might be interested in serving as a Class representative in the event an administrative appeal proved unsuccessful.  Id. Underwood responded in the affirmative, subject to his review and approval of the proposed fee agreement,

2

which Cantarella subsequently prepared and discussed with Underwood, after which they both signed the agreement.  Id. and Fee Agreement (PX2).

Thereafter, Cantarella prepared for Underwood an administrative Claim (doc 10-9), which Defendants denied (doc 10-10), and an administrative Appeal (doc 10-11), which Defendants also denied (doc 10-12).  Less than a week later, on 10/24/2013, Cantarella filed the putative Class Action Complaint (doc 1).  Shortly thereafter, in an effort to locate more Class members so as to show "numerosity" for class certification, Hertz Schram PC ("HSPC") added information about the then putative Class Action to its website and to the Facebook websites of the major unions participating in the Plan.[3]  Time Records (PX1).

Defendants subsequently filed a motion to dismiss (doc 7), to which Underwood filed a response objecting to the motion (doc 10), a motion for summary judgment (doc 11), and a motion to certify the class (doc 12).  Thereafter, defendants filed a reply in support of their motion to dismiss (doc 14), a response and objections to Underwood's motion for summary judgment (doc 15), and a response and objections to Underwood's motion to certify the class (doc 16).  Underwood, in turn, filed a reply in support of his motion to certify the class (doc 18) and a reply in support of his motion for summary judgment (doc 19).  The last of these briefs, which

---

[3]  This information included a statement that the then putative Class had not yet been certified by the Court.

collectively included many exhibits, was filed on 3/28/2014.

On 5/06/2014, the parties received a notice that the case had been reassigned from Judge Zatkoff to Judge Michelson (doc 20). The next day (5/7/2014), they received the Order of Reassignment, along with instructions to provide a statement of the case within 7 days (doc 21). Subsequently, the parties received a Notice to Appear by Telephone for a status conference on 5/21/14 (doc 22), which was duly held. A few weeks later, Underwood learned that a Complaint had been filed by plaintiff Lawrence Schleben, alleging the same Claim. Shortly thereafter, Underwood filed, in this case, a motion to consolidate the Schleben action with this action (doc 23) and, in the Schleben case, a notice of the motion. Following Schleben's response, Underwood filed a reply in support of his consolidation motion (doc 24).

On 8/06/2014, the Court issued a notice to the parties that it would conduct a hearing on 9/09/2014 on the merits motions, motion for class certification, and motion to consolidate (doc 25). A few days before the hearing, Underwood received a Notice from Defendants, which stated that, under the Plan, only those disability benefits not "in pay status" could be reduced (doc 26-1). The relevance of this Notice was that Underwood had argued in the litigation that §10.4 of the Plan expressly prohibits Plan amendments that reduce the benefits [of any kind] of persons who are already receiving benefits. Therefore, Underwood filed the Notice in this action and the Schleben action the very next day. Id. On 9/15/2014, following the 9/09/14

hearing, the Court issued an Opinion and Order granting Underwood's motion to certify the class (doc 27), and an Opinion and Order granting summary judgment for Underwood on his legal theory that the Reduction Amendment was illegal and unenforceable *under the Plan's own terms* and therefore had to be read out of the Plan (doc 28 p10 and pp15-21, citing §10.4 and §10.11 of the Plan).

## II. UNDERWOOD IS ENTITLED TO COSTS AND ATTORNEYS' FEES UNDER ERISA §502(g), And PREJUDGMENT INTEREST

### A. Factors to Consider in Determining the Propriety of Awarding Attorneys' Fees

ERISA §502(g)(1) permits the court to award costs and attorneys' fees to any party in an action brought under Title I of ERISA:

> In any action under this title [Title I of ERISA, entitled "Protection of Employee Benefit Rights," covering ERISA §§2 through 734, 29 U.S.C. §§1001 through 1191c] (other than an action described in paragraph (2) [pertains to delinquent contributions] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. §1132(g)(1). This action was brought under Title I.

In assessing whether an award of attorneys' fees is appropriate under ERISA §502(g)(1), the Sixth Circuit instructs district courts to consider the following factors:

1. the degree of the opposing party's culpability or bad faith;
2. the opposing party's ability to satisfy an award of attorneys' fees;
3. the deterrent effect of an award on other persons under similar circumstances;

4.    whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

5.    the relative merits of the parties' positions.

Moon v. Unum Provident Corp., 461 F.3d 639, 642 (6th Cir. 2006) (citing Secretary of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985)).

