## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

    Defendants.

Case No. 2:13-cv-14464
Hon. Laurie J. Michelson

**CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for Class* | *Attorneys for Defendants* |

---

### RULE 54 MOTION FOR COMMON FUND FEES AND RELATED EXPENSES
### [brief in support attached]
*oral argument requested*

Pursuant to Fed. R. Civ. P. 54(d)(2)(B), Class Counsel files this Motion for

Common Fund Fees and Related Expenses. The reasons in support of this Motion are

set forth in the attached brief.

H0166453.3

1

On September 25, 2014, the undersigned attorney for the Class contacted Defendants' attorney, Edward Pasternak ("Pasternak"), to inform him that she would soon be filing the instant motion and to request Defendants' concurrence in the relief requested. Pasternak responded that Defendants would <u>not</u> concur in the relief requested.

Respectfully Submitted October 2, 2014

/s/ Eva T. Cantarella
Eva T. Cantarella (P519171)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-335-3346
ecantarella@hertzschram.com
*Attorneys for Plaintiff Thomas E. Underwood
and all others similarly situated*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood, individually and
on behalf of all others similarly situated,

      Plaintiff,

v.

                                         Case No. 2:13-cv-14464
                                         Hon. Laurie J. Michelson

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.                          **CLASS ACTION**

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

## BRIEF IN SUPPORT OF RULE 54 MOTION FOR
## COMMON FUND FEES AND RELATED EXPENSES
*oral argument requested*

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      PREFATORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     HISTORY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES
        FROM THE COMMON FUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      The Common Fund Exception to the American Rule . . . . . . . . . . . . 6

        B.      In the Sixth Circuit, the District Court May Award Common
                Fund Fees Using an Enhanced Lodestar Method or the
                Percentage of the Fund Method, But the Trend Is the
                Percentage Method . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      Percentage cases in this Circuit . . . . . . . . . . . . . . . . . . . . . . 9

                2.      Lodestar cases in this Circuit . . . . . . . . . . . . . . . . . . . . . . . 11

                3.      The reasonable common fund fee here . . . . . . . . . . . . . . . . 14

                4.      Related costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

III.    CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# INDEX OF AUTHORITIES

**Cases**

Blum v. Stenson,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed 2d 891 (1984) . . . . . . . . . . . . . . . . . . 6, 7

Boeing Co. v. Van Gemert,
444 U.S. 472, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980) . . . . . . . . . . . . . . . . . . . 6

Bowling v. Pfizer, Inc.,
102 F.3d 777 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

Chambers v. Nasco, Inc.,
501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) . . . . . . . . . . . . . . . . . . 6

Clevenger v. Dillards, Inc.,
No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464
(S.D. Ohio Mar. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 16

Coughlan v. Sprint Communs. Co. L.P.,
No. 11-11563, 2012 U.S. Dist. LEXIS 163197 (E.D. Mich. Nov. 15, 2012) . . . . 11

Denney v. Phillips & Buttoroff Corp.,
331 F.2d 249 (6th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Griffin v. Flagstar Bancorp, Inc.,
No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702
(E.D. Mich. Dec. 2, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13-14, 27

Humphrey v. United Way,
No 05-0758, 2007 U.S. Dist. LEXIS 59557 (S.D. Tex. Aug. 14, 2007) . . . . . . . 24

In re Broadwing, Inc. **ERISA** Litig.,
252 F.R.D. 369 (S.D. Ohio 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

In re Cardinal Health Inc. Sec. Litigs.,
528 F. Supp. 2d 752 (S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re CMS Energy **ERISA** Litig.,
No. 02-72834, 2006 U.S. Dist. LEXIS 55836
(E.D. Mich. June 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 27

In re Delphi Corp. Secs., Derivatives & "**ERISA**" Litig.,
248 F.R.D. 483 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re DPL Inc. Sec. Litig.,
307 F. Supp. 2d 947 (S.D. Ohio Mar. 8, 2004) . . . . . . . . . . . . . . . . . . . . . . 11

In re Kmart Corp. Sec. Litig.,
No. 95-CV-75584, 1998 U.S. Dist. LEXIS 23092 (E.D. Mich. Oct. 30, 1998) . . 11

In re Rio Hair Naturalizer Prods. Liab. Litig.,
MDL No. 1055, 1996 U.S. Dist. LEXIS 20440 (E.D. Mich. Dec. 20, 1996) . . . . 11

In re Visteon Corp. **ERISA** Litig.,
No. 05-71205, 2007 U.S. Dist. LEXIS 96023
(E.D. Mich. Mar. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10, 13, 27

Johnson v. Midwest Logistics Sys.,
No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201 (S.D. Ohio May 24, 2013) . . . 11

Kogan v. AIMCO Fox Chase, L.P.,
No. 98-cv-73230, 193 F.R.D. 496 (E.D. Mich. May 30, 2000) . . . . . . . . . . . . . 11

New Eng. Emples. Pension Fund v. Fruit of the Loom,
234 F.R.D. 627 (W.D. Ky 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

Ramey v. Cincinatti Enquirer, Inc.,
508 F.2d 1188 (6th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . 8, 9, 15-17, 19, 20, 23, 26

Rawlings v. Prudential-Bach Properties, Inc.,
9 F.3d 513 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 12, 13

Rotuna v. West Customer Mgmt. Group, LLC,
No. 4:09-cv-1608, 2010 U.S. Dist. LEXIS 58912 (N.D. Ohio, June 15, 2010) . . 11

iii

Schumacher v. AK Steel Corp. Ret. Accum. Pension Plan,
995 F. Supp. 2d 835 (S.D. Ohio 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 16, 17

Stanley v. United States Steel Co.,
No. 04-74654, 2009 U.S. Dist. LEXIS 114065 (E.D. Mich. Dec. 8, 2009) . . . . . 11

Swigart v. Fifth Third Bank,
2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) . . . . . . . . . . . . . . . . . 11

Worthington v. CDW Corp.,
No. C-1-03-659, 2006 U.S. Dist. LEXIS 32100 (S.D. Ohio May 22, 2006) . . . . 10

