UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| ROGER SCHLEBEN,<br><br>      Plaintiff,<br><br>v.<br><br>CARPENTERS PENSION TRUST FUND—DETROIT AND VICINITY, and TRUSTEES OF CARPENTERS PENSION TRUST FUND—DETROIT AND VICINITY,<br>      Defendants. | Case No. 14-cv-11564<br>Honorable Laurie J. Michelson<br>Magistrate Judge Mona K. Majzoub |
| THOMAS E. UNDERWOOD, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>CARPENTERS PENSION TRUST FUND—DETROIT AND VICINITY, and TRUSTEES OF CARPENTERS PENSION TRUST FUND—DETROIT AND VICINITY,<br><br>      Defendants. | Case No. 13-cv-14464<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER GRANTING IN PART PLAINTIFF SCHLEBEN'S MOTION FOR SUMMARY JUDGMENT [30], GRANTING IN PART PLAINTIFF UNDERWOOD'S MOTION FOR SUMMARY JUDGMENT [70], AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [69]**

In August 2013, the Trustees of the Carpenters Pension Trust Fund—Detroit and Vicinity, a multiemployer benefits plan ("the Plan") subject to the Employee Retirement Income Security Act ("ERISA"), amended the Plan to address its underfunded status. Though the Plan had an amendment procedure (§ 10.4) providing that "no amendment of this Plan shall be

permitted to reduce . . . the benefits of any person who is already receiving benefits," the August 2013 Amendment reduced the amount of disability benefits that Plaintiffs Thomas Underwood and Roger Schleben (and others) had already started to receive. Both filed suit after the Plan denied their administrative appeals. In Underwood's case, the Court certified a class of "[a]ll persons who commenced receiving disability benefits from [the Plan] on or after September 1, 2008, and who were receiving those disability benefits on August 1, 2013." Schleben opted to pursue his claims separately.

On September 15, 2014, the Court granted Underwood's motion for summary judgment, holding that to the extent that the August 2013 Amendment reduced the benefits that Underwood and other class members had already started to receive on the date the amendment became effective, it violated § 10.4 of the Plan and was unenforceable. For similar reasons, the Court also denied Defendants' motion to dismiss Schleben's complaint. But after these orders, in October 2014, § 10.4 of the Plan was itself amended to permit the very type of amendment that the Court had just held to be unenforceable under that provision: amendments that reduce the benefits of participants already receiving them. The Plan also backdated the October 2014 Amendment to apply prior to the August 2013 Amendment.

Now before the Court are several motions addressing the effect of the Plan's October 2014 Amendment: Schleben's motion for summary judgment (*Schleben*, No. 14-11546 Dkt. 30), Underwood's motion for summary judgment (*Underwood*, No. 13-14464 Dkt. 70), and Defendants' motion for summary judgment in the Underwood case (*Underwood* Dkt. 69). After careful consideration of the briefs and thorough review of the record, the Court finds that oral argument will not aid in resolving these pending motions. *See* E.D. Mich. LR 7.1(f)(2). The Court finds that summary judgment is appropriate in Plaintiffs' favor. Just as before, Defendants

2

violated § 10.4 when they attempted to reduce disability benefits that Plaintiffs were already receiving on the date the amendment became effective. Accordingly, Schleben's motion for summary judgment (*Schleben* Dkt. 30) is GRANTED IN PART, Underwood's motion for summary judgment (*Underwood* Dkt. 70) is GRANTED IN PART, and Defendants' motion for summary judgment against Underwood (*Underwood* Dkt. 69) is DENIED.

## I.

### A.

As expected when both parties move for summary judgment, the facts are largely undisputed. Defendant Carpenters Pension Trust Fund—Detroit and Vicinity Pension Plan ("the Plan") is a benefits plan administered by Defendant Trustees. (Dkt. 70, Underwood's Mot. Summ. J. Ex 2, Plan.) The 2002 version of the Plan provides several types of benefits, including "disability retirement benefits." (Plan § 5.) Under the Plan's terms, "totally and permanently disabled" participants meeting certain requirements are entitled to disability benefits. (Plan § 5.1.) These benefits are generally payable "during the continued disability" until the participant "has reached his 62nd birthday." (Plan § 5.5.) But the benefits terminate automatically for several enumerated reasons—for instance, if the participant "engages in employment in the trade for which he or she has been trained." (Plan § 5.4.)

