# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood and Donald E. Lee, individually
and on behalf of all others similarly situated,

      Plaintiff,

v.

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.

Case No. 2:13-cv-14464
Hon. Laurie J. Michelson

**CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for the Class* | *Attorneys for Defendants* |

---

## PLAINTIFFS' MOTION FOR COSTS AND ATTORNEYS' FEES UNDER ERISA §502(g)(1)
### [brief in support attached]
*oral argument requested*

Pursuant to Fed. R. Civ. P. 54(d)(2)(B), named Plaintiffs Thomas E.

Underwood ("Underwood") and Donald E. Lee ("Lee"), on behalf of themselves and

all others similarly situated, file this Motion for Costs and Attorneys' Fees Under

ERISA §502(g)(1).  Plaintiffs' brief in support of this Motion articulates the factual and legal basis compelling this Court's entry of an order requiring Defendants to pay Plaintiffs' costs and attorneys' fees as authorized under §502(g)(1).

On December 12, 2015, the undersigned attorney for the Class contacted Defendants' attorney, Edward Pasternak ("Pasternak"), to inform him that Plaintiffs would soon be filing the instant motion and to request Defendants' concurrence in the relief requested.  Pasternak responded that Defendants would <u>not</u> concur in the relief requested.

Respectfully Submitted December 23, 2015

/s/ Eva T. Cantarella
Eva T. Cantarella (P519171)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-335-3346
ecantarella@hertzschram.com
*Attorneys for the Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood and Donald E. Lee, individually
and on behalf of all others similarly situated,

      Plaintiff,

v.
                                   Case No. 2:13-cv-14464
                                   Hon. Laurie J. Michelson

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.
                                   **CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for the Class* | *Attorneys for Defendants* |

---

### BRIEF IN SUPPORT OF PLAINTIFFS' MOTION
### FOR COSTS AND ATTORNEYS' FEES UNDER ERISA §502(g)(1),
*oral argument requested*

# <u>TABLE OF CONTENTS</u>

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.   HISTORY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PLAINTIFFS ARE ENTITLED TO COSTS AND ATTORNEYS'
     FEES UNDER ERISA §502(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Factors to Consider in Determining the Propriety of
          Awarding Attorneys' Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.   Defendants were solely culpable for unlawfully reducing
               the DRB . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          2.   The Plan can easily satisfy an award of attorneys' fees . . . . . 10

          3.   An award of attorneys' fees will deter others acting
               under similar circumstances from adopting plan
               amendments prohibited under the plan's plain language . . . . 11

          4.   Plaintiffs sought to benefit <u>all</u> similarly situated Plan
               participants and to resolve a significant legal question
               regarding ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          5.   Plaintiffs' position was clearly the more meritorious . . . . . . 12

     B.   Lodestar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          1.   Reasonable hourly rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          2.   Reasonable hours . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

     C.   Costs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III. CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . 26

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

H0296885.1

i

# INDEX OF AUTHORITIES

**Cases**

Anderson v. P&G,
220 F.3d 449 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B&G Mining, Inc v. Director, Office of Workers' Compensation Programs, U.S.
Dept. of Labor, 552 F.3d 657 (6th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Blum v. Stenson,
465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) . . . . . . . . . . . . . . . . . . 12

Coulter v. Tennessee,
805 F.2d 146 (6th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

Dishman v. UNUM Life Ins. Co. of Am.,
269 F.3d 974 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Ford v. Federal Mogul Corp.,
2015 U.S. Dist. LEXIS 3399, No. 2:09-cv-14448 (E.D. Mich. Jan 7, 2015) . . . . 14

Geier v. Sundquist,
372 F.3d 784 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Hahnemann Univ. Hosp. v. All Shore, Inc.,
514 F.3d 300 (3rd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hargrove v. Eaglepicher Corp.,
No. 10-10946, 2012 U.S. Dist. LEXIS 77726 (E.D. Mich. May 10, 2012) . . 16, 18

Hensley v. Eckerhart,
461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) . . . . . . . . . . . . . . . . . 13, 20

Jordan v. City of Cleveland,
464 F.3d 584, 604 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

LifeCare Mgmt Servs. LLC v. Ins. Mgmt. Adm'rs,
703 F.3d 835 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Missouri v. Jenkins,
491 U.S. 274, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989) . . . . . . . . . . . . . . . . . 13

Moon v. Unum Provident Corp.,
461 F.3d 639 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pennsylvania v. Del. Valley Citizens' Council for Clean Air,
478 U.S. 546, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) . . . . . . . . . . . . . . . . . 13

Perdue v. Kenny,
559 U.S. 542, 130 S. Ct. 1662, 1776 L. Ed. 2d 494 (2010) . . . . . . . . . . . . . . . 13

Peterson v. Continental Cas. Co.,
282 F.3d 112 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

Potter v. Blue Cross Blue Shield of Michigan,
No. 10-14981, 2014 U.S. Dist. LEXIS 44720 (E.D. Mich. Jan. 30, 2014) . . . . . 15

Potter v. Blue Cross Blue Shield of Michigan,
No. 10-14981, 2014 U.S. Dist. LEXIS 43774
(E.D. Mich. Mar. 31, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 18

