## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood and Donald E. Lee, individually
and on behalf of all others similarly situated,

     Plaintiff,

v.                                    Case No. 2:13-cv-14464
                                        Hon. Laurie J. Michelson

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.                           **CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for Class* | *Attorneys for Defendants* |

---

## JOINT MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT AGREEMENT AND NOTICE TO THE CLASS
### *oral argument requested*

     Pursuant to Fed. R. Civ. P. 23(e), counsel for the parties jointly move the Court

for Preliminary Approval of the attached Settlement Agreement (EX1) and Notice of

Proposed Class Action Settlement ("Notice") (EX2).  The reasons in support of this

H0384121.1                        1

motion are set forth in the attached brief.  A proposed Order preliminarily approving the Settlement Agreement and Notice has been submitted via the Court's ECF "Utilities" function.

Respectfully Submitted November 3, 2016

/s/ Eva T. Cantarella
Eva T. Cantarella (P51917)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-3353346
ecantarella@hertzschram.com
*Attorneys for Class*

/s/ John I. Tesija w/consent
Edward J. Pasternak (P58766)
John I. Tesija (P36709)
Novara Tesija PLLC
2000 Town Center, Ste. 2370
Southfield, MI 48075
o. 248-354-0380; f. 248-354-0393
ejp@novaratesija.com
tesija@novaratesija.com
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Thomas E. Underwood and Donald E. Lee, individually
and on behalf of all others similarly situated,

     Plaintiff,

v.

Case No. 2:13-cv-14464
Hon. Laurie J. Michelson

Carpenters Pension Trust Fund - Detroit
and Vicinity Pension Plan ("Plan") and
Trustees of the Plan,

Defendants.

**CLASS ACTION**

---

| | |
|---|---|
| Eva T. Cantarella (P51917) | Edward J. Pasternak (P58766) |
| Bradley J. Schram (P26337) | John I. Tesija (P36709) |
| Robert P. Geller (P34391) | Novara Tesija PLLC |
| Hertz Schram PC | 2000 Town Center, Ste. 2370 |
| 1760 S. Telegraph Rd., Ste. 300 | Southfield, MI 48075 |
| Bloomfield Hills, MI 48302 | o. 248-354-0380; f. 248-354-0393 |
| o. 248-335-5000; f. 248-3353346 | ejp@novaratesija.com |
| ecantarella@hertzschram.com | tesija@novaratesija.com |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

---

## BRIEF IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT AND NOTICE TO THE CLASS

H0384121.1

## **TABLE OF CONTENTS**

I.    BRIEF HISTORY OF THE DISPUTE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE RULE 23(e) REQUIREMENTS HAVE BEEN MET . . . . . . . . . . . . . 4

      A.    The Settlement Agreement Is Fair, Reasonable, and Adequate . . . . . 5

            1.    There exists no risk of fraud or collusion . . . . . . . . . . . . . . . 6

            2.    The Settlement Agreement minimizes the complexities,
                  expense, and duration of the litigation . . . . . . . . . . . . . . . . . . 7

            3.    There was considerable discovery . . . . . . . . . . . . . . . . . . . . . . 8

            4.    The Settlement Agreement takes into account that the
                  Court of Appeals could reach a different decision . . . . . . . . . 9

            5.    Class Counsel, Underwood, and Lee believe the
                  Settlement Agreement is fair, reasonable and adequate . . . . 10

            6.    Absent Class members will be given an opportunity to
                  object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            7.    The Settlement Agreement serves the public interest . . . . . . 12

      B.    The Manner of Notifying the Class About the Settlement
            Agreement Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C.    The Notice Informs Class Members of Their Opportunity to
            Object, Tells Them How and When They May Do So, and
            Explains the Ramifications of Objecting . . . . . . . . . . . . . . . . . . . . . 13

      D.    The Notice Provides Class Members With the Information
            They Need to Make an Informed Decision as to Whether the
            Settlement Agreement Serves Their Interests . . . . . . . . . . . . . . . . . 14

i

III.    CONCLUSION AND RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# INDEX OF AUTHORITIES

## Cases

Amos v. PPG Indus.
No. 2:05-cv-70, 2015 U.S. Dist. LEXIS 106944 (S.D. Ohio Aug. 13, 2015) . . . . 5

Dick v. Sprint Communs. Co. L.P.
297 F.R.D. 283 (W.D. Ky. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Clark Equip. Co. v. Int'l Union, Allied Indust. Workers
803 F.2d 878 (6th Cir. Ky. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Griffin v. Flagstar Bancorp, Inc.
No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 (E.D. Mich. Dec. 12, 2013) . 6