**1.     Defendants were solely culpable for unlawfully reducing the DRB.**

The Trustees adopted the Reduction Amendment (see doc 10-8 at pp15-16), without the participation of the Class members.  Therefore, the Trustees were 100% culpable for unlawfully reducing the DRB.

**2.     The Plan can easily satisfy an award of attorneys' fees**

According to the Plan's latest annual funding notice (PX3), the fair market value of the Plan's assets as of 4/30/2014 equaled nearly 720 million dollars.  The fee request here is only $415,754.00, meaning the Plan can easily satisfy the fee request.

**3.     An award of attorneys' fees here will deter others acting under similar circumstances from adopting plan amendments prohibited under the plan's plain language**

An award of attorneys' fees here would send a message to other ERISA-plan trustees that if they adopt an amendment prohibited under the plain language of the plan, there may be a cost in excess of the mere payment of the benefits owed under the pre-amendment version of the plan.  That cost should deter other ERISA trustees from adopting plan amendments that are prohibited under the plan's own terms.

**4.    Underwood sought to benefit <u>all</u> similarly situated Plan participants, and to resolve a significant legal question regarding ERISA**

Underwood agreed to serve as the Class representative with all of its attendant responsibilities, and through his Complaint and motion for Class certification, he sought to benefit <u>all</u> persons who had their DRB reduced under the Reduction Amendment.  Underwood also sought to resolve the significant legal question of whether ERISA §305 prohibited Defendants from reducing the DRB of persons who were already in pay status.  Although the Court held that §305 neither required nor prohibited the DRB reductions, that should not minimize Underwood's efforts to resolve the ERISA §305 question.

**5.    Underwood's position was clearly the more meritorious**

The Court denied Defendants' motion to dismiss and granted summary judgment for Underwood based on his legal theory that the DRB reductions were prohibited under §10.4 of the Plan.  Clearly, Underwood's position was the more meritorious.

**B.    Lodestar**

In an attorney fee case, the primary concern is that the fee awarded be "reasonable." <u>Reed v. Rhodes</u>, 179 F.3d 453, 471 (6th Cir. 1999) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which

avoids producing a windfall for lawyers." Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004). See also Coulter v. Tennessee, 805 F.2d 146, 149 (6th Cir. 1986) ("[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question.").

The starting point for determining a reasonable fee is the lodestar, which is the product of the number of reasonable hours billed and a reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The "lodestar method yields a fee that is presumptively sufficient" to award a "reasonable fee under federal fee-shifting statutes, and this presumption is a "strong one." Perdue v. Kenny, 559 U.S. 542, 552, 130 S. Ct. 1662, 1776 L. Ed. 2d 494 (2010); Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986). A reasonable attorneys' fee also includes work performed by law clerks and paralegals calculated at the market rate. Missouri v. Jenkins, 491 U.S. 274, 285, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).

### 1. Reasonable hourly rate

The Sixth Circuit has held that, "[t]o arrive at a reasonable hourly rate, courts use *as a guideline* the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Geier, 372 F.3d at 791 (italics added). Rates awarded in prior cases may also be considered in determining the reasonable hourly rate, as they too

provide "inferential evidence of what a market rate is." B&G Mining, Inc v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor, 552 F.3d 657, 664 (6th Cir. 2008). Consideration of such awards is especially appropriate where there is only a relatively small number of comparable attorneys in the relevant market. Id. Indeed, "[c]ourts . . . routinely consider awards in prior decisions, not as binding precedent but as inferential evidence of what constitutes a reasonable hourly rate." Id. at n.2. Affidavits from attorneys in the same or similar field may also be considered in determining the reasonable rate. Id. at 666. Geier, 372 F.3d at 791.

Here, Underwood proffers five relatively recent opinions from four ERISA class actions in the Eastern District of Michigan, awarding hourly rates for senior partners ranging from $425/hour to $475/hour, and for senior associates from $230/hour to $250/hour. Underwood also proffers the 2014 Economics of Law Practice in Michigan: Attorney Income and Billing Rate Summary Report ("2014 Survey") (PX4), discussed below, as at least two of the opinions were based on an older 2010 State Bar Survey of billing rates.