**Statutes**

29 U.S.C. §1085 [ERISA §305] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

29 U.S.C. §1132(g)(1) [ERISA §502(g)(1)] . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 28

**Public Laws**

Pension Protection Act of 2006, PL 109-280 (PPA) . . . . . . . . . . . . . . . . . . . . . 20

§101(d) of PL 109-280 (re effective date of PPA) . . . . . . . . . . . . . . . . . . . . . 21

**Court Rules**

Fed. R. Civ. P. 54 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 6(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## I.    PREFATORY STATEMENT

Fed. R. Civ. P. 54(d)(2)(B) states that, "[u]nless provided by statute or order of the court," a motion for attorneys' fees must be filed no later than 14 days after entry of a "judgment."  "Judgment" under Fed. R. Civ. P. 54(a) is defined to include "a decree and any order from which an appeal lies."  The Court issued it's Opinion and Order granting summary judgment for Underwood based on the terms of the Plan on September 15, 2014 (doc 28).  Therefore, in order for Class Counsel to obtain an attorney fee award, they are required to file this motion no later than October 2, 2014, which is 14 days after entry of the Opinion and Order plus the additional 3 days allowed under Fed. R. Civ. P. 6(d).

If the Court believes that a motion for common fund attorneys' fees is either premature at this time or would be best filed after some later event (e.g., after a decision from the Sixth Circuit Court of Appeals in the event Defendants elect to appeal or after a settlement of this dispute if that turns out to be the case), upon receipt of a such Order enlarging the date for filing a motion for common fund attorneys' fees, Class Counsel will withdraw this motion and file a new motion for common fund attorneys' fees by the designated date indicated by the Court.

H0166453.3

1

## II.    HISTORY OF THE CASE[1]

This case has a history pre-dating the filing of the Complaint, much of which is noted in the attached Time Records (PX1) recorded by the undersigned attorney for the Class (Cantarella) and the other attorneys who worked on this case.  Activities commenced in June of 2013 when Cantarella began receiving telephone calls from disabled Participants in the Plan, advising that they had received a Notice informing them that (i) their Disability Retirement Benefits ("DRB") under §5.1 of the Plan would be drastically reduced pursuant to a Plan amendment (the "Reduction Amendment"), effective 8/1/2013, and (ii) under that amendment, if they did not obtain a Social Security disability award by 8/1/2014, their DRB would be eliminated altogether.  See Time Records (PX1) (documenting these calls).[2]  The callers sought Cantarella's assistance in recovering their wrongfully withheld benefits.  Id.

In response to these telephone calls and requests for assistance, Cantarella commenced an investigation of a possible claim, which included (i) locating and obtaining copies of the governing Plan instruments, Notices issued to Participants in recent years, and the Plan's most recent annual financial reports; and (ii) researching

---

[1]  This section of the brief is identical to its counterpart section in Underwood's brief in support of his motion for statutory costs and attorneys' fees, and for prejudgment interest.

[2]  To the extent not specifically noted in the Time Records or documented via another Exhibit to this brief, Cantarella, by her e-signature below, attests to all facts asserted in this Part I.

the ERISA statute, §305, under which Defendants purported to have lawfully made the DRB reductions.  Time Records (PX1).  Cantarella also interviewed each caller to (i) ascertain the amount of their benefit reduction, obtain their contact information, and glean any other information that might be helpful in pursuing a claim to have the original DRB amount reinstated and back benefits paid, and (ii) determine who might be a good representative for all Class members if the claim were to eventually be filed as a class action.  Id.

During these interviews, Cantarella took copious notes, created a spreadsheet with all of the pertinent putative Class member information, and created an email list to facilitate her communications with the putative Class members.  Id.  One of the callers, Tom Underwood, was particularly helpful in tracking down and obtaining Plan documents and pertinent Notices to Participants.  Therefore, Cantarella inquired of Underwood as to whether he might be interested in serving as a Class representative in the event an administrative appeal proved unsuccessful.  Id.  Underwood responded in the affirmative, subject to his review and approval of the proposed fee agreement, which Cantarella subsequently prepared and discussed with Underwood, after which they both signed the agreement.  Id. and Fee Agreement (PX2).  Thereafter, Cantarella prepared for Underwood an administrative Claim (doc 10-9), which Defendants denied (doc 10-10), and an administrative Appeal (doc 10-11), which Defendants also denied (doc 10-12).  Less than a week later, on

10/24/2013, Cantarella filed the putative Class Action Complaint (doc 1). Shortly thereafter, in an effort to locate more Class members so as to show "numerosity" for class certification, Hertz Schram PC ("HSPC") added information about the Class Action to its website and to the Facebook websites of the major unions participating in the Plan.[3] Time Records (PX1).

Defendants subsequently filed a motion to dismiss (doc 7), to which Underwood filed a response objecting to the motion (doc 10), a motion for summary judgment (doc 11), and a motion to certify the class (doc 12). Thereafter, defendants filed a reply in support of their motion to dismiss (doc 14), a response and objections to Underwood's motion for summary judgment (doc 15), and a response and objections to Underwood's motion to certify the class (doc 16). Underwood, in turn, filed a reply in support of his motion to certify the class (doc 18) and a reply in support of his motion for summary judgment (doc 19). The last of these briefs, which collectively included many exhibits, was filed on 3/28/2014.

On 5/06/2014, the parties received a notice that the case had been reassigned from Judge Zatkoff to Judge Michelson (doc 20). The next day (5/7/2014), they received the Order of Reassignment, along with instructions to provide a statement of the case within 7 days (doc 21). Thereafter, the parties received a Notice to Appear

---

[3] This information included a statement that the then putative Class had not yet been certified by the Court.

by Telephone for a status conference on 5/21/14 (doc 22), which was duly held. A few weeks later, Underwood learned that a Complaint had been filed by plaintiff Lawrence Schleben, alleging the same Claim. Shortly thereafter, Underwood filed, in this case, a motion to consolidate the Schleben action with this action (doc 23) and, in the Schleben case, a notice of the motion. Following Schleben's response, Underwood filed a reply in support of his consolidation motion (doc 24).