Roger Schleben started to receive disability benefits of $2,933.46 per month on April 1, 2009. (Dkt. 30, Schleben's Mot. Summ. J. Ex. G, Schleben Aff. ¶ 2–3.) Thomas Underwood started to receive disability benefits of $3,586.98 per month on February 18, 2013. (Dkt. 10, Underwood's Resp. Ex. PX8, Administrative Claim at 1.) At the time Schleben and Underwood started to receive their benefits, the Plan's amendment procedure provided that "no amendment of this Plan shall be permitted to reduce the Accrued Benefit of any Participant or the benefits of

any person who is already receiving benefits on the date the benefit amendment is effective." (Plan § 10.4.)

Yet, on July 12, 2013, as part of an "All Reasonable Measures Plan" under the Pension Protection Act of 2006, the Trustees adopted an amendment to the Plan to cap the dollar amount of disability benefits participants could receive and to require that participants obtain a Social Security disability award by August 1, 2014 to continue receiving disability benefits from the Plan. (Schleben's Mot. Ex. A, Notice of All Reasonable Measures Plan; Ex. H, August 2014 Amendment §§ 5.1(a)(iv) & 5.2(d).) These changes applied to all participants who began receiving disability benefits on or after September 1, 2008, and the changes took effect on August 1, 2013 ("August 2013 Amendment"). (Schleben's Mot. Ex. A, Notice of All Reasonable Measures Plan; Ex. H, August 2014 Amendment §§ 5.1(a)(iv) & 5.2(d).)

The August 2013 Amendment reduced Schleben's benefits from $2,933.46 to $625.00 per month, (Schleben Aff. § 7.), and reduced Underwood's benefits from $3,586.98 to $1,350 per month (*Underwood* Dkt. 69, Defs.' Mot. Summ J. at 2).

**B.**

Schleben and Underwood each challenged the August 2013 Amendment. Schleben appealed to the Plan on September 10, 2013, and the Plan denied his appeal on October 21, 2013. (Schleben's Mot. Ex. B–C.) On February 19, 2014, the Plan denied Schleben's request for further review. (Schleben's Mot. Ex. E.) Underwood appealed to the Plan on September 9, 2013, and the Plan denied his appeal on October 17, 2013. (Dkt. 10, Underwood's Resp. Ex. 12.)

Underwood then filed a class action complaint against Defendants on October 24, 2013. (*Underwood* Dkt. 1.) Schleben filed a separate complaint against Defendants on April 18, 2014. (*Schleben* Dkt. 1.) On September 15, 2014, the Court granted Underwood's motion to certify a

4

class consisting of "[a]ll persons who commenced receiving disability benefits from Carpenters Pension Trust Fund—Detroit & Vicinity Pension Plan on or after September 1, 2008, and who were receiving those disability benefits on August 1, 2013." *Underwood v. Carpenters Pension Trust Fund—Detroit & Vicinity*, No. 13-CV-14464, 2014 WL 4602974, at *11 (E.D. Mich. Sep. 15, 2014). Schleben wished to pursue his claim separate from the Underwood class. (*Schleben* Dkt. 9.)

That same day, the Court also granted in part Underwood's motion for summary judgment, holding: "To the extent that the August 2013 Amendment reduced the disability benefits that Underwood and other Class members were already receiving on the date the amendment became effective, it violates § 10.4 of the Plan and is not enforceable." *Underwood v. Carpenters Pension Trust Fund—Detroit & Vicinity*, No. 13-CV-14464, 2014 WL 9866416, at *13 (E.D. Mich. Sep. 15, 2014). The Court also denied Defendants' motion to dismiss Schleben's complaint, holding that Schleben had "plausibly state[d] a claim that Defendants violated the Plan when they enacted an amendment that reduced Schleben's disability benefits." *Schleben v. Carpenters Pension Trust Fund—Detroit & Vicinity*, No. 14-CV-11564-LJM, 2014 WL 4604000, at *9 (E.D. Mich. Sep. 15, 2014).