Reed v. Rhodes,
179 F.3d 453 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Reese v. CNH Global N.V.,
No. 04-70592, 2011 U.S. Dist. LEXIS 70607 (E.D. Mich. June 30, 2011) . . 16, 18

Secretary of Labor v. King,
775 F.2d 666 (6th Cir. 1985)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United Steel Paper & Forestry, Rubber, Mfg., Energy v. Kelsey-Hayes Co.,
No. 11-15497, 2013 U.S. Dist. LEXIS 82253 (E.D. Mich. June 12, 2013)15, 16, 18

**Statutes**

29 U.S.C. §1085 [ERISA §305] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 12

29 U.S.C. §1132(g)(1) [ERISA §502(g)(1)] . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**Other**

*2010 Economics of Law Practice in Michigan:*
*Attorney Income and Billing Rate Summary Report* . . . . . . . . . . . . . . . . . . . . . . . 18

*2014 Economics of Law Practice in Michigan:*
*Attorney Income and Billing Rate Summary Report* . . . . . . . . . . . . . . . . . 14, 17, 18

I.     **HISTORY OF THE CASE**

This case has a long and tortured history pre-dating the filing of the Complaint, much of which is noted in the Time Records (PX1) recorded by the undersigned attorney for the Class (Cantarella) and the other attorneys who worked on this case.[1] Activities commenced in June of 2013 when Cantarella began receiving telephone calls from disabled Participants in the Plan, advising that they had received a Notice informing them that (i) their Disability Retirement Benefits ("DRB") under §5.1 of the Plan would be drastically reduced pursuant to a Plan amendment (the "Thirteenth Amendment"), effective 8/1/2013, and (ii) under the amendment, if they did not obtain a Social Security disability income ("SSDI") award by 8/1/2014, their DRB would be eliminated altogether.  See Time Records (PX1) (documenting these calls).[2] The callers sought Cantarella's assistance in recovering their wrongfully withheld benefits.  Id.

In response to these telephone calls and requests for assistance, Cantarella commenced an investigation of a possible claim, which included (i) locating and

---

[1]  Although the Court is familiar with the history of this case, plaintiffs review that history now in order to emphasize the amount of time and effort expended by Class Counsel to bring this litigation to a point where statutory costs and fees may be requested.  The Court may, of course, elect to skip forward to Part II of this brief.

[2]  To the extent not specifically noted in the Time Records or documented via another Exhibit to this brief, Cantarella, by her e-signature below, attests to all facts asserted in this Part I.

1

obtaining copies of the governing Plan instruments, Notices concerning the Plan the Trustees issued to Participants, and the Plan's annual financial reports; and (ii) researching ERISA §305, the statute purportedly authorizing the DRB reductions. Time Records (PX1). Cantarella also interviewed each caller to (i) ascertain the amount of their benefit reduction, obtain their contact information, and glean any other information that might be helpful in pursuing a claim to reinstate the original DRB amount and pay the back benefits; and (ii) determine who might be a suitable representative for all Class members if the claim were eventually filed as a class action. Id.

During these interviews, Cantarella took copious notes, created a spreadsheet with all of the pertinent putative Class member information, and created an email list to facilitate her communications with the putative Class members. Time Records (PX1). One of the callers, Tom Underwood, was particularly helpful in identifying and obtaining Plan documents and pertinent Notices to Participants. Therefore, Cantarella inquired of Underwood as to whether he might be interested in serving as a Class representative in the event an administrative appeal proved unsuccessful. Id. Underwood responded in the affirmative, subject to his review and approval of the proposed fee agreement, which Cantarella subsequently prepared and discussed with Underwood, after which they both signed the agreement. Id. and Representation - Fee Agreement [Underwood] (PX2).

Cantarella prepared an administrative Claim for Underwood (doc 10-9), which Defendants denied (doc 10-10), and an administrative Appeal (doc 10-11), which Defendants also denied (doc 10-12).   Less than a week later, on 10/24/2013, Cantarella filed the putative Class Action Complaint (doc 1).   Shortly thereafter, in an effort to locate more Class members so as to show "numerosity" for class certification, Hertz Schram PC ("HSPC") added information about the then putative Class Action to its website and to the Facebook websites of the major unions participating in the Plan, strategies that greatly increased the number of calls from putative Class members.[3]   Time Records (PX1).

Defendants subsequently filed a motion to dismiss (doc 7), to which Underwood filed a response objecting to the motion (doc 10), a motion for summary judgment (doc 11), and a motion to certify the class (doc 12).   Defendants filed a reply in support of their motion to dismiss (doc 14), a response and objections to Underwood's motion for summary judgment (doc 15), and a response and objections to Underwood's motion to certify the class (doc 16).   Underwood, in turn, filed a reply in support of his motion to certify the class (doc 18) and a reply in support of his motion for summary judgment (doc 19).   Underwood filed the last of these briefs, which collectively included many exhibits, on 3/28/2014.

---

[3]  This information included a statement that the then putative Class had not yet been certified by the Court.