Grunin v. Int'l House of Pancakes
513 F.2d 114 (8th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Cardizem CD Antitrust Litig.
218 F.R.D. 508 (E.D. Mich. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 12

In re Delphi Corp. Secs. Litig.
248 F.R.D. 483 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Int'l Union v. Ford Motor Co.
No. 05-74730, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13, 2006) . . . . 4, 6

IUE-CWA v. GMC
238 F.R.D. 583, 597 (E.D. Mich. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sheick v. Auto. Component Carrier LLC, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS
110411 *51 (E.D. Mich. Oct. 18, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Sweetwater Valley Farm, Inc. v. Dean Foods Co. (In re Southeastern Milk Antitrust
Litig.), Master File No. 2:08-MD-1000; No. 2:07-cv-208, 2012 U.S. Dist. LEXIS
83703 (E.D. Tenn. June 15, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Tennessee Ass'n of HMOs, Inc.
262 F.3d 559 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

UAW v. General Motors Corp.
497 F.3d 615 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12, 14

UAW v. GMC
No. 05-CV-73991, 2006 U.S. Dist. LEXIS 14890 (E.D. Mich. Mar. 31, 2006) . 10

Williams v. Vukovich
720 F.2d 909 (6th Cir. Ohio 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wimbush-Bowles   v.   GTE   Serv.   Corp.   Plan   for   Employees'   Pensions
No.8:98-cv-598-T-MSS, 2002 U.S. Dist. LEXIS 28425
(M.D. Fla. Sept. 11, 2002) *rev'd by* Wimbush-Bowles v. GTE Serv. Corp.
No. 02-15580, 2004 U.S. App. LEXIS 6579 (11th Cir. Fla. 2004) . . . . . . . . . 9, 11

**Statutes**

29 U.S.C. §1001 [ERISA §2] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. §1085(e) [ERISA §305(e)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

29 U.S.C. §1132(a)(3) [ERISA §502(a)(3)] . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Court Rules**

Fed. R. Civ. P. 23(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## I.   BRIEF HISTORY OF THE DISPUTE

This dispute arose in June of 2013 when the Class members received a notice that the Trustees for the Plan had adopted a Plan amendment ("the Thirteenth Amendment") that (i) reduced and set caps on their Disability Retirement Benefit ("DRB"), (ii) imposed a new eligibility requirement for their continued receipt of the DRB–that they obtain a Social Security Disability Income ("SSDI") award within one year, and (iii) made these changes effective August 1, 2013 (see docs 10-6, 10-7, and 10-8).   Class Counsel became aware of the Amendment shortly thereafter and commenced an investigation as to its legality.   Cantarella Affidavit (EX4).

Class Counsel soon determined that §10.4 of the Plan prohibits Plan amendments that reduce the benefits of persons who are already receiving benefits (doc 10-2 §10.4). Class Counsel also concluded that ERISA §305 prohibits plan amendments that "adjust" the disability benefits of persons in "pay status." 29 U.S.C. §1085(e)(8).   As a result of these determinations and conclusions, Class Counsel prepared an administrative Claim for DRB recipient Thomas E. Underwood ("Underwood"), who sought to have his original DRB amount reinstated and recover any back DRB benefits owed, bringing the Claim under §10.4 of the Plan and ERISA §305 (docs 10-9 and 10-11).   Cantarella Affidavit (EX4).   After the Trustees denied Underwood's Claim and Appeal (docs 10 and 12), Class Counsel filed a single-Count

putative class action Complaint, seeking this same relief on behalf of all similarly situated persons and alleging the same theories of liability (doc 1).

Following the filing of dispositive motions and Underwood's motion for class certification, the Court (i) certified the putative Class (doc 27), (ii) appointed Underwood as the Class representative and Hertz Schram PC ("HSPC") as Class Counsel (id.), and (iii) ruled that, although ERISA §305 did not prohibit the DRB cuts, the reductions were expressly prohibited under §10.4 of the Plan (doc 28 Pgs 15 and 21).  A few weeks later, Defendants amended and restated the Plan ("the Restatement") such that (i) the §10.4 benefit protections were limited to "Accrued Benefits," and (ii) the DRB was once again subject to the same caps and SSDI eligibility requirement as set forth in the Thirteenth Amendment (doc 70-5, Article V and §10.4).  After dispositive briefs on the effect of the Restatement on Underwood's Claim, the Court ruled that, to the extent the Restatement reduced the DRB of persons already receiving that benefit, it too violated §10.4 of the Plan (doc 77 Pg 15).