The most recent case, Potter v. Blue Cross Blue Shield of Michigan, was a class action for ERISA health benefits. There, the magistrate judge determined a fee award based on $425/hour for time spent by a senior partner of the firm, $350/hour for other firm partners, $300/hour for a sole practitioner outside the firm, and $250/hour for the firm's associates. Potter, No. 10-14981, 2014 U.S. Dist. LEXIS

44720 *21-23 (E.D. Mich. Jan. 30, 2014).  In arriving at these rates, the magistrate judge considered billing rates published in a 2010 State Bar Survey for (i) attorneys in the 95th percentile with 16-35 years of experience, (ii) sole practitioners in the 95th percentile with 16-35 years of experience, and (i) associates in the 75th percentile [years unspecified in the opinion].  Id.  The district court judge affirmed the magistrate's fee recommendation, reasoning that courts in the Eastern District of Michigan have awarded rates as high as $475/hour for lead and experienced class counsel in ERISA health benefit class actions; the senior partner was experienced and the lead attorney; and the other partners and associates were also experienced in handling "matters of this sort."  Potter v. Blue Cross Blue Shield of Michigan, No. 10-14981, 2014 U.S. Dist. LEXIS 43774 *19-20 (E.D. Mich. Mar. 31, 2014).

In United Steel Paper & Forestry, Rubber, Mfg., Energy v. Kelsey-Hayes Co., 2013 U.S. Dist. LEXIS 82253, No. 11-15497 (E.D. Mich. June 12, 2013), a class action for health benefits under ERISA and the Labor Management Relations Act (LMRA), the district court awarded attorneys' fees at the requested rate of $475/hour, finding that class counsel were highly experienced in ERISA/LMRA litigation and that their requested rates were reasonable and consistent "in the relevant community." Id. at *9-10.[4]  Hargrove v. Eaglepicher Corp., No. 10-10946, 2012 U.S. Dist. LEXIS 77726 (E.D. Mich. May 10, 2012), was another class action for health benefits under

---

[4] The district court also awarded $125/hour for paralegal work.  United Steele at *10.

ERISA and the LMRA, brought by the same attorneys who represented the class in United Steel.  The district court awarded attorneys' fees at the rate of $475/hour based on class counsel's qualifications and experience.  Id. at *5.

Reese v. CNH Global N.V., No. 04-70592, 2011 U.S. Dist. LEXIS 70607 (E.D. Mich. June 30, 2011), was also a class action for health benefits under ERISA and the LMRA, but concerned a supplemental fee request, as the initial award had been made three years earlier.  The district court awarded $475/hour [up from $400/hour three years earlier] for time spent by two senior partners with considerable experience litigating this type of claim (see doc 230-2 and 230-3), $370/hour [up from $300/hour three years earlier] for time spent by a junior partner, and $230/hour [up from $225/hour three years earlier] for time spent by an associate.  Id. at *12.

Class counsel in this case are highly experienced in handling class claims for benefits from an ERISA-governed *pension* plan, having litigated 13 such class actions during the last 20 years.  See Cantarella, Schram and Geller Affidavits (PX5, PX6, and PX7).  This is a specialty above and beyond litigating class claims for ERISA health benefits, as evidenced by the fact that there exists a dearth of opinions in this district respecting class claims for benefits from an ERISA-governed *pension* plan, while the contrary is true respecting class claims for ERISA health benefits.  Indeed, an attorney litigating class claims from an ERISA pension plan must be intimately familiar with the statutes and regulations governing such plans.  In addition,

Cantarella is lead counsel on this case and has been prosecuting class claims for ERISA benefits for nearly 20 years (PX5); Schram has been practicing for 38 years (nearly 20 of those years prosecuting class claims for ERISA benefits) (PX6); and Geller has been practicing for 32 years (nearly 20 of those years prosecuting class claims for ERISA benefits) (PX7).  In light of the prior district court fee opinions and the experience and competence of Class Counsel, it would be reasonable to apply the 95th percentile billing rates set forth in the 2014 Survey, which are (i) for Cantarella, $488/hour, but without any consideration of lead counsel status, which should justify a higher hourly rate for Cantarella of $515/hour; (ii) for Schram, $525/hour, and (iii) for Geller, $515/hour (PX4 at p4, Table 4).  Senior associate Daniel Rucker has also provided considerable legal research assistance in this case.  Rucker has practiced for 10 years, has prosecuted other complex claims, and, over the years, has provided extensive research assistance on various ERISA  issues.  Rucker Affidavit (PX8).  Rucker's relevant experience, years of practice, and work on this case, justify a rate for Rucker also in the 95th percentile, which would be $370/hour based on the 2014 Survey (PX4 p4 Table 4).