On 8/06/2014, the Court issued a notice to the parties that it would conduct a hearing on 9/09/2014 on the merits motions, motion for class certification, and motion to consolidate (doc 25). A few days before the hearing, Underwood received a Notice from Defendants pertinent to his Claim, which he filed in both this action and the Schleben action the following day (doc 26). On 9/15/2014, following the 9/09/14 hearing, the Court issued an Opinion and Order granting Underwood's motion to certify the class (doc 27), and an Opinion and Order granting Underwood's motion for summary judgment on his legal theory that the Reduction Amendment was illegal and unenforceable *under the Plan's own terms* and therefore had to be read out of the Plan (doc 28 p10 and pp15-21, citing §10.4 and §10.11 of the Plan).

As discussed in Part III. B. 3., below, there is considerably more work for Class Counsel to do on this case before it is fully resolved.

## III.   CLASS COUNSEL ARE ENTITLED TO ATTORNEYS' FEES FROM THE COMMON FUND

### A.   The Common Fund Exception to the American Rule

Under the American Rule, parties generally bear their own costs in litigation. Chambers v. Nasco, Inc., 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). Excluded from this Rule is the "common fund" exception which is based on "the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980).  In Boeing, the Supreme Court held that, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." Id. (emphasis added).  And in Blum v. Stenson, 465 U.S. 886, 900 n.16, 104 S. Ct. 1541, 79 L. Ed 2d 891 (1984), the Supreme Court expressly held that, in common fund cases, "a reasonable fee is based on a percentage of the fund bestowed upon the class."[4]

---

[4]  Although the vast majority of common fund decisions involve a *settlement* fund, in Boeing the Supreme Court made clear that the common fund doctrine applies equally to *judgment* funds.  In fact, the Court held that, notwithstanding that only 47% of the class members claimed their *judgment* benefit, the district court's award of attorneys' fee from the entire *judgment* fund was "a proper application of the common-fund doctrine."  444 U.S at 478-481.

**B.    In the Sixth Circuit, the District Court May Award Common Fund Fees Using an Enhanced Lodestar Method or the Percentage of the Fund Method, But the Trend Is the Percentage Method.**

In light of the holding in <u>Blum</u>, it is unsurprising that the Sixth Circuit and nearly every district court common fund decision in the Sixth Circuit after <u>Blum</u> have noted a trend towards using a percentage of the fund method to determine the reasonable attorney fee.  <u>See</u> <u>Rawlings v. Prudential-Bach Properties, Inc.</u>, 9 F.3d 513, 515 (6th Cir. 1993); and cases sited in subpart 1 below.  Indeed, LEXIS research reveals that the vast majority of common fund decisions in this Circuit over the past 10-15 years have awarded attorneys' fees based on the percentage method.  <u>See again</u> cases cited in subpart 1 below.  However, the percentage method is not required in the Sixth Circuit; rather, the touchstone for determining an appropriate fee is that it be reasonable "under the circumstances." <u>Rawlings</u> at 516.  Therefore, in determining a reasonable common fund fee award, district courts may use either an enhanced lodestar method or the percentage method.  <u>Id</u>.  Each method has pluses and minuses:

> The percentage of the fund method . . . is easy to calculate; it establishes reasonable expectations on the part of plaintiffs' attorneys as to their expected recovery; and it encourages early settlement, which avoids protracted litigation.  However, a percentage award may also provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested.

> The lodestar method's listing of hours spent and rates charged provides greater accountability.  In addition, enhancing the lodestar with a separate multiplier can serve as a means to account for the risk an attorney assumes in undertaking a case, the quality of the attorney's

work product, and the public benefit achieved. The lodestar method also encourages lawyers to assess the marginal value of continuing work on the case, since the method is tied to hours and rates, and not simply a percentage of the resulting recovery.

However, the lodestar method has been criticized for being too time-consuming of scarce judicial resources. . . District courts must pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier. With the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement.

Id. (internal citations omitted).

Regardless of the method employed, the Sixth Circuit suggests analysis of the following factors in determining the appropriate fee in cases where the attorneys' work has benefitted many individuals:

(1) the value of the benefit rendered to the class;

(2) the value of the services on an hourly basis;

(3) whether the services were undertaken on a contingent fee basis;

(4) society's stake in rewarding attorneys who produce such benefits;

(5) the complexity of the litigation; and

(6) the professional standing and skill of counsel on both sides.

Ramey v. Cincinatti Enquirer, Inc., 508 F.2d 1188, 1196 (6th Cir. 1974) (citing

Denney v. Phillips & Buttoroff Corp., 331 F.2d 249 (6th Cir. 1964), and other cases.).

Ramey and Denney were shareholder derivative actions and did not produce an

ascertainable cash fund out of which fees would be paid.  Ramey, 508 F.2d at 1196

(noting that this was also the situation in <u>Denney</u>).  Therefore, some of the <u>Ramey</u> factors may not be applicable in a given common fund case.  Indeed, many common fund fee decisions do not discuss the <u>Ramey</u> factors at all, or only address those <u>Ramey</u> factors they deem pertinent to determining a reasonable fee award.  <u>See</u> cases cited in subparts 1 and 2 below.  At any rate, the <u>Ramey</u> factors will be further discussed in subpart 3 below.