## C.

On October 7, 2014, several weeks after the Court held that the August 2013 Amendment was unenforceable to the extent it reduced benefits that Underwood and other class members had already started to receive, Defendants amended the Plan again in several ways (the "October 2014 Amendment"). (Underwood's Mot. Summ. J. Ex PX3, October 2014 Amendment.) The October 2014 Amendment broadened the Trustees' discretionary authority under the Plan. (October 2014 Amendment §§ 8.1 and 8.13.) It also made the following change to the Plan's

5

amendment procedure in an attempt to enable the Trustees to make the August 2013 Amendment that the Court had invalidated:

> **Section 10.4 Amendment Procedure.** The Trustees may, by majority vote, amend this Plan, ***prospectively or retroactively.*** Unless ***otherwise permitted*** ~~required~~ by law, no amendment of this Plan shall ~~be permitted to~~ reduce the Accrued Benefit of any Participant ~~or the benefits of any person~~ who is already receiving benefits on the date the benefit amendment ***becomes*** ~~is~~ effective. ***For purposes of the foregoing, the term Accrued Benefit shall not include any disability benefits described in Article V of this Plan, or any other ancillary benefits offered by the Plan, which are not subject to the vesting and forfeiture protections of applicable law. Such disability benefits or any other ancillary benefits, may be modified, reduced or eliminated at any time, either prospectively or retroactively, regardless of whether the payment of such benefits has already commenced.*** Any modification, alteration or amendment of this Plan which may be required to qualify and maintain this Plan as a qualified plan and trust under the applicable provisions of the Internal Revenue Code, shall be made by the Trustees. Any amendment may be made retroactively by appropriate action of the Trustees. ***The retroactive applicability of this Section shall be permitted, to the fullest extent permitted by law.***

(October 2014 Amendment § 10.4.) The restated version of the Plan from October 7, 2014 thus retains the disability benefits caps imposed under the August 2013 Amendment, reducing monthly payments for participants who started to receive benefits on or after September 1, 2008. (Underwood's Mot. Summ. J. Ex. PX4, Restated Plan, § 5.2(a)(iv).)

By the time Schleben apparently learned of the full scope of these amendments, he had already moved for summary judgment, simply urging the Court to apply its holding from *Underwood*. (Schleben's Mot. at 13–16.) So the Court allowed the parties in both matters to brief the effect of the October 2014 Amendment in light of the Court's prior holding that the August 2013 Amendment was unenforceable to the extent it reduced disability benefits that Plaintiffs had already started to receive. (*Underwood* Dkt. 66; *Schleben* Dkt. 39.) Thus, the legal issue is whether the new amendment can do what the former could not. The Court thinks not.

## II.

### A.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Plaintiffs seek summary judgment on claims for which they have the burden of persuasion, their showing "must be sufficient for the court to hold that no reasonable trier of fact could find other than for [them]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487–88 (1984)); *see also Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001) ("[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" (quoting 11 James William Moore et al., *Moore's Federal Practice* § 56.13[1], at 56–138 (3d ed. 2000))).

### B.

In actions under ERISA, a de novo standard of review applies to decisions by benefit plan administrators unless "discretion has been expressly granted in the plan for the specific decision at issue," in which case arbitrary and capricious review applies. *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 529 (6th Cir. 2012). The Court previously held that a de novo standard of review applied to the Trustees' August 2013 Amendment decision because "the discretion afforded by the Plan extends only to 'determination[s] concerning eligibility for participation and benefits.'" *Underwood*, 2014 WL 9866416, at *6; *Schleben*, 2014 WL 4604000, at *3. But the October 2014 Amendment broadened the Trustees' discretion, providing that "the Trustees . . . shall have

the fullest possible discretionary authority in all aspects of the administration of the Pension Trust Fund." (October 2014 Amendment § 8.1.)

Without addressing whether the amendments to the Trustees' discretionary authority apply retroactively, the Court will assume that these amendments control and that therefore the arbitrary and capricious standard of review applies. Under the arbitrary and capricious standard, the Trustees' decision must be upheld if their "interpretation of the Plan's provisions is reasonable." *See*, *e.g.*, *Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (internal quotation marks and citations omitted).

## III.

This case now comes down to one question: if an ERISA plan's amendment procedure expressly prohibits amendments that reduce benefits for anyone already receiving them, can the Trustees amend the amendment procedure to allow them to do just that—reduce the benefits of someone already receiving them?

Though the Court is unaware of any authority that squarely addresses this issue, Plaintiffs say that it can be viewed as a question of whether the disability benefits here "vested" once they started to receive them. (Dkt. 40 Schleben's Mot. at 8–12; Dkt. 74 Underwood's Resp. at 4–7.) As the Sixth Circuit has held, "To vest benefits is to render them forever unalterable." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998). Therefore, it follows that if the disability benefits vested once Plaintiffs started to receive them, then the Trustees could not amend the plan to reduce those benefits—even by amending the amendment procedure.