On 5/06/2014, the parties received a notice that the case had been reassigned from Judge Zatkoff to Judge Michelson (doc 20), and the next day (5/7/2014), the parties received the Order of Reassignment, together with instructions to provide a statement of the case within 7 days (doc 21).  Subsequently, the parties received a Notice to Appear by Telephone for a status conference on 5/21/14 (doc 22), which was duly held.  A few weeks later, Underwood learned that a Complaint had been filed by plaintiff Roger Schleben alleging the same Claim, after which Underwood filed in this case a motion to consolidate the Schleben action with this action (doc 23) and, in the Schleben case, a notice of the motion.  Following Schleben's response, Underwood filed a reply in support of his consolidation motion (doc 24).  As a result of Underwood's motion to consolidate, the Schleben action was reassigned from the Honorable Avern Cohn to the Honorable Laurie Michelson and became a companion action to this case, thereby accomplishing the main goal of the motion: to have all claims like Underwood's heard before the same judge (see again doc 23).  Accordingly, Underwood subsequently withdrew his motion to consolidate (doc 43)

On 8/06/2014, the Court issued a notice to the parties that it would conduct a hearing on 9/09/2014 on the merits motions, motion for class certification, and motion to consolidate (doc 25).  A few days before the hearing, Underwood received a Notice from Defendants, stating that, under the Plan, only those disability benefits not "in pay status" could be reduced (doc 26-1).  This Notice only confirmed

Underwood's argument in the litigation that §10.4 of the Plan expressly prohibits Plan amendments that reduce the benefits [of any kind] of persons who are already receiving benefits.  Therefore, Underwood filed the Notice in this action and the Schleben action the very next day.  Id.  On 9/15/2014, following the 9/09/14 hearing, the Court issued an Opinion and Order granting Underwood's motion to certify the class (doc 27), and an Opinion and Order granting summary judgment for Underwood on his legal theory that the Thirteenth Amendment contravened *the Plan's own terms* under §10.4 and therefore had to be read out of the Plan (doc 28 p10 and pp15-21, citing §10.4 and §10.11 of the Plan).

Two weeks later, on October 2, 2014, Plaintiffs' attorneys filed a motion for costs and attorneys' fees under ERISA §502(g)(1) and prejudgment interest, along with numerous supporting exhibits (doc 31).  On that same date, Plaintiffs' attorneys filed a separate Rule 54 Motion for Common Fund Fees and Related Expenses (doc 33).  Pursuant to a stipulated order, Plaintiffs' attorneys subsequently withdrew both motions, except the request for prejudgment interest, on the understanding that they could re-file the cost and fee motions at a more appropriate time, as set forth in the order (doc 44).  Thereafter, Defendants filed a response to Plaintiffs' request for prejudgment interest (doc 47) and Plaintiffs filed a reply brief in support of the request (doc 49).

In the course of the attorney fee and prejudgment interest filings, (i) the Court ordered the parties to brief the issue of whether it possessed the authority to toll any deadline to appeal its September 15, 2014 order (doc 37); (ii) Plaintiffs' attorneys filed a proposed Class Notice (doc 38) and amended Class Notice (doc 45), mailed the latter to the Class (doc 48), and filed three separate reports with the Court regarding the results of the mailing (docs 48, 51 and 52); and (iii) the Court ordered Class damages discovery (doc 41), which was completed on February 27, 2015 (doc 50).

The Class damages discovery revealed that (i) at least 39 Class members *were* effectively forced to convert their capped DRB to a reduced Early Retirement Benefit ("ERB") before age 62 to mitigate their immediate monthly DRB losses ("the Early Converts"), as the reduced ERB exceeded their capped DRB under the Thirteenth Amendment (see doc 53), and (ii) the result of this forced choice was that the Early Converts would experience a significant lifetime loss of benefits because their reduced ERB would never pop-up to the full unreduced ERB available to DRB recipients who simply wait until age 62 when their DRB automatically converts to the full unreduced ERB (id.).  Accordingly, Plaintiffs' attorneys filed a motion for leave to amend the Complaint to add a Count on behalf of the Early Converts (doc 53). Defendants initially opposed the motion (doc 54), but later stipulated to its filing (doc 61) after Plaintiffs' attorneys filed their reply brief (doc 55) and letters, emails and

faxes from 35 of the Early Converts, attesting to the fact that they were forced to make the Hobson's choice of converting to the ERB before age 62 (doc 59), and the Court conducted a hearing on the motion (3/26/15 minute entry) and ordered the parties to non-binding mediation (doc 60). Subsequently, Plaintiffs' attorneys filed the Amended Complaint (doc 62), Defendants answered it (doc63), and the parties participated in a mediation that did not result in a settlement (doc 65).

Following the mediation, the Court conducted a status conference on June 17, 2015 (doc 67), during which Defendants disclosed that, a few weeks after the Court's September 15, 2014 rulings, they retroactively amended the Plan and restated it ("the Restatement") such that §10.4 of the Plan read the way they wished it had read when the Court issued it's rulings; that is, that the §10.4 benefit promise applied solely to the "Accrued Benefit," and not to the DRB provided under Article V of the Plan. The next day, the Court issued an order extending the discovery deadline to July 3, 2015 and requiring that any dispositive motions be filed by August 3, 2015 (doc 68). Thereafter, the parties filed cross-motions for summary judgment respecting the Restatement (docs 69 and 70), responsive briefs (docs 73 and 74), and reply briefs (docs 75 and 76). On September 25, 2015, the Court granted Plaintiffs' motion for summary judgment respecting the Restatement, and denied Defendants' summary judgment motion respecting the import of the Restatement (doc 77). A few days later, the Court conducted a status conference (9/30/15 text only order), during which it

was decided that the parties would spend time trying to resolve some of the issues and, in the interim, Plaintiffs would withdraw their motion for prejudgment interest, but reserve the right to re-file it at a later date (see also doc 80).