In the course of these proceedings, Class Counsel conducted Class damages discovery, which revealed that (i) at least 39 Class members were effectively forced to convert their capped DRB to a reduced Early Retirement Benefit ("ERB") before age 62 ("the Early Converts") so as to mitigate their immediate monthly DRB losses,

as the reduced ERB exceeded their capped DRB under the Thirteenth Amendment, and (ii) as a result of this forced choice, they would experience a significant lifetime loss of benefits because their reduced ERB would never pop-up to the full unreduced ERB available to DRB recipients who simply wait until age 62 when the DRB automatically converts to a full unreduced ERB (see doc 10-2 §5.2(c)).  Therefore, Class Counsel filed a motion for leave to amend the Complaint to add a Count II for "appropriate equitable relief" under ERISA §502(a)(3) on behalf of the Early Converts, seeking to restore them to the *status quo* before the Thirteenth Amendment (doc 53).  Although Defendants initially opposed the motion (doc 54), they later stipulated to its filing (doc 61), and Early Convert Donald E. Lee ("Lee") was subsequently appointed to represent the interests of the Early Converts (doc 84).  To date, Count II has not been adjudicated.

The Settlement Agreement (EX1) (i) resolves both Count I (adjudicated) and Count II (not adjudicated), (ii) brings this dispute to closure, and (iii) confers upon all 325 disabled Class members nearly all of the DRB and ERB benefits they were entitled to receive *before* the Thirteenth Amendment.  The Settlement Agreement should be preliminarily approved because it is facially "fair, reasonable, and adequate" and incorporates the Notice of Proposed Class Action Settlement ("Notice") (EX2) and other procedural safeguards set forth in Fed. R. Civ. P. 23(e).

## II.   THE RULE 23(e) REQUIREMENTS HAVE BEEN MET.

Pursuant to Fed. R. Civ. P. 23(e), the Class members' Claims may be settled only with this Court's approval and in accordance with the following procedures:

(1)   The Court must direct notice in a "reasonable manner" to all Class members who would be bound by the settlement;

(2)   The Court may approve the settlement only after a hearing and on a finding that the settlement is "fair, reasonable, and adequate";[1]

(3)   The parties must "file a statement identifying any agreement made in connection with the proposal"– here the Settlement Agreement;

(4)   Because this case was certified as an opt out class under Rule 23(b)(3), the Court "may refuse to approve the proposed settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so";

(5)   Class members must be given an opportunity to object to the proposed settlement, but any such objection may be withdrawn only with the Court's approval.[2]

---

[1]   The fairness hearing need not "entail the entire panoply of protections afforded by a full-blown trial on the merits.  Rather, district courts have "discretion to limit the fairness hearing" to whatever is "consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable." Tennessee Ass'n of HMOs, Inc., 262 F.3d 559, 567 (6th Cir. 2001).

[2]   "If only a small number of objections to a class action settlement are received, that fact can be viewed as indicative of the adequacy of the settlement." In re Delphi Corp. Secs. Litig., 248 F.R.D. 483, 500 (E.D. Mich. 2008) (citing In re Cardizem CD Antitrust Litig., 218 F.R.D. 508, 527 (E.D. Mich. 2003); and Int'l Union v. Ford Motor Co., No. 05-74730, 2006 U.S. Dist. LEXIS 70471 *78 (E.D. Mich. July 13,

(continued...)

Fed. R. Civ. P. 23(e) (paraphrased except for quotes).  As explained below, the

Settlement Agreement here should be preliminarily approved.[3]

### A.    The Settlement Agreement Is Fair, Reasonable, and Adequate.

The Sixth Circuit has identified the following seven factors for determining

whether a proposed settlement is "fair, reasonable, and adequate":

(1)    the risk of fraud or collusion;

(2)    the complexity, expense and likely duration of the litigation;

(3)    the amount of discovery engaged in by the parties;

(4)    the likelihood of success on the merits;

(5)    the opinions of class counsel and class representatives;

(6)    the reaction of absent class members; and

(7)    the public interest.

---

[2](...continued)
2006)).