Reese was decided over three years ago; Hargrove was decided over two years ago; and United Steel was decided over one year ago.  Although Potter was decided less than one year ago, the rates awarded there were based on the State Bar's 2010 Survey.  The 2014 Survey rates are higher.  In line with the 95th percentile rates in the

2014 Survey, the reasonable hourly rates for Class Counsel here are–

| | |
|---|---|
| Cantarella: | $515/hour |
| Schram: | $525/hour |
| Geller: | $515/hour |
| Rucker: | $370/hour |

### 2.   Reasonable hours

The Sixth Circuit and all other federal courts of appeals that have considered the issue hold that time spent on pre-suit *administrative* proceedings is not compensable under ERISA §502(g)(1).  Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 313 (3rd Cir. 2008); Peterson v. Continental Cas. Co., 282 F.3d 112, 121 (2nd Cir. 2002); Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 987 (9th Cir. 2001); Anderson v. P&G, 220 F.3d 449, 456 (6th Cir. 2000).  They reason that the statute permits only the recovery of costs and fees incurred in an "action," and that the term "action" refers to a lawsuit.  Id.

However, the federal courts of appeals have just as consistently held that pre-suit time spent preparing for *the litigation is* compensable under ERISA §502(g)(1).[5] LifeCare Mgmt Servs. LLC v. Ins. Mgmt. Adm'rs, 703 F.3d 835, 847 and n.12 (5th Cir. 2013) ("[T]he award of $20,000 in fees for pre-suit work was not an abuse of discretion because the Appellants have failed to show that the fees were not for work in preparation for this lawsuit. . . .The cases relied on by Appellants . . . make clear

---

[5]  Class Counsel were unable to find a Sixth Circuit case on this point.

the pre-suit fees are recoverable so long as the fees are for work in preparation for litigation and not for pre-trial administrative proceedings."); Dishman, 269 F.3d at 987 n. 51 ("[A]ttorneys' fees for work done *on the lawsuit* prior to the filing of the lawsuit are recoverable.") (italics added); Hahnemann Univ. Hosp., 514 F.3d at 314 n.10 ("In recalculating the attorneys' fees on remand, the District Court should note that Hahnemann 'is entitled [to] collect a reasonable amount for fees and costs incurred in initiating suit in the District Court.' . . . Thus, we agree with the Second Circuit that the time spent drafting the complaint is properly considered as part of the litigation in the District Court, even though it occurred prior to filing.") (citing Peterson, 282 F.3d at 121 n.5, wherein the Second Circuit held: "Of course, Peterson is entitled to collect a reasonable amount for fees and costs incurred in initiating suit in the District Court.  For example, time spent drafting the complaint is properly considered part of the litigation in a district court, even though it occurs prior to filing.").  It follows that this Court may award costs and fees for time Class Counsel spent on the litigation, including time spent preparing the Complaint.

In determining the reasonable hours, the Supreme Court has instructed that fee applicants should exercise billing judgment respecting the hours worked and should maintain billing time records.  Hensley, 461 U.S. at 437.  Courts should not, however, reduce an attorney's hours on the ground that one or more theories of recovery were not accepted by the court:

What has been said to this point brings into play the doctrine announced in Thurman v. Yellow Freight Sys., 90 F.3d 1160, 1169 (6th Cir. 1996)):

> When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

That is so because litigation is not an "exact science": Lawyers cannot preordain which claims will carry the day and which will be treated less favorably. Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative (see Goos v. Nat'l Ass'n of Realtors, 314 U.S. App. D.C. 329, 68 F.3d 1380, 1386 (D.C. Cir. 1995)). Fee awards comport with that reality by giving full credit to a meaningfully successful plaintiff, rather than making a mechanical per-losing-claim deduction from an attorney's fee award (Hensley, 461 U.S. at 435).

Here Jordan's results were nothing short of exemplary. He prevailed on a substantial number of claims that he pursued, obtained virtually all of the types of relief he requested--including back and front pay and compensatory damages. Any reduction from the lodestar amount of attorney's fees is not only unwarranted but an abuse of discretion.

Jordan v. City of Cleveland, 464 F.3d 584, 604 (6th Cir. 2006).