### 1.    Percentage cases in this Circuit

Common fund percentage awards in ERISA class actions in this Circuit typically range from 25%-33%.  <u>See</u> <u>Schumacher v. AK Steel Corp. Ret. Accum. Pension Plan</u>, 995 F. Supp. 2d 835, 838 (S.D. Ohio 2014) (**ERISA** pension benefits) (approving $1,326,000 fee award, which equaled **30%** of the $4.42 million *judgment fund*, noting that the statutory fees previously awarded [$618,471.35] would "offset the total fee award dollar for dollar."); <u>Griffin v. Flagstar Bancorp, Inc.</u>, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 *23 (E.D. Mich. Dec. 2, 2013) (awarded **30%** of $3 million settlement fund, noting that "**ERISA** actions typically award between 30% and 33% on a percentage of the fund fee calculation"); <u>In re Delphi Corp. Secs., Derivatives & "**ERISA**" Litig.</u>, 248 F.R.D. 483, 502-03 (E.D. Mich. 2008) (noting that the **18% and 20%** fee requests were "more than reasonable" given that they were "**below the range** of percentage fee awards generally accepted in this District"); <u>In re Visteon Corp. **ERISA** Litig.</u>, No. 05-71205, 2007 U.S. Dist. LEXIS 96023 *8-9

(E.D. Mich. Mar. 9, 2007) (awarded **28%** of $7.6 million settlement fund); <u>Clevenger</u>

<u>v. Dillards, Inc.</u>, No. C-1-02-558, 2007 U.S. Dist. LEXIS 17464 *2 (S.D. Ohio Mar.

9, 2007) (awarded **29%** of settlement fund; **ERISA** pension benefits); <u>In re CMS</u>

<u>Energy **ERISA** Litig.</u>, No. 02-72834, 2006 U.S. Dist. LEXIS 55836 *10, (E.D. Mich.

June 27, 2006) (awarded **28.50%** of $28 million settlement fund); <u>New Eng. Emples.</u>

<u>Pension Fund v. Fruit of the Loom</u>, 234 F.R.D. 627, 630 and 634 (W.D. Ky 2006)

(awarded **25%** of two settlement funds totaling $42.30 million; **ERISA** pension

fund); <u>In re Broadwing, Inc. **ERISA** Litig.</u>, 252 F.R.D. 369, 380 (S.D. Ohio 2006)

(awarded **23%** of $11 million settlement fund, noting that it was "**well below** the

percentage of the recovery approved in similar cases") (emphasis added in all).

     In non-ERISA class actions in this Circuit, the percentages have ranged from

10% to over 38%, with most percentages around 33%.  <u>See, e.g.</u>, <u>Bowling v. Pfizer,</u>

<u>Inc.</u>, 102 F.3d 777, 780 (6th Cir. 1996) (affirmed a common fund award of only 10%

of a $102.5 million settlement fund, noting that the case had settled quickly and,

therefore, counsel's request for 20% of the $102.5 million settlement fund was

"excessive" given the economies of scale in a class action; defective heart valves);

and <u>Worthington v. CDW Corp.</u>, No. C-1-03-659, 2006 U.S. Dist. LEXIS 32100 *22

(S.D. Ohio May 22, 2006) (awarded **38.33%** of $1.45 million settlement fund;

severance pay under WARN Act).[5]

## 2. Lodestar cases in this Circuit

As noted, the vast majority of common fund fee decisions issued out of this Circuit the past 10-15 years have determined the fee award based on a percentage of the fund, rather than on an enhanced lodestar. Indeed, when the enhanced lodestar *was* utilized, it was almost always for purposes of performing a cross check or to simply further rationalize the percentage awarded. Employed in this manner, the

---

[5] See also Swigart v. Fifth Third Bank, 2014 U.S. Dist. LEXIS 94450 *19 (S.D. Ohio July 11, 2014) (awarded **33%** of $4 million settlement fund; overtime pay under FLSA); Johnson v. Midwest Logistics Sys., No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201 *16 (S.D. Ohio May 24, 2013) (awarded **33%** of $452,380 settlement fund; monies owed under Fair Credit Reporting Act); Coughlan v. Sprint Communs. Co. L.P., No. 11-11563, 2012 U.S. Dist. LEXIS 163197, *1-2 (E.D. Mich. Nov. 15, 2012) (awarded **18%** of $7,845,000 settlement fund, noting that it was below the range of percentages awarded in the Sixth Circuit; property rights dispute); Rotuna v. West Customer Mgmt. Group, LLC, No. 4:09-cv-1608, 2010 U.S. Dist. LEXIS 58912 *23-24 (N.D. Ohio, June 15, 2010) (awarded **33.33%** of settlement fund [amount unstated]); Stanley v. United States Steel Co., No. 04-74654, 2009 U.S. Dist. LEXIS 114065 *8-9 (E.D. Mich. Dec. 8, 2009) (awarded **30%** of $4.45 million settlement fund; environmental air pollution); In re DPL Inc. Sec. Litig., 307 F. Supp. 2d 947, 954 (S.D. Ohio Mar. 8, 2004) (reducing 35% request to **20%** of $110 million settlement fund, reasoning that class counsel had performed a relatively small amount of work before the settlement); Kogan v. AIMCO Fox Chase, L.P., No. 98-cv-73230, 193 F.R.D. 496, 504-505 (E.D. Mich. May 30, 2000) (awarded **31%** of $4 million settlement fund; real estate securities); In re Kmart Corp. Sec. Litig., No. 95-CV-75584, 1998 U.S. Dist. LEXIS 23092 *20 (E.D. Mich. Oct. 30, 1998) (awarded **20%** of $10.5 million settlement fund, noting that "the case was of relatively short duration and involved little litigation activity"; Kmart stock); In re Rio Hair Naturalizer Prods. Liab. Litig., MDL No. 1055, 1996 U.S. Dist. LEXIS 20440 *27 n.11 & *69 (E.D. Mich. Dec. 20, 1996) (awarded **20%** of $4.5 million settlement fund, noting that the acceptable range was 20-50%; product liability action).

lodestar multipliers vary greatly.  For example, in <u>In re Cardinal Health Inc. Sec.</u>
<u>Litigs.</u>, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007), the district court awarded 18%
of a $600 million settlement fund, noting that it represented a lodestar **multiplier of**
**six**.  On the other hand, in the <u>Rawlings</u> securities litigation, the Sixth Circuit
affirmed a common fund award based on a lodestar enhanced by a **multiplier of two**,
reasoning that the case settled before any protracted litigation, and the amount
recovered for the class was low relative to the losses suffered by the class members
(only 21% of their damages after deducting for the award).  9 F.3d at 516.