For the reasons that follow, the Court finds that the Plan gave Plaintiffs who had started to receive disability benefits a vested right to those benefits. Accordingly, to the extent that the

amendments reduced benefits that the Plaintiffs had already started to receive, the amendments violated the Plan and are thus unenforceable.

## A.

To determine whether Plaintiffs' disability benefits vested, the Court first addresses whether the Plan is a "pension plan" or a "welfare plan." This distinction is significant because "ERISA imposes elaborate minimum funding and vesting standards for pension plans." *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015). Importantly, ERISA's "anti-cutback" rule generally "prohibits any amendment of a pension plan that would reduce a participant's 'accrued benefit.'" *Cent. Laborers' Pension Fund v. Heinz*, 541 U.S. 739, 741 (2004). In contrast, "employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Tackett*, 135 S. Ct. at 933 (quoting *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). Unless, of course, the terms of the plan expressly prohibit such modification.

"ERISA defines pension plans as plans, funds, or programs that 'provid[e] retirement income to employees' or that 'resul[t] in a deferral of income.'" *Tackett*, 135 S. Ct. at 933 (quoting 29 U.S.C. § 1002(2)(A)). And ERISA "defines welfare benefits plans as plans, funds, or programs established or maintained to provide participants with additional benefits, such as life insurance and disability coverage." *Id.* (citing § 1002(1)).

The Court agrees with Defendants that the benefits at issue here are a welfare plan, not a pension plan. The disability benefits in this case are part of a comprehensive Plan that includes "normal retirement benefits," "early retirement benefits," and "death benefits." (Plan §§ 3.1, 4.1, 5.1, 6.1.) But only "totally and permanently disabled" participants are eligible for disability benefits. (Plan § 5.1.) And though the Plan labels the benefits "disability *retirement* benefits," the

9

benefits are clearly disability benefits and not retirement benefits: they terminate when a participant is no longer disabled or when a participant reaches age 62, "at which time he shall begin receiving a retirement benefit in the form elected by him." (Plan § 5.5.)

Therefore, to the extent the Plan provides disability benefits, it is a welfare plan under ERISA. *See McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 98 (6th Cir. 1985) (holding that a plan that "exists as a subsection of a comprehensive retirement plan" was "clearly an 'employment welfare benefit plan' as contemplated by ERISA" because the plan "provides employees with 'benefits in the event of . . . disability'").

**B.**

The Plan's status as a welfare plan does not foreclose the possibility that Plaintiffs' disability benefits vested. "[E]mployers are free to waive their power to alter or terminate welfare benefits." *Moore v. Menasha Corp.*, 690 F.3d 444, 459 (6th Cir. 2012). In other words, "[w]elfare plans vest, if at all, based on the terms of the Plan." *Price v. Bd. of Trustees of Indiana Laborer Pension Fund* (*Price II*), 707 F.3d 647, 651 (6th Cir. 2013).

Unless required by law, the Plan's amendment procedure expressly prohibits any amendment to the Plan that reduces benefits a participant has already started to receive. In particular, § 10.4 provides:

> The Trustees may, by majority vote, amend this Plan. *Unless required by law, no amendment of this Plan shall be permitted to reduce* the Accrued Benefit of any Participant or *the benefits of any person who is already receiving benefits on the date the benefit amendment is effective*. Any modification, alteration or amendment of this Plan which may be required to qualify and maintain this Plan as a qualified plan and trust under the applicable provisions of the Internal Revenue Code, shall be made by the Trustees. Any amendment may be made retroactively by appropriate action of the Trustees.

(emphasis added.) As the Court explained in its order granting Underwood's motion for summary judgment, in the second sentence, "[t]he placement of the 'or' creates two separate

10

categories: (1) 'the Accrued Benefit of any Participant,' and (2) 'the benefits of any person who is already receiving benefits.'" *Underwood*, 2014 WL 9866416, at *10. Thus, while that sentence provides that "no amendment of this Plan shall be permitted to reduce the *Accrued Benefit of any Participant* . . . on the date the amendment is effective," it just as equally provides that "no amendment of this Plan shall be permitted to reduce the . . . *benefits of any person who is already receiving benefits* on the date the amendment is effective." This leaves no room for amending the Plan—even by amending the amending procedure itself—to reduce the benefits Plaintiffs had already started to receive.