Plaintiffs' attorneys ultimately decided that, although Underwood had done a stellar job of representing the entire Class, an Early Convert Class member should be added to co-represent the Early Converts to allay any possible concern  or claim that the Early Converts were not adequately represented.  On November 20, 2015, after interviewing several Early Converts who had previously expressed interest in assisting with the litigation, Plaintiffs' attorneys filed an unopposed motion, which the Court granted, to add Early Convert Class member Donald E. Lee ("Lee") to serve in this capacity, along with supporting documents and Lee's affidavit (docs 83 and 84).[4]  Shortly thereafter, the Court conducted a telephonic status conference (12/1/15 minute entry), and the parties submitted a proposed stipulated order setting dates for filing briefs respecting the remaining Count I damages issues (i.e., whether Defendants should pay statutory fees and costs and prejudgment interest), which order was entered on December 4, 2015 (doc 85).

Throughout the foregoing proceedings–indeed, as soon as Cantarella began receiving calls from the Class members about their DRB being cut–Cantarella has

---

[4]  Lee also signed a Representation - Fee Agreement similar to the one signed by Underwood wherein he agreed to abide by the duties of a Class representative.  See Representation - Fee Agreement [Lee] (PX3).

maintained a group mail to update Class members on the status of the litigation.  See

Time Records (PX1).  As evidenced by the Time Records, this has been no small task.

Id.

## I.   PLAINTIFFS ARE ENTITLED TO COSTS AND ATTORNEYS' FEES UNDER ERISA §502(g)(1).

### A.   Factors to Consider in Determining the Propriety of Awarding Attorneys' Fees

ERISA §502(g)(1) permits the court to award costs and attorneys' fees to any

party in an action brought under Title I of ERISA:

> In any action under this title [Title I of ERISA, entitled "Protection of Employee Benefit Rights," covering ERISA §§2 through 734, 29 U.S.C. §§1001 through 1191c][5] (other than an action described in paragraph (2) [pertains to delinquent contributions] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. §1132(g)(1).  Significantly, the statute does not require the party seeking

costs and fees to prevail on its claim(s), much less on every legal theory advanced in

support of the claim(s).

In assessing whether an award of attorneys' fees is appropriate under ERISA

§502(g)(1), the Sixth Circuit instructs district courts to consider the following factors:

---

[5] This action was brought under Title I.

1.   the degree of the opposing party's culpability or bad faith;
2.   the opposing party's ability to satisfy an award of attorneys' fees;
3.   the deterrent effect of an award on other persons under similar circumstances;
4.   whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and
5.   the relative merits of the parties' positions.

Moon v. Unum Provident Corp., 461 F.3d 639, 642 (6th Cir. 2006) (citing Secretary

of Labor v. King, 775 F.2d 666, 669 (6th Cir. 1985)).

### 1.   Defendants were solely culpable for unlawfully reducing the DRB.

The Trustees adopted the Thirteenth Amendment (see doc 10-8 at pp15-16), despite §10.4's express prohibition of any amendments to the Plan that reduce benefits in pay status.  As this Court held, ERISA §305 did not authorize or permit the Trustees to ignore the plain language of §10.l4 (doc 28, pp 15 and 21).  To compound their prior unlawful cuts, Defendants imprudently sought to restate the Plan and treat the pre-amendment provisions of §10.4 as if they never existed, a maneuver this Court rejected for the same reasons it invoked to reject the Thirteenth Amendment (doc 77 pp 6, 8-15). Therefore, the Trustees were 100% culpable for unlawfully reducing the DRB.

### 2.   The Plan can easily satisfy an award of attorneys' fees.

Based on an actuarial valuation of the Plan prepared by an actuarial firm retained by the Trustees ("Actuarial Valuation"), the pertinent pages of which are

attached to the affidavit of Plaintiffs' actuary Diane M. Storm, the actuarial value of the Plan's assets as of May 1, 2014 was $883,023,972 (see doc 74-1 and its attachments).[6] The fee request here is only $996,237.76 (0.11% of the actuarial value of the Plan's assets), meaning the Plan can easily satisfy the fee request.

> **3.      An award of attorneys' fees will deter others acting under similar circumstances from adopting plan amendments prohibited under the plan's plain language.**

An award of attorneys' fees here would send a message to other ERISA-plan trustees that if they adopt an amendment proscribed under the plain language of the plan, there may be a cost in excess of the mere payment of the benefits owed under the pre-amendment version of the plan.  That cost should deter other ERISA trustees from adopting plan amendments that are prohibited under the plan's own terms.