[3]    Once preliminarily approved, a class action settlement is "presumptively reasonable."  Therefore, an individual who objects after such approval has a "heavy burden" of demonstrating that the settlement is unreasonable.  Williams v. Vukovich, 720 F.2d 909, 921 (6th Cir. Ohio 1983); Amos v. PPG Indus., No. 2:05-cv-70, 2015 U.S. Dist. LEXIS 106944 *16 (S.D. Ohio Aug. 13, 2015); Dick v. Sprint Communs. Co. L.P., 297 F.R.D. 283, 290 (W.D. Ky. 2014); Sweetwater Valley Farm, Inc. v. Dean Foods Co. (In re Southeastern Milk Antitrust Litig.), Master File No. 2:08-MD-1000; No. 2:07-cv-208, 2012 U.S. Dist. LEXIS 83703 *17 (E.D. Tenn. June 15, 2012).

UAW v. General Motors Corp., 497 F.3d 615, 631 (6th Cir. 2007).  However, district courts "may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." Griffin v. Flagstar Bancorp, Inc., No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 *8-9 (E.D. Mich. Dec. 12, 2013) (quoting Int'l Union v. Ford Motor Co., No. 05-74730, 2006 U.S. Dist. LEXIS 70471 *22 (E.D. Mich. July 13, 2006)).  "The acceptance of a settlement in a class action suit is discretionary with the court and will be overturned only by a showing of abuse of discretion.  Clark Equip. Co. v. Int'l Union, Allied Indust. Workers, 803 F.2d 878, 880 (6th Cir. Ky. 1986).[4]  For the reasons articulated below, the Settlement Agreement is fair, reasonable, and adequate, thereby satisfying Fed. Rs. Civ. P. 23(e)(2), (3).

### 1.    There exists no risk of fraud or collusion.

Courts generally "respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."  Griffin, No. 2:10-cv-10610, 2013 U.S. Dist. LEXIS 173702 *9 (quoting Ford Motor Co., No. 05-74730, 2006 U.S. Dist. LEXIS 70471 *26).  There exists no

---

[4] Clark added that "[a]ccepting a settlement over the objections of the named representatives is not necessarily an abuse of discretion."  803 F.2d at 880. Fortunately, that is not an issue here, as Underwood and Lee are on board with the Settlement Agreement.

evidence of fraud or collusion in this case. Indeed, the evidence is to the contrary. The terms of the settlement are spelled out in excruciating detail in the Settlement Agreement (EX1); and the Time Records maintained by Class Counsel (EX3) reveal considerable negotiations over those terms in the weeks preceding the final version submitted to this Court. Moreover, the Settlement Agreement requires the Plan to calculate all wrongfully withheld benefits based on 95% of the original DRB amount, and treats the Early Converts as if they had never converted their DRB to an ERB, an especially favorable outcome for that group of Class members since Count II has not been adjudicated. These facts provide compelling evidence that the settlement negotiations were conducted at arms' length, and without any fraud or collusion.

> **2.      The Settlement Agreement minimizes the complexities, expense, and duration of the litigation.**

The Settlement Agreement was negotiated while an appeal on Count I was pending in the Sixth Circuit Court of Appeals. Thus, the Settlement Agreement eliminates the possibility that (i) the Sixth Circuit might reverse the decision of this Court, or punt on the issue of whether the Thirteenth Amendment was unlawful under §10.4 of the Plan and, instead, remand to this Court to reconsider the propriety of that Amendment under the arbitrary and capricious standard of review, rather than the de novo standard the Court employed (doc 28 Pg 10-11); or (ii) if unsuccessful on their

appeal, Defendants might petition the United States Supreme Court for a Writ of Certiorari. Any of these outcomes would further complicate this litigation, and add to its expense and duration.

Finally, because Count II has not been adjudicated, the Settlement Agreement eliminates the possibility of protracted litigation on Count II, especially if Defendants were permitted to depose the 45 Early Converts as to their motivations for converting their DRB to an ERB before age 62–a scenario that would dramatically magnify the complexities of that Count, increase litigation costs, and further extend the litigation. In short, the Settlement Agreement puts a stop to any further complexities and expenses and ends the litigation once and for all <u>as to *both* Counts and *all* Class members</u>.

### 3. There was considerable discovery.

On three separate occasions after this Court certified the Class, Class Counsel served Defendants with Discovery Requests to which Defendants timely responded. The parties also engaged in voluntary discovery respecting Class member data needed by Plaintiffs' actuary to compute the aggregate damages, as well as each Class member's individual damages. More specifically, Defendants produced updated Class member data approximately once every 30-60 days, and Class Counsel, in turn, provided Defendants with updated aggregate Class damages summaries. These

summaries were needed for (i) the facilitation ordered by this Court (doc 60), (ii) the mediation ordered by the Sixth Circuit, and (iii) most importantly, the parties' own information so they could make informed decisions as to the costs and benefits of continued litigation.  Armed with this information, the parties settled this dispute with full knowledge of the financial ramifications of doing so.