Moreover, time spent preparing, presenting, and trying the application for statutory attorneys' fees *is* compensable as part of the reasonable fee. Coulter, 805 F.2d at 151. However, there are "guidelines and limitations" on the size of the fee request; "otherwise, the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of the . . . [main] case and the attorney fee case." Therefore, unless there exists unusual circumstances or the case goes to trial, the fees recoverable for time spent on a *statutory*-fee application are

generally limited to 3% of the time spent on the main case.  Id.  Because Coulter stated this limitation as a "guideline," it should not be treated as an inflexible rule.

There exists no evidence or reason for believing that the statutory fee request here (detailed below) will result in protracted litigation.  On the contrary, this case has progressed relatively quickly from Complaint to rulings on the merits and class certification; therefore, Underwood believes the Court will also expeditiously rule on this fee request.  And *the Class* surely has no incentive to extend the litigation.  Every day Class members do not receive the DRB to which they are entitled is another day they are without funds needed to pay living expenses and other financial obligations.  On the other hand, they desire a direct benefit from a successful statutory fee request, as will now be discussed.

Under the plain language of ERISA §502(g)(1), costs and attorneys' fees are awardable to a *party*, not the party's *attorney*.  See, 29 U.S.C. §1132(g)(1) ("the court in its discretion may allow a reasonable attorney's fee and costs of action to either *party*.") (italics added).  Accordingly, in his Complaint, Underwood specifically requested ERISA §502(g)(1) fees on behalf of himself and all others similarly situated (doc 1, ¶100).  Therefore, ERISA §502(g)(1) fees here *are* part of the main case and, as such, cannot be out of proportion with the main case.  Indeed, any ERISA §502(g)(1) fees awarded to the Class will minimize the impact of the eventual deduction from their recovery of any common fund fees the Court may award to Class

Counsel, which is just another reason why the §502(g)(1) fees here must be considered part of the main case.

Finally, if the 3% guideline were applied here, that would mean that only ___ hours could be compensated for preparation of this fee request. An allowance of only ___ hours for preparation of this fee request–a request that directly benefits the Class --greatly understates the actual time spent *and needed* to properly prepare the request.

Class Counsel have maintained time records for time spent (i) investigating the claim *before* the administrative proceedings (not compensable under §502(g)(1)); (ii) assisting Underwood in the administrative proceedings (not compensable under §502(g)(1)); and (iii) litigating the merits of the Claim, class certification, consolidation with the Schleben action, and preparing for oral argument on 9/9/14 (compensable under §502(g)(1); (iv) briefing the propriety of awarding prejudgment interest [addressed in subpart D, below] (compensable under §502(g)(1); (v) preparing *this* request for attorneys' fees (compensable under §502(g)(1)); and (vi) preparing the request for common-fund attorneys' fees (not requested in this motion). For the compensable items, Class Counsel have also exercised billing judgment by writing-off time they deemed duplicative or arguably unwarranted. See Time Records (PX1). Although the four charts on the next two pages detail all of the time Class Counsel attorneys have spent on the Claim, **the lodestar request here includes only the time they spent on (i) the litigation, including preparation of the**

Complaint, and (ii) this fee request, <u>after</u> appropriate write-offs (as indicated in

the charts).

## TIME CHARTS

| Investigation & Adminis-trative Proceedings (<u>not</u> compensable) | Attorney | Time | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|
| | Cantarella | 88.85 | 515 | 45,757.75 |
| | Geller | 3.10 | 515 | 1,596.50 |
| | Schram | 0.00 | 525 | 0.00 |
| | Rucker | 0.00 | 370 | 0.00 |
| Totals | | 91.95 | | 47,354.25 |

| Comm. Fund fee app (<u>not</u> requested) | Attorney | Time | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|
| | Cantarella | 38.75 | 515 | 19,956.25 |
| | Geller | 13.00 | 515 | 6,695.00 |
| | Schram | 0.00 | 525 | 0.00 |
| | Rucker | 15.00 | 370 | 5,550.00 |
| Totals | | 66.75 | | 32,201.12 |

| Litigation, but not time spent on common fund fee app (compensable) | Attorney | Time **Before** Write Offs | Time **After** Write Offs | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|---|
| | Cantarella | 580.20 | 573.20 | 515 | 295,198.00 |
| | Geller | 175.60 | 163.70 | 515 | 84,305.50 |
| | Schram | 13.50 | 10.90 | 525 | 5,722.50 |
| | Rucker | 1.70 | 1.70 | 370 | 629.00 |
| **Totals** | | 770.80 | 749.30 | | 385,855.00 |

| §502(g)(1) fee app (compensable) | Attorney | Time **Before** Write Offs | Time **After** Write Offs | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|---|
| | Cantarella | 42.10 | 35.60 | 515 | 18,334.00 |
| | Geller | 20.60 | 12.60 | 515 | 6,489.00 |
| | Schram | 1.50 | 1.00 | 525 | 525.00 |
| | Rucker | 19.30 | 12.30 | 370 | 4,551.00 |
| **Totals** | | 83.50 | 61.50 | | 29,899.00 |