The problem with trying to extrapolate a reliable and appropriate lodestar
multiplier for any given case from the cases purportedly employing an enhanced
lodestar cross check is that such cases often do not state the attorneys' total hours
and/or hourly rate.  Clearly, possessing that information is crucial to extrapolating an
appropriate lodestar multiplier in a given case.  For example, if a common fund fee
request were 25% of a $4 million dollar settlement fund or judgment fund, and if the
attorney's hourly rate were $500/hour and the attorney worked 1000 hours, the
percentage fee would equal $1 million, and the fee under a lodestar *with a multiplier*
*of 2* would also equal $1 million [($500/hour x 1000 hrs) x 2 = $1 million].  But
suppose the attorney's hourly rate were $600.  In that case, the lodestar multiplier
would be 1.6667 [$1 million fee / $600,000 straight lodestar = 1.6667 multiplier].
Given that many cases purporting to perform a lodestar cross check do not state the

hours and/or hourly rates on which the multiplier was determined, their reported lodestar multipliers are inherently unreliable.

Perhaps for that reason, as well as for the reasons stated in <u>Rawlings</u> (<u>see</u> quote *supra*), many ERISA percentage fee decisions employ no lodestar cross check at all. <u>See, e.g.,</u> <u>Schumacher</u>, 995 F. Supp. 2d 835, 838 (although class counsel requested that a lodestar multiplier be applied to their *statutory* fee request, the district court did not perform a lodestar cross check on the 30% common fund award); <u>In re Visteon Corp. ERISA Litig.</u>, 2007 U.S. Dist. LEXIS 96023 *9 (no lodestar cross check on the 28% awarded); <u>Clevenger</u>, 2007 U.S. Dist. LEXIS 17464 *12 (no lodestar cross check on the 29% awarded); <u>In re CMS Energy Litig.</u>, 2006 U.S. Dist. LEXIS 55836 *10 (no lodestar cross check on 28.5% awarded).

Other percentage fee cases report a low multiplier based on a very high hourly rate (either currently or as adjusted to 2014 hourly rates), which skews the multiplier. For example, in <u>Griffin</u>, 2013 U.S. Dist. LEXIS 173702 *24, the district court awarded 30%, noting that it equated to a lodestar of 0.864!  **However**, the district court noted that class counsels' lodestar equaled $1,042,188.90 based on nearly 1,500 hours, meaning that class counsels' hourly rate equaled nearly **$700** in 2013 when the fee was decided [$1,042,188.90 / 1,500 hrs = $694.79/hour.] If class counsels' hourly rate in <u>Griffin</u> had been $500, the lodestar would have equaled $750,000. Applying that lodestar to the 30% award ($900,000) produces a multiplier of 1.20 [$900,000

/ $750,000 = 1.20]. <u>Griffin</u> illustrates the inherent risk of relying on the multipliers reported in cases purporting to perform a lodestar cross check when the cases do not report the attorney's hours or hourly rate or base the multiplier on a very high hourly rate.  That alone should be ample reason for this Court to eschew awarding fees in this case based on an enhanced lodestar methodology or lodestar cross check.  An additional and very important reason for not awarding fees here based on an enhanced lodestar methodology is that, as explained below in the discussion about the third <u>Ramey</u> factor, there is considerably more work for Class Counsel to do on this case before it is fully resolved, meaning it is impossible to calculate their lodestar at this time.

### 3.     The reasonable common fund fee here

Given that there is much work yet to do on this case, making it impossible to total Class Counsels' time for an enhanced lodestar award, the percentage method is the most appropriate method for determining the reasonable fee here.  However, the actual percentage selected should be determined after consideration of the six <u>Ramey</u> factors, which will now be discussed.

**1st <u>Ramey</u> factor: the value of the benefit rendered to the class.**  Here, the value of the benefit produced for the Class is substantial, as the Court's Opinion and Order granting summary judgment for Underwood, practically speaking, means that Class members are entitled to reinstatement of their original DRB amount and

payment of any prior shortfall. Therefore, unless this outcome is altered by a settlement or contrary ruling from the Sixth Circuit (if Defendants appeal), the Class members will be made whole (save for common fund fees awarded less any offsets for costs and fees awarded under ERISA §502(g)(1) and for any prejudgment interest awarded).

But most significantly, Class members will benefit <u>for years to come</u> because, rather than receiving a drastically reduced DRB or no DRB at all (in the case of Class members who were unable to obtain a Social Security disability award by 8/1/2014), they will receive their original DRB amount. Because the DRB reductions have, thus far, been ongoing for less than 18 months, the value of these future DRB benefits cannot be understated and, without question, represents a substantial majority of the benefits and value conferred upon Class members by virtue of Class Counsel's efforts. Clearly, by any standard, this is an exceptional result from the Class members' point of view.

**2nd <u>Ramey</u> factor: the value of the services on an hourly basis**. As explained in the discussion below regarding the 3rd <u>Ramey</u> factor, Class Counsel still have much work to do on this case before it is fully resolved. Therefore, it is impossible to perform a lodestar or enhanced lodestar cross check as a measure of determining the reasonableness of the percentage fee requested in subpart 3 below. By contrast, in <u>Ramey</u>, the lodestar *had* to be considered because the settlement in that case produced

no cash fund out of which fees could be awarded on a percentage-of-the-fund basis. Ramey, 508 F.2d at 1196.

Significantly, and perhaps most importantly, given that the Reduction Amendment has severely curtailed Class members' financial resources, it is unlikely any of them would have been willing, or could afford, to pay *hourly* fees in the hopes that this case would be successful, as evidenced by the contingent fee agreement between Underwood and Class Counsel.  See Fee Agreement (PX1) (stating that if there is a recovery accruing solely to Underwood, the fee will be 33.33 %; and if there is a recovery accruing to the Class, Class Counsel may request a fee of up to 33.33% of that recovery).  See also Clevenger, 2007 U.S. Dist. LEXIS 17464 *9-10 (making this same point); and Schumacher, 995 F. Supp. 2d at 849-852 (considering only the 3rd Ramey factor, reasoning that"[t]he fee agreement entered into between Schumacher and Class Counsel is, in the Court's view, the best evidence of what any of the class members would reasonably have agreed to at the outset of this case in order to secure representation").  In short, the 2nd Ramey factor is inapplicable in determining the reasonable fee here.