Reading the Plan as a whole, as the Court should, *see Union Sec. Ins. Co. v. Blakeley*, 636 F.3d 275, 277 (6th Cir. 2011), the Court finds further support that once a participant starts to receive disability benefits, the benefits cannot be reduced. To start, none of the Plan's provisions addressing disability benefits permit the Trustees to reduce benefits that a participant has started to receive. For example, § 5.2 provides a formula to determine the amount of disability benefits based on the length of service prior to the disability. Section 5.4 provides four ways in which benefits terminate entirely, such as if the participant "engages in employment in the trade for which he or she has been trained." Section 5.5 provides that if benefits are not terminated automatically for one of the reasons stated in § 5.4, the benefits "shall be payable during continued disability until the Active Participant has reach his 62nd birthday." None of these provisions support the Trustees' apparent conclusion that the benefit amounts for a disabled participant already receiving benefits can fluctuate at the Trustees' whim. *See Dabertin v. HCR Manor Care, Inc.*, 373 F.3d 822, 831 (7th Cir. 2004) ("An ERISA benefit cannot be a moving target where the plan administrator continues to add conditions precedent to the award of benefits.").

Add to that § 10.4's express prohibition on reducing benefits and it is clear that the Plan provides that once a participant starts to receive benefits—though the benefits can stop entirely for several reasons—the Trustees cannot reduce the benefits to which a participant is otherwise entitled to continue receiving under the Plan. As the Court has noted, "the plain language of the Plan is not reasonably subject to any other interpretation." *Underwood*, 2014 WL 9866416, at *11 n.4. Therefore, so long as a participant remains eligible, the amount of disability benefits he or she is entitled to receive is "vested" or "forever unalterable." *See Sprague*, 133 F.3d at 400. To the extent that the October 2014 Amendment and August 2013 Amendment in combination would reduce disability benefits that Plaintiffs already started to receive, the amendments violate § 10.4 and are therefore unenforceable.

Granted, as Defendants point out, the final sentence in § 10.4 permits retroactive amendments: "Any amendment may be made retroactively by appropriate action of the Trustees." (*Underwood* Dkt. 73., Defs.' Resp. at 6.) But interpreting that provision to trump the Plan's express prohibition on reducing benefits would violate two cardinal rules of contract interpretation. For one, "A specific contract provision generally controls over a related but more general contract provision." *Tabernacle-The New Testament Church v. State Farm Fire & Cas. Co.*, 2015 WL 3824733, at *8 (6th Cir. Jun. 22, 2015) (applying the principle albeit in a non-ERISA context). The Plan's general provision allowing retroactive amendments therefore cannot trump the Plan's specific restriction that "*no amendment* of this Plan shall be permitted to reduce . . . the benefits of any person who is already receiving benefits on the date the benefit amendment is effective." (emphasis added.) Any conclusion otherwise would render the prohibition on reducing the "benefits of any person who is already receiving benefits" meaningless, violating another cardinal rule of contract interpretation. Indeed, courts should

12

construe contract terms "so as to render none nugatory." *Prater v. Ohio Educ. Ass'n*, 505 F.3d 437, 443 (6th Cir. 2007).

*Wulf v. Quantum Chemical Corp.*, 26 F.3d 1368 (6th Cir. 1994), suggests that Defendants' interpretation of the retroactivity provision is unreasonable. Like the last sentence in § 10.4 here, in *Wulf*, one sentence in the plan's amendment provision generally permitted retroactive amendments: "The Board of Directors reserves the right at any time and from time to time, and retroactively if deemed necessary or appropriate, to amend in whole or in part any or all of the provisions of the Plan." *See id.* at 1378. But also like § 10.4 here, another sentence specifically restricted which types of amendments were permissible: "No amendment shall be made which has the effect of decreasing the balance of the Account of any Member." *See id.* The Court thus concluded that while "[c]leary, Quantum had the right to make" the amendment at issue, "[u]nder the terms of the Plan, however, this amendment cannot be used to decrease account balances." *Id.* While *Wulf* was decided under the de novo standard, it compels the same result for the Defendants here: Defendants' interpretation of the Plan was unreasonable and therefore arbitrary and capricious.