> **4.      Plaintiffs sought to benefit <u>all</u> similarly situated Plan participants, and to resolve a significant legal question regarding ERISA.**

Underwood agreed to serve as the Class representative with all of its attendant responsibilities, and through his Complaint and motion for Class certification he sought to benefit <u>all</u> persons who had their DRB reduced under the Thirteenth Amendment.  Similarly, Lee through his many communications with Cantarella prior to becoming a named co-Class representative, sought to benefit a subset of these persons, the Early Converts.  Plaintiffs' also sought to resolve the significant legal

---

[6] Plaintiffs lack a more current actuarial valuation of the Plan.

question of whether ERISA §305 prohibited Defendants from reducing the DRB of persons who were already in pay status.  Although the Court held that ERISA §305 did not prohibit the DRB reductions (doc 28 pp12-15), that should not minimize Plaintiffs' efforts to resolve the ERISA §305 question.

### 5.     Plaintiffs' position was clearly the more meritorious.

The Court denied Defendants' motion to dismiss and granted summary judgment for Underwood based on his legal theory that the DRB reductions were prohibited under §10.4 of the Plan, a provision that lent itself to only one construction.  Clearly, Underwood's position was the more meritorious.

### B.     Lodestar

In an attorney fee case, the primary concern is that the fee awarded be "reasonable."  Reed v. Rhodes, 179 F.3d 453, 471 (6th Cir. 1999) (citing Blum v. Stenson, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).  A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."  Geier v. Sundquist, 372 F.3d 784, 791 (6th Cir. 2004).  See also Coulter v. Tennessee, 805 F.2d 146, 149 (6th Cir. 1986) ("[H]ourly rates for fee awards should not exceed the market rates necessary to encourage competent lawyers to undertake the representation in question.").

The starting point for determining a reasonable fee is the lodestar, which is the product of the number of reasonable hours billed and a reasonable hourly rate.

Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). The "lodestar method yields a fee that is presumptively sufficient" to award a "reasonable fee under federal fee-shifting statutes, and this presumption is a "strong one." Perdue v. Kenny, 559 U.S. 542, 552, 130 S. Ct. 1662, 1776 L. Ed. 2d 494 (2010); Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).  A reasonable attorneys' fee also includes work performed by law clerks and paralegals calculated at the market rate. Missouri v. Jenkins, 491 U.S. 274, 285, 109 S. Ct. 2463, 105 L. Ed. 2d 229 (1989).

### 1.      Reasonable hourly rate

The Sixth Circuit has held that, "[t]o arrive at a reasonable hourly rate, courts use *as a guideline* the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Geier, 372 F.3d at 791 (italics added).  Rates awarded in prior cases may also be considered in determining the reasonable hourly rate, as they too provide "inferential evidence of what a market rate is." B&G Mining, Inc v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor, 552 F.3d 657, 664 (6th Cir. 2008).  Consideration of such awards is especially appropriate where there is only a relatively small number of comparable attorneys in the relevant market.  Id. Indeed, "[c]ourts . . . routinely consider awards in prior decisions, not as binding precedent but as inferential evidence of what constitutes a reasonable hourly rate."

Id. at n.2.   Affidavits from attorneys in the same or similar field may also be considered in determining the reasonable rate.  Id. at 666.  Geier, 372 F.3d at 791.

Here, Plaintiffs proffer six relatively recent opinions from five ERISA class actions in the Eastern District of Michigan, awarding hourly rates for senior partners ranging from $425/hour to $475/hour, and for senior associates from $230/hour to $250/hour.  Plaintiffs also proffer the 2014 Economics of Law Practice in Michigan: Attorney Income and Billing Rate Summary Report ("2014 Survey") (PX4), discussed below, as at least two of the six opinions were based on an older 2010 State Bar Survey of billing rates.

In the most recent case, Ford v. Federal Mogul Corp., 2015 U.S. Dist. LEXIS 3399, No. 2:09-cv-14448 (E.D. Mich. Jan 7, 2015), a class action for ERISA-governed retiree health benefits, the parties settled their dispute and the proposed settlement agreement provided that class counsel would receive attorneys' fees based on $475 per hour.  Id. at *4.  The district court approved these fees, finding that $475 per hour was "reasonable and warranted" because class counsel had successfully litigated similar class claims for ERISA-governed retiree health benefits and been awarded attorneys' fees at this rate.  Id. at *3-4.

The district court in Potter v. Blue Cross Blue Shield of Michigan, No. 10-14981, 2014 U.S. Dist. LEXIS 43774 (E.D. Mich. Mar. 31, 2014), awarded attorneys' fees based on $425/hour for time spent by a senior partner of the firm, $350/hour for

other firm partners, $300/hour for a sole practitioner outside the firm, and $250/hour for the firm's associates.  <u>Potter</u>, No. 10-14981, 2014 U.S. Dist. LEXIS 44720 *21-23 (E.D. Mich. Jan. 30, 2014) (magistrate Michael Hluchaniuk).  In arriving at these rates, the magistrate judge considered billing rates published in a 2010 State Bar Survey for (i) attorneys in the 95th percentile with 16-35 years of experience, (ii) sole practitioners in the 95th percentile with 16-35 years of experience, and (i) associates in the 75th percentile [years unspecified in the opinion].  <u>Id</u>.  In affirming the magistrate's fee recommendation, the district court judge reasoned that courts in the Eastern District of Michigan have awarded rates as high as $475/hour for lead and experienced class counsel in ERISA health benefit class actions; the senior partner was experienced and the lead attorney; and the other partners and associates were also experienced in handling "matters of this sort."  <u>Potter v. Blue Cross Blue Shield of Michigan</u>, No. 10-14981, 2014 U.S. Dist. LEXIS 43774 *19-20 (E.D. Mich. Mar. 31, 2014).