### 4.   The Settlement Agreement takes into account that the Court of Appeals could reach a different decision.

Although Plaintiffs believe their position on the merits is strong, as evidenced by the Court's <u>two</u> favorable summary judgment Opinions (docs 28 and 77), they are not so naive as to think there would be a <u>zero</u> possibility of reversal by the Sixth Circuit if the dispute had not settled.  As the District Court explained in <u>In re Cardizem CD Antitrust Litig.</u>, 218 F.R.D. at 523 (Hon. Nancy J. Edmunds): "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict . . .").  Indeed, in a pension plan class action Class Counsel successfully tried in Federal court over a dozen years, the Court of Appeals ultimately reversed the trial court's ruling.   <u>See Wimbush-Bowles v. GTE Serv. Corp. Plan for Employees' Pensions</u>, No. 8:98-cv-598-T-MSS, 2002 U.S. Dist. LEXIS 28425 (M.D. Fla. Sept. 11, 2002), *rev'd by* <u>Wimbush-Bowles v. GTE Serv. Corp.</u>, No. 02-15580, 2004 U.S. App. LEXIS 6579

(11th Cir. Fla. 2004). Because the Settlement Agreement confers upon the Class members nearly all of the benefits to which they were entitled *before* the Thirteenth Amendment [See Settlement Agreement §7 (EX1)], the certainty of receiving those benefits clearly outweighs the risk of receiving nothing additional at all (i.e., if Plaintiffs did not prevail on appeal).

> **5. Class Counsel, Underwood, and Lee believe the Settlement Agreement is fair, reasonable, and adequate.**

"The judgment of Class Counsel that the settlement is in the best interest of the Class 'is entitled to significant weight, and supports the fairness of the class settlement.'" Sheick v. Auto. Component Carrier LLC, No. 2:09-cv-14429, 2010 U.S. Dist. LEXIS 110411 *51 (E.D. Mich. Oct. 18, 2010) (quoting IUE-CWA, 238 F.R.D. 583, 597 (E.D. Mich. 2006) (citing UAW v. GMC, No. 05-CV-73991, 2006 U.S. Dist. LEXIS 14890 *57 (E.D. Mich. Mar. 31, 2006) ("The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Class Counsel have been litigating class claims for ERISA pension benefits for nearly 22 years, successfully recovering over $100 million in benefits for participants and their beneficiaries. See Cantarella Affidavit (EX4) and Affidavits of Bradley J. Schram (EX5) and Robert P. Geller (EX6). At the same time, they have learned that a win in the District Court does not necessarily translate into a win in the

Court of Appeals.  See again Wimbush-Bowles, part 4. *supra*.  Class Counsel have

taken this risk into consideration in advocating that the Settlement Agreement be

approved, especially since it confers nearly all of the benefits on Class members to

which they were entitled *before* the Thirteenth Amendment.  Settlement Agreement

§7 (EX1).  Cantarella explained this risk and the terms of the Settlement Agreement

to Lee and Underwood, both of whom have endorsed the Settlement Agreement.

Cantarella Affidavit (EX4).

**6.      Absent class members will be given an opportunity to object.**

The Settlement Agreement (EX1) requires (i) delivery to all Class members of

the Notice (EX2), which informs Class members of their right to object, how and

when to do so, and the ramifications of objecting; and (ii) posting of the Notice on

Class Counsel's website and on a Facebook page Lee has created and dedicated to

this Class action.  Settlement Agreement §2.2.2 (EX1).  The Settlement Agreement

also establishes the timeline for sending the Notices to Class members and the method

of delivery.  Settlement Agreement §2.2.2 (EX1).  Thus, the Settlement Agreement

complies with the procedural safeguards set forth in Rule 23(e), and this Court will

be able to assess the validity of any objections submitted by Class members.