Thus, the total lodestar **requested** [last 2 charts] under ERISA §502(g)(1) is **$415,754.00.**

### C.    Costs

The costs incurred from the time the Complaint was filed on 10/24/13 through 10/01/2014, underlined excluding copy costs because HSPC uses running totals for that expense,

equal $518.39 and include only those costs associated with compensable time, and encompass the Complaint filing fee, messenger delivery fees, parking, and mileage reimbursement at 0.45/mile. <u>See</u> Expense Records (reflecting deletions for non-compensable costs) (PX9). Because these are clearly the costs of the "action," they are recoverable under ERISA §502(g)(1).

### D.    Prejudgment Interest

In addition to requesting costs and fees under ERISA §502(g)(1), Underwood's Complaint also requested prejudgment interest (doc 1, ¶100). Although ERISA does not expressly authorize an award of prejudgment interest, the Sixth Circuit has long recognized the propriety of granting such relief where the defendant wrongfully withheld ERISA benefits. <u>Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan</u>, 711 F.3d 675, 685-686 (6th Cir. 2013) (pension benefits); <u>Shelby County Health Care Corp. v. Majestic Star Casino, LLC Group Health Benefit Plan</u>, 581 F.3d 355, 376 (6th Cir. 2009) (health benefits); <u>Caffey v. Unum Life Ins. Co.</u>, 302 F.3d 576, 585 (6th Cir. 2002) (**disability benefits**); <u>Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund</u>, 203 F.3d 926, 937 n.3 (6th Cir. 2000) (health benefits).

As often explained by the Sixth Circuit, prejudgment interest is necessary to compensate plaintiffs for the time value of their withheld benefits and effects of inflation. <u>Schumacher</u>, 711 F.3d at 686 (6th Cir. 2013) (citing cases) (pension

benefits); <u>Ford v. Uniroyal Pen. Plan</u>, 154 F.3d 613, 618 (6th Cir. 1998) ("Awards of prejudgment interest pursuant to §1132(a)(1)(B) [ERISA §502(a)(1)(B)] . . . are not punitive, but simply compensate a beneficiary for the lost interest value of money wrongly withheld from him or her.") (**disability retirement benefits**).[6]  "[A prejudgment] interest award that fails to make the plaintiff whole due to an inadequate compensation for her lost use of money frustrates the purpose of ERISA's remedial scheme." <u>Schumacher</u>, 711 F.3d at 686.  By the same token, an award that is excessive also frustrates ERISA's remedial goal of putting plaintiffs in the position they would have occupied but for defendants' wrongdoing.  <u>Id</u>.  Accordingly, courts must strike a balance between ensuring that the award is not punitive while at the same time not allowing a Plan or Fund to be unjustly enriched by retaining interest earned on funds wrongfully withheld.  <u>Id</u>. (citing <u>Rybarczyk v. TRW, Inc.</u>, 235 F.3dd

---

[6] <u>See also</u> <u>Moore v. CapitalCare, Inc.</u>, 461 F.3d 1, 12-13 (D.C. Cir. 2006) ("We agree with the circuits that have held that prejudgment interest on unpaid ERISA benefits is *presumptively* appropriate," as it "ensures that a beneficiary is fully compensated, including for the loss of the use of money that is his," and "promotes settlement and deters any attempt to benefit unfairly from inevitable litigation delay.") (citing cases); <u>Skretvedt v. E.I. Dupont de Nemours</u>, 372 F.3d 193, 206, 207 (3rd Cir. 2003) (interest is recovered "in response to considerations of fairness," and "an ERISA plaintiff who prevails under §502(a)(1)(B) in seeking an award of benefits may request prejudgment interest under that section as part of his or benefits.") (**disability benefits**; extensive analysis); <u>Algie v. RCA Global Communications</u>, 60 F.3d 956, 957, 959, 961 (2nd Cir. 1995) (affirmed prejudgment interest award on claim for severance benefits brought under ERISA §502(a)(1)(B)).