**3rd Ramey factor: whether the services were undertaken on a contingent fee basis**.  The third Ramey factor takes into account the risk that attorneys will not recover any compensation for their work on the case.  Many courts consider this risk of non-recovery to be the most important factor–sometimes the only factor--in

determining the reasonable common fund fee to be awarded.  See Schumacher, 995

F. Supp. 2d at 849-852 (discussing at length the percentage contingent fee agreement

there and its relevance to determining the appropriate percentage award; concluding

that "[t]he fee agreement entered into between Schumacher and Class Counsel is, in

the Court's view, the best evidence of what any of the class members would

reasonably have agreed to at the outset of this case in order to secure representation";

and ignoring the other Ramey factors).

  As noted, Class Counsel agreed to accept representation on a purely

contingent-fee basis, and the fee agreement expressly states that (i) if there is a

recovery accruing solely to Underwood, the fee will be 33.33% of that recovery, and

(ii) if there is a recovery accruing to the entire class, Class Counsel may ask the Court

for a fee of up to 33.33% of that recovery.  See Fee Agreement (PX2).  Class Counsel

have provided top-flight prosecution of the Claim, which has included (i)

investigating its validity and merit; (ii) preparing Underwood's administrative Claim

and Appeal; (iii) preparing the Complaint and all briefs and other documents filed in

this case on behalf of Underwood and the other Class members; (iv) participating in

a telephonic status conference with the Court and several telephone conferences with

defense counsel; (v) participating in oral argument at the 9/9/14 hearing on the

motions on the merits, class certification, and consolidation; (vi) preparing the motion

and brief for costs and attorneys' fees under ERISA §502(g)(1) and for prejudgment

interest, amounts that directly benefit the Class; (vii) using social media to make it easy for Class members to learn about the Class Action and find and contact the undersigned attorney (Cantarella), an effort Cantarella deemed vital to proving the requisite numerosity for class certification given that, in Cantarella's 20 years of experience litigating class claims for ERISA benefits, defendants typically vehemently resist providing numerosity information on the asserted ground that it is irrelevant until the class is certified or for other specious reasons (generally resulting in a protracted discovery battle requiring the court's intervention); and (viii) throughout all of this, keeping Underwood apprised of all aspects of the litigation and responding to telephone calls and emails from Underwood and the 65 Class members who contacted Cantarella directly (sometimes several times) *before* Defendants provided the list of Class members ordered by the Court.  Class Counsel performed all of these services without any remuneration and with the risk that they might never be paid for any of this work.

Moreover, considerable work remains for Class Counsel before this case is resolved, including (i) preparing the "opt out" Class Notice, (ii) reviewing the Class member list provided by Defendants and cross-checking it against the list Cantarella has been maintaining, which now contains the names and contact information of 65 Class members, (iii) mailing the opt out Class Notices to the Class members, (iv) answering the inevitable flood of calls and questions that will ensue once Class

members receive the opt out Notice, (v) reporting to the Court the names of those Class members desiring to opt out of the Class, (vi) participating in settlement negotiations (assuming Defendants are amenable to such negotiations); (vii) if settlement negotiations are fruitful, preparing the Settlement Agreement and related filings, including a Notice of the settlement and mailing it to the non opt-opt Class members, (viii) if Defendants are not amenable to settlement negotiations, writing appeal briefs and participating in oral argument in the Sixth Circuit, and (ix) handling all other matters necessary to bring this case to a successful resolution.  Given the myriad services performed to date and those to be performed in the future by Class Counsel, and that there is a risk that they might not be compensated for their time and efforts (e.g., if Defendants obtain an appellate reversal of this Court's rulings), the third <u>Ramey</u> factor–whether the services were undertaken on a contingency basis–weighs in favor of a percentage award at the upper end of the range of common-fund percentage awards in ERISA class actions in this Circuit.

**4th <u>Ramey</u> factor: society's stake in rewarding attorneys who produce such benefits**.  Rewarding attorneys who litigate class claims to recover ERISA benefits serves an important societal interest because, absent their efforts and the pooling of claims, most class members would not be able to afford counsel to litigate their individual claim.  Indeed, they might not even know that such help is available save for the class notices they will receive in the course of the litigation.  Recovering

ERISA benefits wrongfully withheld means class members will be better able to stand on their feet financially and live without the stress caused by having the financial rug pulled out from under them (as opposed to defaulting on their financial obligations and becoming a burden on their friends, family, and communities when benefits owed are not paid). Compelling evidence exists that there is a strong societal interest in rewarding attorneys who produce these positive outcomes.

**5th Ramey factor: the complexity of the litigation**. This litigation was complex, in part, because, *before* the litigation, Defendants represented in documents they distributed to the Class members that the Pension Protection Act of 2006, PL 109-280, ("PPA"), an Act that amended ERISA, "required" them to reduce the DRB under §5.1 of the Plan because the Plan was in "critical" funding status. See docs 10-6 and 10-7. Defendants appear to have made this representation because §10.4 of the Plan prohibits plan amendments that reduce the benefits [of any kind] of persons who are already receiving benefits "[u]nless required by law" (doc 1 §10.4). Defendants did not, at that time, identify the provision(s) of the PPA they contended "required" the reductions (see again docs 10-6 and 10-7). This necessitated that Class Counsel, prior to agreeing to assist Underwood with an administrative Claim, review the entire PPA [a 457-page document if downloaded to pdf] to determine whether it, in fact, required the reductions (or whether this might be suggested by the PPA's legislative history). Class Counsel found only one section of the PPA addressing multiemployer

plans in critical status, and that was §305, 29 U.S.C. §1085.