Thus, *Price v. Bd. of Trustees of Indiana Laborer Pension Fund* (*Price II*), 707 F.3d 647 (6th Cir. 2013), is not persuasive—as discussed in the Court's previous orders, the case is distinguishable. (*See*, *e.g., Underwood* Dkt. 73, Defs.' Resp. at 7 (relying on *Price II*).) In *Price II*, the plan's amendment procedure provided that amendments could not reduce "vested" benefits. *Id.* at 651. Another sentence of the amendment procedure in *Price II* provided that "[a]ny amendment to the Plan may be made retroactively by the majority action . . . ." *Id.* But unlike § 10.4 here, no language in the plan in *Price* "contradicted the right to amend disability benefits." *See id.* Thus, because the retroactivity provision did not unambiguously prohibit

13

amendments reducing disability benefits, the Court held that "the Board, exercising its authority to interpret the plan, could reasonably conclude that 'Any amendment' [in the sentence on retroactivity] included amendments to disability benefits after the disability occurs." *Id.* at 651–652. But the amendment provision in this case is unambiguous. As discussed, § 10.4 itself vests disability benefits by prohibiting any reductions to the "benefits of any person who is already receiving benefits." It was unreasonable for the Trustees to conclude that they could nevertheless reduce such benefits by amending that procedure.

Plaintiffs were entitled to rely on the Plan's terms providing that their benefits could not be reduced. "[R]eliance on the face of written plan documents serves the purpose of enabling beneficiaries to learn their rights and obligations at any time . . . [and] lends certainty and predictability to employee benefit plans, serving the interests of both employers and their employees." *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 561 (6th Cir. 2015) (internal quotation marks and citations omitted). Allowing the October 2014 Amendment to reduce Plaintiffs' vested benefits would enable Defendants to sidestep their "oblig[ation] to act in accordance with the documents and instruments governing the plan . . . ." *See id.* (internal quotation marks and citations omitted). Such an outcome would not only contravene the Plan's express terms but also undermine the purposes of ERISA, which "was enacted 'to promote the interests of employees and their beneficiaries in employee benefit plans' . . . 'and to protect contractually defined benefits.'" *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted). Thus, to the extent that the August 2013 and October 2014 Amendments reduced the disability benefits that Plaintiffs had already started to receive, the amendments violate § 10.4 and are not enforceable.

**C.**

Remaining is Defendants' argument that even if the amendments to the Plan cannot apply retroactively, "damages should be cut off at October 7, 2014, the alternative effective date of the amended language." (*Schleben* Dkt. 34, Defs.' Resp. at 14.) Defendants base this on a section of the October 2014 Amendment, which reads: "This Amendment shall be effective upon the earlier of: a) May 1, 2013, unless the application of such effective date is invalidated by a court or governmental agency with competent jurisdiction; or b) on October 7, 2014." (October 2014 Amendment at 1.) Nevertheless, this does not escape that the Plan's terms provide that an amendment cannot reduce the benefits of someone already receiving benefits on the date on which the amendment became effective. Thus, to the extent that Schleben, Underwood, or any class member started to receive benefits on or after September 1, 2008 and were still eligible for benefits on or after October 7, 2014—even if October 7, 2014 becomes the amendment's new effective date—their damages are not cut off at that date.

**IV.**

For the reasons stated, the Court finds that Defendants violated § 10.4 of the Plan when they amended it to reduce the benefits of Schleben, Underwood, and the class members. To the extent that the August 2013 and October 2014 Amendments reduced the disability benefits that Plaintiffs were already receiving on the date the amendments became effective, the amendments violate § 10.4 and are not enforceable. Accordingly, Schleben's motion for summary judgment (*Schleben* Dkt. 30) is GRANTED IN PART, Underwood's motion for summary judgment

15

(*Underwood* Dkt. 70) is also GRANTED IN PART, and Defendants' motion for summary

judgment against Underwood (*Underwood* Dkt. 69.) is DENIED.[1]

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

Dated:  September 25, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 25, 2015.

s/Jane Johnson
Case Manager to
Honorable Laurie J. Michelson

---

[1] Schleben's and Underwood's motions are granted in part because the Court will not rule on damages issues (*See Schleben* Dkt. 30. Pl.'s Mot. at 17–21) at this time and will not address several of Underwood's requested rulings interpreting the Plan's provisions (*See Underwood*, Dkt. 70. Pl.'s Mot. at 28–29.).