In <u>United Steel Paper & Forestry, Rubber, Mfg., Energy v. Kelsey-Hayes Co.</u>, 2013 U.S. Dist. LEXIS 82253, No. 11-15497 (E.D. Mich. June 12, 2013), a class action for health benefits under ERISA and the Labor Management Relations Act (LMRA), the district court awarded attorneys' fees at the requested rate of $475/hour, finding that class counsel were highly experienced in ERISA/LMRA litigation and that their requested rates were reasonable and consistent "in the relevant community."

Id. at *9-10.[7] Hargrove v. Eaglepicher Corp., No. 10-10946, 2012 U.S. Dist. LEXIS 77726 (E.D. Mich. May 10, 2012), another class action for health benefits under ERISA and the LMRA that preceded United Steel also resulted in an award of attorneys' fees at the rate of $475/hour based on class counsel's qualifications and experience.  Id. at *5.

Like United Steel and Hargrove, Reese v. CNH Global N.V., No. 04-70592, 2011 U.S. Dist. LEXIS 70607 (E.D. Mich. June 30, 2011), involved a class action for health benefits under ERISA and the LMRA, but concerned a supplemental fee request following an award made three years earlier.  Recognizing the increase in hourly rates over time, the district court awarded $475/hour [up from $400/hour three years earlier] for time spent by two senior partners with considerable experience litigating this type of claim (see doc 230-2 and 230-3), $370/hour [up from $300/hour three years earlier] for time spent by a junior partner, and $230/hour [up from $225/hour three years earlier] for time spent by an associate. Id. at *12.

Class counsel in this case are highly experienced in handling class claims for benefits from ERISA-governed pension plans, having litigated 13 such class actions during the last 21 years.  See Cantarella, Schram and Geller Affidavits (PX5, PX6, and PX7).  Litigating class claims for ERISA pension benefits, as opposed to health benefits, requires intimate familiarity with the statutes and regulations governing

---

[7] The district court also awarded $125/hour for paralegal work.  United Steele at *10.

pension plans, and that there exists a dearth of opinions in this district respecting class claims for ERISA-governed pension benefits, while the contrary is true respecting class claims for ERISA-governed health benefits. In addition, Cantarella is lead counsel on this case and has been prosecuting class claims for ERISA benefits for nearly 21 years (PX5); Schram has been practicing for 39 years (nearly 21 of those years prosecuting class claims for ERISA benefits) (PX6); and Geller has been practicing for 33 years (nearly 21 of those years prosecuting class claims for ERISA benefits) (PX7). In light of the prior district court fee opinions discussed above and the experience and competence of Class Counsel, it would be reasonable to apply the 95th percentile billing rates set forth in the 2014 Survey, which are (i) for Cantarella, $488/hour, but without any consideration for the fact that the 2014 Survey was based on 2013 billing rates (see again PX4) and that Cantarella is lead counsel, both of which should justify a higher hourly rate for Cantarella of **$525/hour**; (ii) for Schram, **$525/hour**, and (iii) for Geller, $515/hour, but increased slightly because the 2014 Survey data is now two years old, thereby justifying an hourly rate for Geller of **$525/hour** (PX4 at p4, Table 4). Senior associate Daniel Rucker also provided considerable legal research assistance in this case. Rucker has practiced for over 11 years, prosecuted other complex claims, and provided extensive research assistance on various ERISA issues. Rucker Affidavit (PX8). Rucker's relevant experience, years of practice, and work on this case, justify a rate for Rucker in the 95th percentile,

which would be $370/hour based on the 2014 Survey, but increased slightly to **$380/hour** because the 2014 Survey data is two years old (PX4 p4 Table 4).

Reese was decided over four years ago; Hargrove was decided over three years ago; and United Steel was decided over two years ago. Although Potter was decided less than two years ago, the rates awarded there were based on the State Bar's 2010 Survey, which utilizes billing rates that are now five years old.[8] The 2014 Survey rates are higher than the 2010 Survey rates. In line with the 95th percentile rates in the 2014 Survey, increased slightly to account for the fact that it is based on 2013 billing rates that are now two years old, the reasonable hourly rates for Class Counsel are–

|  |  |
|--|--|
| Cantarella: | $525/hour |
| Schram: | $525/hour |
| Geller: | $525/hour |
| Rucker: | $380/hour |

Lastly, paralegal Lori Howes assisted with mailing the Class notices. Given that United Steel awarded $125 per hour for paralegal time over two years ago, the reasonable hourly rate for Howes should be slightly higher, or **$135** per hour.

---

[8] See *2010 Economics of Law Practice in Michigan: Attorney Income and Billing Rate Summary Report* at http://www.michbar.org/file/pmrc/articles/0000146.pdf

### 2.    Reasonable hours

The Sixth Circuit and all other federal courts of appeals that have considered the issue hold that time spent on pre-suit *administrative* proceedings is not compensable under ERISA §502(g)(1).  Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 313 (3rd Cir. 2008); Peterson v. Continental Cas. Co., 282 F.3d 112, 121 (2nd Cir. 2002); Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974, 987 (9th Cir. 2001); Anderson v. P&G, 220 F.3d 449, 456 (6th Cir. 2000).  They reason that the statute permits only the recovery of costs and fees incurred in an "action," and that the term "action" refers to a lawsuit.  Id.