### 7.    The Settlement Agreement serves the public interest.

Congress enacted ERISA to ensure that participants and beneficiaries *would* receive their promised plan benefits  See 29 U.S.C. §1001 ["Congressional Findings and Declarations of Policy"].  Approving the Settlement Agreement is consistent with this Congressional goal, as it confers upon the Class members nearly all of the benefits they would receive *before* the Thirteenth Amendment.  The public also has an interest in the Settlement Agreement because it ensures that the Class members, all of whom are totally and permanently disabled and unable to work, have a financial floor under them so they may pay their financial obligations, live with dignity, and not be forced to seek handouts or government assistance.  Likewise, our judicial system has an interest in the Settlement Agreement because, as a class action, the litigation is relatively complex and, thus, very consuming of scarce judicial resources. See UAW, 497 F.3d at 632 (noting that federal policy favors settlement of class actions); and In re Cardizem, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources.").  Approval of the Settlement Agreement will free up some of this Court's valuable time so the Court may devote more time to other cases on its docket, thereby moving justice along more quickly for the litigants in those cases.  The same holds

true for the Court of Appeals.

Clearly, analysis of the relevant factors leads to the inescapable conclusion that the Settlement Agreement is fair, reasonable, and adequate and should be preliminarily approved.

**B.      The Manner of Notifying the Class About the Settlement Agreement Is Reasonable.**

As explained in the Settlement Agreement (EX1), the Notice (EX2) will be sent to Class members by (i) email if they are on Class Counsel's group mail for the Class [249 of the 325 Class members are on Class Counsel's group mail for the Class]; and (ii) if they are not on Class Counsel's group mail for the Class, by first class United States mail.  Settlement Agreement §2.2.2 (EX1).  This plainly is a "reasonable manner" of notifying the Class of the Settlement Agreement, as required under Fed. R. Civ. P. 23(e)(1).

**C.      The Notice Informs Class Members of Their Opportunity to Object, Tells Them How and When They May Do So, and Explains the Ramifications of Objecting.**

The Notice of Class Action Settlement (i) informs Class members that they may object to the Settlement Agreement, (ii) tells them how and when they may do so, and (iii) explains the ramifications of objecting.  This satisfies the procedural safeguards mandated under Fed. R. Civ. P. 23(e)(5).

**D.    The Notice Provides Class Members With the Pertinent Information Needed to Make an Informed Decision as to Whether the Settlement Agreement Serves Their Interests.**

Rule 23(e) does not require that a notice of class action settlement set forth the grounds on which a class member might object. UAW, 497 F.3d at 630.  Rather, the notice need only "fairly apprise the prospective members of the class of the terms of the proposed settlement" so they may reach their own conclusions as to whether it serves their interests. Id. (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 122 (8th Cir. 1975)).  With that goal in mind, the Notice provides Class members with considerable information about the Settlement Agreement, including (i) a history of the case, (ii) the methodology for computing any back benefits owed, (iii) when back benefits will be paid, (iv) how to notify the Plan Administrator if they want a "direct transfer" of their back benefits into an Individual Retirement Account so they may avoid any immediate tax consequences when the Plan distributes those funds, (v) an explanation of their benefits going forward, (vi) to the extent the Settlement Agreement provides for an increase in future benefits, when *those* benefits will commence, (vii) the date of the fairness hearing, (viii) the costs and fees requested by Class Counsel, (ix) the incentive awards requested on behalf of Class representatives Underwood and Lee, and (x) the method for requesting additional information.  With this information, counsel for the parties believe the vast majority of the Class

H0384121.1                                          14

members will find that the Settlement Agreement is fair, reasonable, and adequate, and serves their interests.

## III.   CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, counsel for the parties jointly request that the Court preliminarily approve the Settlement Agreement (EX1) and Notice (EX2).   A proposed Order has been submitted to the Court via the Utilities function of the Court's ECM/ECF system.

Respectfully Submitted October ___, 2016

/s/ Eva T. Cantarella_____
Eva T. Cantarella (P51917)
Bradley J. Schram (P26337)
Robert P. Geller (P34391)
Hertz Schram PC
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302
o. 248-335-5000; f. 248-3353346
ecantarella@hertzschram.com
*Attorneys for Class*

/s/ John I. Tesija w/consent_____
Edward J. Pasternak (P58766)
John I. Tesija (P36709)
Novara Tesija PLLC
2000 Town Center, Ste. 2370
Southfield, MI 48075
o. 248-354-0380; f. 248-354-0393
ejp@novaratesija.com
tesija@novaratesija.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2016, I served (i) Joint Motion for Preliminary Approval of the Settlement Agreement and Notice to the Class; (ii) Exhibit List and Exhibits, and (iii) this Certificate of Service on all attorneys of record in this case via the Court's ECF system.  I also submitted a proposed Order to the Court via the Utilities function of the Court's ECM/ECF system, and emailed a copy of the proposed Order to Defendants' attorneys of record (identified in the signature block above).

/s/ Eva T. Cantarella
Eva T. Cantarella

H0384121.1

16