975, 985 (6th Cir. 2000), which quoted Ford, 154 F.3d at 616)).[7]

Although the Sixth Circuit has upheld awards of prejudgment interest calculated pursuant to the federal post-judgment interest statute, 28 U.S.C.§1961, it has held that "a mechanical application of the rate at the time of the award amounts to an abuse of discretion." Schumacher, 711 F.3d at 686 (citing Rybarczyk, 235 F.3d at 985-87). Thus, in Schumacher, the Sixth Circuit reversed the district court's award of prejudgment interest at the §1961 rate of 0.12%, and remanded to the district court to determine a more appropriate rate, reasoning that (i) the Plan had earned a much higher rate on the funds (6.55%) and its borrowing costs were also much higher (7.75%) and, therefore, "[a]llowing such a disparity would result in an unfair economic benefit to Appellants," (ii) in a related case with the same claims, plaintiffs received prejudgment interest at a rate of 4.7% and, therefore, the 0.12% award was "absurd" and constituted "reversible error," and (iii) although the Consumer Price Index (CPI) measured the annual inflation rate at approximately 2.75%, a prejudgment interest award based on the CPI would constitute an abuse of discretion if it failed to adequately compensate plaintiffs for the lost use of their money. Id. at 686-687 (citing Rybarczyk, 235 F.3d at 986; Ford, 154 F.3d at 618-619; and United States v. City of Warren, 138 F.3d 1083, 1096 (6th Cir. 1998)).

---

[7]  In light of these holdings, time spent briefing whether prejudgment interest is awardable in this case, and the appropriate prejudgment rate, is clearly time spent on the "action," and, as such, compensable under ERISA §502(g)(1).

Relevant to determining the appropriate prejudgment interest rate in this case are the August 2013 and August 2014 Notices of Critical Status that Defendants issued to the Class members.  The August 2013 Notice states that the Fund expects to earn "8.00% . . . in the 2013-14 plan year or later" (see PX10 near bottom of 2nd pg), while the August 2014 Notice states that the Fund expects to earn "7.50% . . . in the 2014-15 plan year or later" (see PX11 near bottom of 2nd pg).  Given the downward revision in expected Fund earnings for the 2013-2015 period, from 8.00% to 7.50%, it is reasonable to assume that the Fund has earned approximately 7.50% for the period the DRB benefits have been wrongfully withheld (i.e., from 8/1/2013 to the present).

Earnings for individual investors might differ.  According to experts in the financial field, individual investor returns trailed the S&P 500[8] over the past 3, 5, 10 and 20 years by a little over 4% each year.  See Fund Investors Lag As S&P 500 Nears All-Time High by Tom Anderson of Forbes.com.

---

[8] "The S&P 500, or the Standard & Poor's 500, is a stock market index based on the market capitalizations of 500 large companies having common stock listed on the NYSE or NASDAQ. The S&P 500 index components and their weightings are determined by S&P Dow Jones Indices. It differs from other U.S. stock market indices, such as the Dow Jones Industrial Average or the Nasdaq Composite index, because of its diverse constituency and weighting methodology. It is one of the most commonly followed equity indices, and many consider it one of the best representations of the U.S. stock market, and a bellwether for the U.S. economy.[6] The National Bureau of Economic Research has classified common stocks, as a leading indicator of business cycles.[7]" http://en.wikipedia.org/wiki/S%26P_500

http://www.forbes.com/sites/advisor/2014/04/24/why-the-average-investors-investment-return-is-so-low/ (citing sources).[9]  As reported by the S&P 500, for the one-year period from September 19, 2013 to September 19, 2014, the S&P 500 returned 16.72%.  See http://us.spindices.com/indices/equity/sp-500.  This suggests that if Class members had invested the DRB benefits wrongfully withheld, they would have earned an annualized rate of approximately 12% on their monies.  It also suggests that using the 1.7% increase in the Consumer Price Index over the past year as the prejudgment rate would be inappropriate.[10]

Another factor to consider is the interest rate at which Class members might have borrowed to meet their monthly obligations given the sudden and dramatic loss in income resulting from the Reduction Amendment.  In view of decreases in DRB income ranging from 50% to 80%, most Class members would not have access to traditional credit sources and would likely rely on more extensive credit card usage and borrowing.  According to CreditCards.com, the national average credit card rate was 14.99% on September 17, 2013 and 15.06% on September 17, 2014.  See *Rates*

---

[9]  See also *Why Average Investors Earn Below Average Market Returns* by Dana Anspach  http://moneyover55.about.com/od/howtoinvest/a/averageinvestor.htm.  ("For the twenty years ending 12/31/2013 the S&P 500 Index averaged 9.22% a year.  A pretty attractive historical return.  The average equity fund investor earned a market return of only 5.02%.").