Even a cursory review of §305 reveals that it is a lengthy, highly technical, statute with numerous paragraphs, subparagraphs, subparts, and clauses, all of which became effective for Plan years beginning in 2008 or later.  See PL 109-280 at §101(d) (re effective date of PPA).  Therefore, in order to properly address Defendants' contention that this relatively new statute, for which little case law or regulatory guidance exists, "required" them to reduce the DRB, it was necessary for Class Counsel to become wholly familiar with the statute, its legislative history, and various defined and undefined terms therein.  Class Counsel found that §305 did not "require" Defendants to reduce the DRB.  On the contrary, as Defendants themselves agreed in this litigation (doc 7, bottom of p1, doc 15 p9), Class Counsel determined that §305 prohibits reducing "disability retirement benefits" in pay status and, therefore, Underwood should also prevail under §305.

Regarding this alternate basis for relief [the primary basis being §10.4 of the Plan], the parties only disagreed as to whether the DRB *was* a disability *retirement* benefit (aka disability *pension* benefit), a disagreement that necessitated considerable comprehensive research by Class Counsel to determine whether any governing statute or regulation delineates the type(s) of disability benefits that are deemed a disability *pension* benefit or disability *retirement* benefit.  Class Counsel ultimately found and cited in this litigation several Pension Benefit Guaranty Corporation ("PBGC")

regulations which Underwood contended support the conclusion that the DRB *is* a pension benefit and, therefore, the DRB reductions were also prohibited under §305. Although the Court found that §305 did not "prohibit" the DRB reductions (doc 28 p15), it concluded that §305 also did not "require" the reductions (doc 28 p21).

Aside from the complexities of ERISA §305, this case also required Class Counsel to draw upon their intimate familiarity with the intricacies and nuances of the statutes and regulations governing ERISA plans in order to (i) address an ERISA statute Defendants implied in the administrative proceedings, but did not specifically cite [see Initial Denial (doc 10-10 and Appeal (doc 10-11)], and a Treasury Regulation Defendants cited in the litigation, and (ii) further support Underwood's Claim (see doc 10 at pp11-14, listing the statutes and regulations addressed). Gaining a comprehensive in-depth understanding of the many statutes and regulations governing ERISA plans, and the case law interpreting those statutes and regulations, is a goal that can only be accomplished after *years* of litigating ERISA claims. Even then, because ERISA is amended every few years, it is a constant process.

No less importantly, ERISA is loaded with procedural "land mines" that, if not carefully observed, could effectively "blow up" even the most meritorious ERISA claim. This includes determining the relevant ERISA remedial statute under which to bring the claim, as aptly discussed in the Court's Opinion and Order granting summary judgment for Underwood based on the terms of the Plan (doc 28 p7-10).

Last, but not least, Defendants raised many objections to class certification, which further added to the complexities of this case.  For example, Defendants argued that restoring the DRB for all Class members would "hurt" the Plan's funding status and put non-disability pension benefits at peril (doc 16 p9).  Rebutting this argument required Class Counsel to obtain the Plan's most recent and lengthy Form 5500 annual financial report, pore over the data therein, and then explain by reference to the pertinent data and the lack of any evidence by Defendants, why Defendants' contention was implausible (doc 18 p4).  In short, the complexities of this case further weigh in favor of a percentage fee at the upper end of the range for common fund percentage awards in ERISA class actions in this Circuit.

**6th <u>Ramey</u> factor: the professional standing and skill of counsel on both sides.**  Class Counsel have vigorously and efficiently prosecuted the Claim on behalf of Underwood and the other Class members, as initially demonstrated by the fact that they assembled and filed a well-pled putative class action Complaint just one week after issuance of the Final Administrative Denial.  <u>See</u> Final Denial, dated 10/17/2013 (doc 10-12) and Complaint, filed 10/24/2013 (doc 1).  Class Counsel previously prosecuted thirteen class actions for benefits owed under a pension plan, all but one of which was governed by ERISA.  <u>See</u> Affidavit of Eva T. Cantarella ("Cantarella Affidavit") (PX3); Affidavit of Bradley J. Schram ("Schram Affidavit") (PX4); and Affidavit of Robert P. Geller ("Geller Affidavit") (PX5).  In several of these cases,

the district courts commented extensively on the expertise of Class Counsel in

litigating class claims for ERISA benefits:

> The court [*27] also finds that Humphrey's counsel is a zealous and
> competent representative. Plaintiff's counsel in charge, Eva Cantarella
> ("Cantarella"), and her law firm, Hertz, Schram & Saretsky, P.C.
> ("HS&S") [now Hertz Schram PC], are very experienced ERISA class
> action litigators. See Crosby v. Bowater Inc. Retirement Plan for
> Salaried Employees of Great Northern Paper, Inc., 212 F.R.D. 350,
> 353-54 (W.D. Mich. 2002) (noting that HS&S is "nationally recognized
> for its plaintiff representation in ERISA and employee benefit cases"
> and finding its lawyers "to be a very experienced and capable advocates
> for the class"), rev'd. on other grounds, 382 F.3d 587 (6th Cir. 2004),
> cert denied, 544 U.S. 976, 125 S. Ct. 1844, 161 L. Ed. 2d 726 (2005).
> Cantarella, a partner at HS&S, has participated in ten pension plan class
> actions and has also successfully prosecuted non-class claims for ERISA
> benefits, including pension benefits. (See Cantarella Aff. PP 10-14, Doc.
> 44 Ex. D.)  The other attorneys working on Humphrey's behalf are
> equally experienced and capable. (See Bradley Schram Aff., Doc. 44 Ex.
> B; Robert Geller Aff., Doc. 44, Ex. C.)  Together they have relentlessly
> advocated on behalf of Humphrey and the putative class members.  This
> effort is typified by the [*28] extensive and detailed briefing provided
> not only in this motion for class certification but also on Plaintiff's cross
> motion for summary judgment. (See generally Docs. 41-55, 59, 64, 68,
> & 84.)  Moreover, Cantarella presented her case at the hearing on class
> certification in a cogent and prepared manner. For these reasons, the
> court finds that Plaintiff's counsel and her firm are more than adequate
> to represent the class action.