However, the federal courts of appeals have just as consistently held that pre-suit time spent preparing for *the litigation is* compensable under ERISA §502(g)(1).[9] LifeCare Mgmt Servs. LLC v. Ins. Mgmt. Adm'rs, 703 F.3d 835, 847 and n.12 (5th Cir. 2013) ("[T]he award of $20,000 in fees for pre-suit work was not an abuse of discretion because the Appellants have failed to show that the fees were not for work in preparation for this lawsuit. . . .The cases relied on by Appellants . . . make clear the pre-suit fees are recoverable so long as the fees are for work in preparation for litigation and not for pre-trial administrative proceedings."); Dishman, 269 F.3d at 987 n. 51 ("[A]ttorneys' fees for work done *on the lawsuit* prior to the filing of the lawsuit are recoverable.") (italics added); Hahnemann Univ. Hosp., 514 F.3d at 314

---

[9]  Class Counsel were unable to find a Sixth Circuit case deciding this issue.

n.10 ("In recalculating the attorneys' fees on remand, the District Court should note that Hahnemann 'is entitled [to] collect a reasonable amount for fees and costs incurred in initiating suit in the District Court.' . . . Thus, we agree with the Second Circuit that the time spent drafting the complaint is properly considered as part of the litigation in the District Court, even though it occurred prior to filing.") (citing Peterson, 282 F.3d at 121 n.5, wherein the Second Circuit held: "Of course, Peterson is entitled to collect a reasonable amount for fees and costs incurred in initiating suit in the District Court.  For example, time spent drafting the complaint is properly considered part of the litigation in a district court, even though it occurs prior to filing.").  It follows that this Court may award costs and fees for time Class Counsel spent on the litigation, including time spent preparing the Complaint.

In determining the reasonable hours, the Supreme Court has instructed that fee applicants should exercise billing judgment respecting the hours worked and should maintain billing time records.  Hensley, 461 U.S. at 437.  Courts should not, however, reduce an attorney's hours on the ground that one or more theories of recovery were not accepted by the court:

> What has been said to this point brings into play the doctrine announced in Thurman v. Yellow Freight Sys., 90 F.3d 1160, 1169 (6th Cir. 1996)):
>
>> When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorney fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced.

20

> That is so because litigation is not an "exact science":  Lawyers cannot preordain which claims will carry the day and which will be treated less favorably.  Good lawyering as well as ethical compliance often requires lawyers to plead in the alternative (see Goos v. Nat'l Ass'n of Realtors, 314 U.S. App. D.C. 329, 68 F.3d 1380, 1386 (D.C. Cir. 1995)).  Fee awards comport with that reality by giving full credit to a meaningfully successful plaintiff, rather than making a mechanical per-losing-claim deduction from an attorney's fee award (Hensley, 461 U.S. at 435).
>
> Here Jordan's results were nothing short of exemplary.  He prevailed on a substantial number of claims that he pursued, obtained virtually all of the types of relief he requested--including back and front pay and compensatory damages.  Any reduction from the lodestar amount of attorney's fees is not only unwarranted but an abuse of discretion.

Jordan v. City of Cleveland, 464 F.3d 584, 604 (6th Cir. 2006).

Moreover, time spent preparing, presenting, and adjudicating the application for statutory attorneys' fees *is* compensable as part of the reasonable fee.  Coulter, 805 F.2d at 151.  However, "guidelines and limitations" constrain the size of the fee request; "otherwise, the prospect of large fees later on may discourage early settlement of cases by rewarding protracted litigation of the . . . [main] case and the attorney fee case."  Therefore, unless there exists unusual circumstances or the case goes to trial, the fees recoverable for time spent on a *statutory*-fee application are generally limited to 3% of the time spent on the main case.  Id.

Class Counsel have maintained time records for time spent (i) investigating the claim *before* the administrative proceedings (not compensable under §502(g)(1)); (ii) assisting Underwood in the administrative proceedings (not compensable under §502(g)(1)); and (iii) briefing the merits of Count I (both before and after the

Restatement), class certification, and consolidation with the Schleben action (compensable under §502(g)(1)), (iv) briefing the propriety of adding a Count on behalf of the Early Converts and amending the Complaint to add a Count II for "appropriate equitable relief" for the Early Converts (compensable under ERISA §502(g)(1)), (v) preparing for and participating in oral argument on the initial dispositive motions, the class certification motion, and the motion for leave to amend the Complaint to add Count II, several status conferences, and Court-ordered mediation (compensable under §502(g)(1)), (vi) briefing the propriety of awarding prejudgment interest (compensable under §502(g)(1)); (vii) preparing *this* request for attorneys' fees (compensable up to 3% of total compensable time spent on main case); and (viii) preparing the request for common-fund attorneys' fees (not requested in this motion and currently withdrawn to be re-filed at a later more appropriate date per doc 44).  For the compensable items, Class Counsel have also exercised billing judgment by writing-off time they deemed duplicative or arguably unwarranted.  See Time Records (PX1).  Although the four charts on the next three pages detail all of the time Class Counsel have spent on the Claim, **the lodestar request here includes only the time they spent on (i) the litigation, including preparation of the Complaint, and (ii) the statutory fee request (but only up to 3% of the total compensable time on the main case), after appropriate write-offs (as indicated in the charts)**.