[10]  See *Economic News Release* (Sept. 17, 2014), Bureau of Labor Statistics. http://www.bls.gov/news.release/ cpi.nr0.htm

*remain stuck at 15.06 percent for fourth week*, by Kelly Dilworth. http://www.creditcards.com/credit-card-news/interest-rate-report-091714-unchanged-2121.php.  Rates are much higher (22.73%) for persons with "bad credit," a status imposed upon increasing numbers of Class members whose credit ratings continue to plummet as they struggle to meet their monthly obligations.

In view of the foregoing, it would be appropriate for this Court to select a prejudgment rate of 7.50% (the 2013-2015 earnings rate for the Fund, as estimated by Defendants in their Critical Status Notices to Class members), **or** 12% (the average annual rate Class members could have earned on their monies from the date those funds were wrongfully withheld), **or** 15% (the average rate Class members would likely have paid for short-term borrowing on their credit cards to meet their financial obligations) *assuming their credit remained good notwithstanding the loss of income and difficulty paying their monthly obligations after the Reduction Amendment.* **Certainly, the 12% annual rate most closely tracks the actual time value of money on the DRB funds wrongfully withheld because, as discussed, it is the estimated actual average rate of return Class members could have earned on those monies**.

Accordingly, Underwood requests that the Court select 12% as the annualized prejudgment rate, and apply the monthly component of this annualized rate to each

monthly DRB shortfall in a manner that equates to a 12% annualized rate.[11]  See

Caffey, 302 F.3d at 585 ("To the extent that the plaintiff objects to the district court's

use of a stream-of-benefits model to calculate prejudgment interest, we affirm the

decision of the district court.  The stream-of-benefits model calculated the interest

due on each monthly payment of disability benefits beginning with the date that each

payment was due."  The Sixth Circuit reasoned that interest could only be paid on

benefit payments as they became due.) (citing Ford, 154 F.3d at 619 (also applying

the "stream-of- benefits-method," although not using that terminology)); and HikLex

Controls, Inc. v. Blue Cross & Blue Shield of Mich., No. 11-12557, 2013 U.S. Dist.

LEXIS 99636 (E.D. Mich. 2013) ("The Sixth Circuit prefers the use of the stream of

benefits model to calculate ERISA prejudgment interest in order to preclude

overcompensatory awards.") (citing Caffey and other cases).

## III.   CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Underwood requests that the Court award the Class

costs and attorneys' fees under ERISA §502(g)(1) in the following amounts:

costs: $           $518.39

attorneys' fees:   $415,754.00

Underwood also requests that the Court award prejudgment interest on the DRB

_____

[11]  The monthly rate in this case would be 0.95%.  Financial calculator inputs: $1PV, 12n [i.e., 12 months], $1.12 FV [i.e., value of $1 after 12 months assuming a 12% annual rate of return], i [solve for the monthly interest rate] = 0.95% per month.

benefits wrongfully withheld at the annualized rate of 12%, applying the monthly

component of this annualized rate to each monthly DRB benefit in a manner that

equates to a 12% annualized rate.

Respectfully submitted October 2, 2014

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
Robert P. Geller (P26337)
Bradley J. Schram (P34391)
Hertz, Schram PC
1760 S. Telegraph Rd., Ste. 300,
Bloomfield Hills, MI 48302
o.248-335-5000; f. 248-335-3346; ecantarella@hertzschram.com
*Attorneys for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2014, I served on the below counsel for Defendants (i) Plaintiff Thomas E. Underwood's Motion for Costs And Attorneys' Fees Under ERISA §502(g)(1), And For Prejudgment Interest, (ii) Brief in Support, along with Exhibit List and Exhibits, and (iii) this Certificate of Service, via the Court's ECM e-filing system.  I also uploaded to the Court a proposed Order via the Court's ECF Utilities function and emailed the proposed Order to the below counsel for Defendants.

Edward J. Pasternak (P58766)
John I. Tesija (P36709)
Novara Tesija PLLC
2000 Town Center, Ste. 2370
Southfield, MI 48075
o. 248-354-0380; f. 248-354-0393
ejp@novaratesija.com
tesija@novaratesija.com
*Attorneys for Defendants*


/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
ecantarella@hertzschram.com
*Attorney for the Class*