Humphrey v. United Way, No 05-0758, 2007 U.S. Dist. LEXIS 59557 *27-28 (S.D.

Tex. Aug. 14, 2007).  Indeed, Class Counsel have been responsible for recovering

over $100 million dollars in ERISA benefits for participants and their beneficiaries.

See Cantarella Affidavit (PX3), Schram Affidavit (PX3); and Geller Affidavit (PX4).

Bradley J. Schram, the founding shareholder of Hertz Schram PC ("HSPC"),

has practiced law for 38 years, and has substantial class action experience, including litigating class claims for ERISA benefits.  Schram Affidavit (PX4).  Robert P. Geller ("Geller"), also a shareholder at HSPC and supervisor of the firm's ERISA team, has practiced law for 32 years and has considerable experience litigating class claims for ERISA benefits.  Geller Affidavit (PX5).  Senior associate Daniel W. Rucker has provided considerable legal research assistance in this case.  Rucker has practiced for 10 years, has prosecuted other complex claims, and, over the years, has provided extensive research assistance on various ERISA issues.  Rucker Affidavit (PX6).

Cantarella, a partner, came to HSPC from a national law firm.  Cantarella Affidavit (PX3).  Cantarella is responsible for investigating and evaluating all benefit claims proffered to HSPC that arise under a pension plan and for recommending which ones should be prosecuted.  Id.  Cantarella is a recognized expert on pension plans, and has been a guest speaker/presenter on pension issues in a variety of fora, including the Internal Revenue Service and Department of Treasury where she has given testimony on pension issues.  Id.  Cantarella has been solicited for comment on pension issues by our nation's legislators, employee and retiree organizations, and reporters, and she has been quoted on pension issues in numerous business and legal publications.  Id.  Cantarella has also had regular communications with Underwood about the litigation and discussed with him the potential advantages and disadvantages of proceeding as a class action rather than individually.  Id.  Based on

the foregoing, there should be no doubt that Class Counsel have considerable professional skill and standing when it comes to litigating class claims or ERISA benefits.

Defendants' attorneys, the law firm of Novara Tesija PLLC ("NTP"), advertise that (i) NTP has been providing legal services and representation to single and multiemployer employee benefit plans for over 30 years; and (ii) its attorneys "stay on the cutting edge of developments in employee benefit, and related, laws," and are "prepared to assist plan trustees and administrators in any matter affecting the operation of private sector or public sector employee benefit plans." http://www.novaratesija.com/ NTP's website further reveals that representing single and multiemployer benefit plans is NTP's "key" practice area. Id. Perhaps not surprisingly, NTP demonstrated in this litigation that it was well-versed in ERISA procedural and remedial issues and various substantive ERISA provisions. NTP also advanced numerous creative defenses, further demonstrating its ability to defend against ERISA benefit claims. In short, Class Counsel encountered highly experienced ERISA defense counsel.

In determining the appropriate percentage fee, Class Counsel ask the Court to remain mindful that a substantial majority of the benefits bestowed upon Class members by virtue of Class Counsel's efforts is the future DRB benefits, which renders this case unique among the numerous common fund fee decisions cited herein

and found in other jurisdictions.  Class Counsel have not requested a portion of any of those benefits.  To properly compensate Class Counsel under the applicable principles and guidelines articulated in the Sixth Circuit, and throughout the federal judiciary, Class Counsel believes an award of 33.33% of the common fund (i.e., the total amount recovered for the Class when this matter is fully resolved) represents the reasonable fee in view of the substantial total benefit conferred upon the Class and the outstanding results achieved.

### 4.    Related costs

The propriety of awarding class counsel their out-of-pocket expenses from the common fund has been long-recognized in the Sixth Circuit.  See, e.g., Bowling, 102 F.3d at 779 (affirmed award of $476,938.06 in expenses); New Eng. Health Care Emples. Pension Fund, 234 F.R.D. at 635 ("In the New England action, Plaintiffs' counsel is awarded attorneys' fees in the amount of $ 5.8 million and expenses in the amount of $ 1,483,746.63.") (**ERISA** case); Griffin, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 *26 (awarded $62,473.72 in expenses) (**ERISA** case); In re Visteon Corp. **ERISA** Litig., No. 05-71205, 2007 U.S. Dist. LEXIS 96023 *9 (awarded $72,344.29 in costs and expenses); In re CMS Energy **ERISA** Litig., No. 02-72834, 2006 U.S. Dist. LEXIS 55836 *10 (awarded $424,268.35 in costs and expenses); In re Broadwing, Inc. **ERISA** Litig., 252 F.R.D. at 383 (awarded $99,801.35 in expenses).

Class Counsel have incurred $887.27 in costs and expenses, comprised of postage, the Complaint filing fee, parking, mileage at 0.45/mile, copy costs, and delivery/messenger services, all as documented in the attached Expense Records maintained by the firm (PX7). Class Counsel request an award of these costs and expenses in addition to their attorney fee request.

## III.   CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Class Counsel request a common fund fee award in the amount of 33.33% of the total recovery for the Class, which includes (i) all DRB benefits recovered, (ii) all costs and attorneys' fees awarded to the Class under ERISA §502(g)(1), and (iii) all prejudgment interest awarded. Class Counsel also request an award of their out-of-pocket expenses in the amount of $887.27.

Respectfully submitted October 2, 2014

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
Robert P. Geller (P26337)
Bradley J. Schram (P34391)
Hertz, Schram PC
1760 S. Telegraph Rd., Ste. 300,
Bloomfield Hills, MI 48302
o.248-335-5000; f. 248-335-3346; ecantarella@hertzschram.com
*Attorneys for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2014, I served on the below counsel for Defendants (i) Rule 54 Motion for Common Fund Fees and Related Costs, (ii) Brief in Support, along with Exhibit List and Exhibits, and (iii) this Certificate of Service, via the Court's ECM e-filing system.  I also uploaded to the Court a proposed Order via the Court's ECF Utilities functions and emailed the proposed Order to the below counsel for Defendants.

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
ecantarella@hertzschram.com
*Attorney for the Class*

H0166453.3

29