## TIME CHARTS

| Investigation & Adminis-trative Proceedings (not compensable) [time slips at 6/12/13 thru 9/09/13] | Attorney | Time | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|
| | Cantarella | 88.85 | 525 | 46,646.25 |
| | Geller | 3.10 | 525 | 1,627.50 |
| | Schram | 0.00 | 525 | 0.00 |
| | Rucker | 0.00 | 380 | 0.00 |
| **Totals** | | 91.95 | | 48,273.75 |

| Comm. Fund fee app (not requested) [time slips at 9/18/14 thru 10/02/14] | Attorney | Time | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|
| | Cantarella | 47.00 | 525 | 24,675.00 |
| | Geller | 21.00 | 525 | 11,025.00 |
| | Schram | 2.10 | 525 | 1,102.50 |
| | Rucker | 15.00 | 380 | 5,700.00 |
| **Totals** | | 85.10 | | 42,502.50 |

| Litigation (compensable; excludes time spent on investigation, administrative proceedings, common fund motion, and 502(g) costs & fees motion) | Attorney | Time **Before** Write Offs | Time **After** Write Offs | Reason-able Hourly Rate | Lodestar |
|---|---|---|---|---|---|
| | Cantarella | 1383.60 | 1364.05 | 525 | 716,126.05 |
| | Geller | 447.70 | 429.20 | 525 | 225,330.00 |
| | Schram | 47.70 | 43.10 | 525 | 22,627.50 |
| | Rucker | 8.60 | 4.60 | 380 | 1,748.00 |
| | Howes | 13.25 | 10.25 | 135 | 1,383.75 |
| **Totals** | | 1900.85 | 1851.20 | | 967,215.30 |

| §502(g)(1) costs & fees motion (compensable up to 3% of time spent on main case) [time slips at 9/16/14 thru 10/02/14 and 12/7/15 thru 12/21/15] | Attorney | Time Before Write Offs[10] | Time After Write Offs | Reasonable Hourly Rate | Lodestar |
|---|---|---|---|---|---|
| | Cantarella | 60.55 | 54.05 | 525 | 38,376.25 |
| | Geller | 24.80 | 16.80 | 525 | 8,820.00 |
| | Schram | 2.40 | 1.90 | 525 | 997.50 |
| | Rucker | 19.30 | 12.30 | 380 | 4,674.00 |
| Totals | | 83.50 | 61.50 | | 52,867.75 |

As discussed, in the Sixth Circuit, an award for time spent preparing a motion for statutory costs and fees is limited to 3% of the lodestar on the main case, or $29,016.46 in this case ($967,215.39- x 0.03 = $29,016.46).  Thus, the total lodestar requested under ERISA §502(g)(1) is **996,231.76** ($967,215.30 on main case after write-offs + $29,016.46 on 502(g) motion).

---

[10] The 502(g)(1) time includes (i) time spent on the initial statutory fee app filed on 10/2/2014 (doc 31) which was subsequently withdrawn, but with the right to re-file the statutory fee app at a later date (doc 44), and (iii) time spent updating the initial statutory fee app which is now *this* statutory fee app.

## C.    Costs

The costs incurred from the time the Complaint was filed on 10/24/13 through 12/16/2015 equal $16,441.63 (excludes copy costs) and include only those costs associated with compensable time, which encompass postage costs, filing fees, messenger delivery fees, parking fees, mileage reimbursement at 0.45/mile, transcript fees, actuarial fees, mediation fees, actuarial fees, and one meal charge for a lunch meeting with Underwood.  See Expense Records (PX9).  Because these are clearly costs of the "action," they are recoverable under ERISA §502(g)(1).

## III.    CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, Plaintiffs request that the Court award the Class costs and attorneys' fees under ERISA §502(g)(1) in the following amounts:

costs: $              $16,441.63

attorneys' fees:      $996,231.76

> Respectfully submitted December 23, 2015

_____  /s/ Eva T. Cantarella  _____
Eva T. Cantarella (P51917)
Robert P. Geller (P26337)
Bradley J. Schram (P34391)
Hertz, Schram PC
1760 S. Telegraph Rd., Ste. 300,
Bloomfield Hills, MI 48302
o.248-335-5000; f. 248-335-3346; ecantarella@hertzschram.com
*Attorneys for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2015, I served on the below counsel for Defendants (i) Plaintiffs' Motion for Costs And Attorneys' Fees Under ERISA §502(g)(1), (ii) Brief in Support, along with Exhibit List and Exhibits, and (iii) this Certificate of Service, via the Court's CM/ECF system.  I also uploaded to the Court a proposed Order via the Court's CM/ECF Utilities function and emailed the proposed Order to the below counsel for Defendants.

Edward J. Pasternak (P58766)
John I. Tesija (P36709)
Novara Tesija PLLC
2000 Town Center, Ste. 2370
Southfield, MI 48075
o. 248-354-0380; f. 248-354-0393
ejp@novaratesija.com
tesija@novaratesija.com
*Attorneys for Defendants*

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
ecantarella@hertzschram.com
*Attorney for the Class*